**CLEARY GOTTLIEB STEEN
& HAMILTON LLP**
Jennifer Kennedy Park (SBN 344888)
jkpark@cgsh.com

1841 Page Mill Rd Suite 250
Palo Alto, CA 94304

Roger A. Cooper (Admitted *pro hac vice*)
Jared Gerber (Admitted *pro hac vice*)
Samuel Levander (Admitted *pro hac vice*)

One Liberty Plaza
New York, NY 10006

Attorneys for Defendant
POLYCHAIN ALCHEMY, LLC

[*Additional counsel on signature page*]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Amanda Houghton, et al.<br><br>Plaintiffs,<br><br>v.<br><br>Compound DAO, et al.<br><br>Defendants. | Case No. 3:22-cv-07781-WHO<br><br>**DEFENDANTS' RESPONSE TO MOTION TO APPOINT AMANDA HOUGHTON, CHARLES DOUGLAS, AND SUSAN FRANKLIN AS LEAD PLAINTIFFS AND TO APPROVE LEAD COUNSEL**<br><br>Hearing Date: March 8, 2023<br>Time: 2:00pm<br>Courtroom: Courtroom 2<br>Before: Hon. William H. Orrick |

## I. STATEMENT OF ISSUES

Whether Amanda Houghton, Charles Douglas, and Susan Franklin, who collectively allege under $80 in combined losses, should be appointed lead plaintiffs under the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## II. PRELIMINARY STATEMENT

Defendants Polychain Alchemy, LLC, Robert Leshner, Geoffrey Hayes, AH Capital Management, LLC, Bain Capital Ventures (GP), LLC, Gauntlet Networks, Inc., and Paradigm Operations LP (the "Defendants")[1] file this response to the Motion to Appoint Lead Plaintiff and Lead Counsel (ECF 47) (the "Motion") filed by lead plaintiff applicants Amanda Houghton, Charles Douglas, and Susan Franklin (the "Lead Plaintiff Applicants").[2]

The PSLRA was "[d]esigned to curb perceived abuses" in securities class actions, including "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 320 (2007). One key "innovation" that Congress adopted in the PSLRA involved "procedural controls . . . for the appointment of lead plaintiffs and lead counsel," which "aimed to increase the likelihood" that large investors with significant amounts at stake – parties that Congress believed were "more likely to balance the interests of the class with the long-term interests of the company – would serve as lead plaintiffs." *Id.* at 320-21. To that end, a growing number of courts across the country have recently rejected lead plaintiff applications by plaintiffs with only minor alleged losses, even when the applications were not opposed. *See McCormack v. Dingdong (Cayman) Ltd.*, 2022 WL 17336586, at *5 (S.D.N.Y. Nov. 30, 2022) (rejecting proposed lead plaintiff with $504.40 in alleged losses *sua sponte* and without opposition); *Bosch v. Credit Suisse Grp. AG*, 2022 WL 4285377, at *5 (E.D.N.Y. Sept. 12, 2022) (rejecting proposed lead plaintiff with $621 in alleged

---

[1] For the avoidance of doubt, Defendants do not include Compound DAO.
[2] This response to the Application is not intended to waive any claim or defense on behalf of any Defendant, which each expressly preserve all arguments, including that COMP tokens are not securities.

losses); *Guo v. Tyson Foods, Inc.*, 2022 WL 5041798, at *6 (E.D.N.Y. Sept. 30, 2022) (rejecting proposed lead plaintiff with $323.20 in alleged losses).

Here, the Lead Plaintiff Applicants likewise have only a *de minimis* stake in this litigation – less than $80 among them – and therefore have failed to show that they are appropriate parties to be appointed lead plaintiffs under the PSLRA.

### III.   STATEMENT OF FACTS

On December 8, 2022, the Lead Plaintiff Applicants filed a putative class action complaint alleging that COMP tokens are unregistered securities and asserting claims for violations of Sections 5 and 12(a)(1) of the Securities Act of 1933. These claims are subject to the PSLRA, 15 U.S.C. § 77z-1. The Lead Plaintiff Applicants filed their application on February 6, 2023. No other purchaser of COMP tokens moved to be appointed lead plaintiff by the statutory deadline. *See* 15 U.S.C. § 77z-1(a)(3)(A)(i)(II) (any purported class member has 60 days from the date the notice was published to move the Court to serve as lead plaintiff on behalf of the putative class); Motion at 5 (notice published on December 9, 2022).

Ms. Franklin claims to have purchased $2 worth of COMP tokens in December 2021. Compl. ¶ 17. Ms. Houghton claims to have purchased $3 worth of COMP tokens in November 2022. *Id.* ¶ 16.[3] Mr. Douglas claims to have purchased $75 worth of COMP tokens in January 2022. *Id.* ¶ 15. Thus, Lead Plaintiff Applicants spent a combined total of $80 to purchase COMP tokens, representing less than 0.00003% of COMP's $278 million market capitalization at the time they filed this lawsuit. *Id.* ¶ 90. Moreover, Lead Plaintiff Applicants allege that they purchased a combined total of just 0.658 COMP tokens, ECF Nos. 1-1, 1-2, 1-3, or about 0.000009% of the total circulating supply of 7.3 million COMP tokens, Compl. ¶ 191. Although the Lead Plaintiff Applicants do not specify the total amount of their alleged losses on this fractional interest in COMP tokens, those losses must necessarily be less than the $80 in tokens that they purchased.

---

[3] Ms. Houghton and Ms. Franklin each also allege to have been "compensated" with $9 of COMP tokens in February 2021 and July 2021, respectively. Compl. ¶¶ 16-17. Given that these amounts exceed each of their total purchases, it is not clear whether either alleges any net losses.

## IV.  ARGUMENT

As the Ninth Circuit has repeatedly recognized, the PSLRA's lead plaintiff procedures were intended to reform "prior law," under which "lead plaintiffs in securities litigation cases were often selected by a race to the courthouse [and] the first plaintiff to file suit was usually appointed as class representative." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  "This practice created concerns that attorneys acting on a contingency basis were primarily running the litigation on behalf of 'figurehead' plaintiffs who were unlikely to monitor their attorneys' activities." *In re Mersho*, 6 F.4th 891, 898 (9th Cir. 2021).  In response, the PSLRA embraced the view "that investors with multimillion-dollar interests in the class actions should be selected as lead plaintiffs so that they would have greater incentive to watch over counsel." *Id.*; *see also* H. Rep. 104-369 at 32 (1995) (lead plaintiff appointment process was designed to "giv[e] control of the litigation to lead plaintiffs with substantial holdings of the securities of the issuer").  In other words, Congress adopted the PSLRA with "the goal of attracting institutional investors" with large amounts at stake to lead the litigation, and to "discourage opportunistic lawsuits by shareholders with a tiny position in the security which is the subject of the litigation." *In re Cavanaugh*, 305 F.3d at 738; *see also* H. Rep. 104-369 at 34 (1995) ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").  "Accordingly, under the PSLRA, the lead plaintiff must have a substantial stake in the litigation to ensure it has the ability and incentive to control counsel." *Bosch*, 2022 WL 4285377, at *5.

To effectuate these goals, courts must undertake a multi-step inquiry to appoint a lead plaintiff under the PSLRA.  First, "the district court must identify which movant has the largest alleged losses and then determine whether that movant has made a prima facie showing of adequacy and typicality." *In re Mersho*, 6 F.4th at 899.  Only if a movant makes such a showing does it receive a presumption that it is the "most adequate plaintiff." *Id.*[4]

---

[4] At the next step in the lead plaintiff process, that presumption can be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class." *In re Mersho*, 6 F.4th at 899.  While some

Accordingly, the PSLRA does not direct courts to rubber-stamp unopposed lead plaintiff applications. Rather, it requires courts to make a determination that a lead plaintiff is qualified to serve in that role even when there is no rival application. *See, e.g.*, *Bosch*, 2022 WL 4285377, at *6 ("[I]t is well settled that the Court is obligated to evaluate the requirements of the PSLRA, even though [putative lead plaintiff's] motion is unopposed.") (citing cases).

Based on these statutory requirements and the underlying policy objectives of the PSLRA, a growing number of courts have recently rejected unopposed lead plaintiff applications where the applicants have suffered only *de minimis* losses. *See Guo,* 2022 WL 5041798, at *6 (rejecting proposed lead plaintiff with $323.20 in alleged losses); *McCormack*, 2022 WL 17336586, at *5 (same with $504.40 in alleged losses); *Bosch*, 2022 WL 4285377, at *5 (same with $621 in alleged losses). As these courts have recognized, where lead plaintiff applicants have such minimal losses, they lack a sufficient financial interest in the outcome of the case to be incentivized to monitor counsel's performance and control the litigation on behalf of the putative class. *McCormack*, 2022 WL 17336586, at *5; *Bosch*, 2022 WL 4285377, at *4.[5] For example, in *Guo,* the court rejected

---

cases have read this language as depriving defendants of standing to be heard on lead plaintiff motions, the statutory limitation to "proof by a member of the purported plaintiff class" only applies at the rebuttal stage once a lead plaintiff applicant has made a prima facie showing of adequacy and typicality, and does not prevent a defendant from being heard on whether an applicant has made such a showing in the first place. *Tai Jan Bao v. SolarCity Corp.*, 2014 WL 3945879, at *2 (N.D. Cal. Aug. 11, 2014) ("While Defendants are precluded from adducing evidence to *rebut* a presumption that [lead plaintiff applicant Webb] is the most adequate plaintiff, as the PSLRA designates that function to the other *plaintiffs* vying to be lead, the Court is persuaded that nothing in the PSLRA prevents Defendants from directing the Court's attention to [issues] in Webb's motion when deciding whether Webb is entitled to the statutory presumption in the first instance."). In any event, "regardless whether defendants have standing to object at this stage, the statute requires the court to determine whether the proposed lead plaintiffs are capable of adequately protecting the interests of the class members." *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 584 (N.D. Cal. 1999). As such, "the court may *sua sponte* raise and address certain of the concerns addressed in defendants' statement." *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1138 (C.D. Cal. 1999); *see also Tai Jan Bao*, 2014 WL 3945879, at *2 ("The Court has an independent obligation to ensure that the class is represented by an adequate lead plaintiff, and will certainly not disregard evidence suggesting that a movant is not presumptively adequate."); *McCormack*, 2022 WL 17336586, at *2 (rejecting proposed lead plaintiff with $504.40 in alleged losses *sua sponte* and without opposition).

[5] Even if the Court denies the Motion, the Lead Plaintiff Applicants would still be free to pursue their claims on an individual basis. *See McCormack*, 2022 WL 17336586, at *6 (permitting rejected lead plaintiff applicant to litigate claims on an individual basis); *Bosch*, 2022 WL 4285377, at *7 (same); *Guo*, 2022 WL 5041798, at *6 (same).

1    an unopposed lead plaintiff application where putative lead plaintiffs had allegedly suffered only
2    $323.20 in losses, explaining that, "[g]iven their nominal losses, . . . [applicants] have failed to
3    persuade this Court that they have sufficient interest in the litigation to 'vigorously' pursue the class
4    claims and adequately represent the interests of class members." 2022 WL 5041798, at *6.
5    Similarly, in *Bosch*, the court rejected an applicant's unopposed lead plaintiff application because
6    his "extremely modest stake (at most, $621) is unlikely to provide the kind of incentive for close
7    supervision of counsel that the PSLRA contemplates." 2022 WL 4285377, at *5.
8         The reasoning of those cases applies with even greater force here, where Lead Plaintiff
9    Applicants' alleged losses are substantially smaller: approximately an eighth of the loss at issue in
10   *Bosch*, a seventh of the loss at issue in *McCormack*, and less than a quarter of the loss at issue in
11   *Guo*. Moreover, the fact that no putative class member with more than $75 in losses sought to lead
12   this lawsuit only further heightens concerns that this is the type of lawyer-driven action that the
13   PSLRA was designed to prevent. *See generally* H. Rep. 104-369 at 32 (1995).
14        In addition, the absence of an apparent pre-existing relationship among the three Lead
15   Plaintiff Applicants – other than their shared counsel – further underscores the issues with this
16   action and the degree to which it is precisely the sort of lawyer-driven litigation the PSLRA sought
17   to discourage. "[T]he clear consensus in [the North District of California] is that a group of
18   investors who had no pre-existing relationship with one another, and whose relationship and group
19   status were forged only by a lawyer, is not appropriate to be lead plaintiff based on their aggregated
20   losses." *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019). "To permit
21   aggregation and lead plaintiff status for such a group undercuts the goal of having the plaintiffs and
22   not the lawyers call the shots in securities class actions." *Id.* at 836; *see also Williams v. Block.One*,
23   2020 WL 4505569, at *3 (S.D.N.Y. Aug. 4, 2020) (stating, in the context of a putative class action
24   involving digital assets, that "[c]ourts have typically required that plaintiffs lacking a pre-existing
25   relationship present a more compelling showing as to their fitness for the position" because
26   "applications from unrelated plaintiff groups raise doubts that the group – rather than its lawyers –
27   is truly in charge of the litigation, as the PSLRA hopes") (quotations and brackets omitted)).
28

## V. CONCLUSION

For the foregoing reasons, the Lead Plaintiff Applicants have failed to demonstrate that they should be appointed lead plaintiffs, and their Motion to Appoint Lead Plaintiff and Lead Counsel should be denied.

Dated: February 21, 2023

CLEARY GOTTLIEB STEEN & HAMILTON LLP

/s/ *Jennifer Kennedy Park*
Jennifer Kennedy Park (SBN 344888)
jkpark@cgsh.com
Telephone: +1 650 815 4100

1841 Page Mill Rd Suite 250
Palo Alto, CA 94304

Roger A. Cooper (Admitted *pro hac vice*)
Jared Gerber (Admitted *pro hac vice*)
Samuel Levander (Admitted *pro hac vice*)

One Liberty Plaza
New York, NY 10006
Telephone: +1 212 225 2000

Attorneys for Defendant
POLYCHAIN ALCHEMY, LLC

LATHAM & WATKINS LLP

/s/ *Matthew Rawlinson*
Matthew Rawlinson (Cal. Bar No. 231890)
matt.rawlinson@lw.com
140 Scott Drive
Menlo Park, CA 94025-1008
Telephone: +1 650 328 4600

Douglas K. Yatter (Cal. Bar No. 236089)
douglas.yatter@lw.com
Benjamin A. Naftalis (Pro Hac Vice to be filed)
benjamin.naftalis@lw.com
1271 Avenue of the Americas
New York, New York 10020
Telephone: +1 212 906 1200

Susan E. Engel (Pro Hac Vice to be filed)
susan.engel@lw.com

555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1 212 637 2200

*Attorneys for Defendant AH Capital Managemen L.L.C.*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Peter B. Morrison*
Peter B. Morrison (SBN 230148)
peter.morrison@skadden.com
Zachary M. Faigen (SBN 294716)
zack.faigen@skadden.com
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: +1 213 687 5000

Alexander C. Drylewski (admitted pro hac vice)
alexander.drylewski@skadden.com
One Manhattan West
New York, NY 10001
Telephone: +1 212 7353000

*Attorneys for Defendant Paradigm Operations LP*

JENNER & BLOCK LLP

*/s/ Benjamin T. Halbig*
Benjamin T. Halbig (Cal. Bar No. 321523)
bhalbig@jenner.com
455 Market Street Suite 2100
San Francisco, CA 94105-2453
Telephone: +1 628 267 6800

Kayvan B. Sadeghi (*pro hac vice forthcoming*)
ksadeghi@jenner.com
1155 Avenue of the Americas
New York, NY 10036-2711
Telephone: +1 212 891 1600

*Attorneys for Defendant Bain Capital Ventures (GP), LLC*

MORRISON COHEN LLP

*/s/ Jason Gottlieb*
Jason Gottlieb
(*pro hac vice application forthcoming*)

Edward P. Gilbert
(*pro hac vice application forthcoming*)
Vani Upadhyaya
(*pro hac vice application forthcoming*)
909 Third Avenue
New York, New York 10022
Telephone: +1 212 735 8600

*Attorneys for Defendants
Robert Leshner, Geoffrey Hayes,
and Gauntlet Networks, Inc.*

**FILER'S ATTESTATION**

I, Jennifer Kennedy Park, am the ECF User whose ID and password are being used to file this Response. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that concurrence in the filing of this document have been obtained from each of the other signatories.

*s/ Jennifer Kennedy Park*
Jennifer Kennedy Park (SBN 344888)