**CLEARY GOTTLIEB STEEN
& HAMILTON LLP**
Jennifer Kennedy Park (SBN 344888)
jkpark@cgsh.com

1841 Page Mill Rd Suite 250
Palo Alto, CA 94304
Tel: +1 (650) 815-4100

Roger A. Cooper (Admitted *pro hac vice*)
Jared Gerber (Admitted *pro hac vice*)
Samuel Levander (Admitted *pro hac vice*)

One Liberty Plaza
New York, NY 10006

Attorneys for Defendant
POLYCHAIN ALCHEMY, LLC

[*additional parties in signature block*]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Amanda Houghton; Charles Douglas; and Susan Franklin, <br><br> Plaintiffs, <br><br> v. <br><br> Compound DAO; Robert Leshner; Geoffrey Hayes; AH Capital Management, LLC; Polychain Alchemy, LLC; Bain Capital Ventures (GP), LLC; Gauntlet Networks, Inc.; Paradigm Operations LP, <br><br> Defendants. | Case No. 3:22-cv-07781-WHO <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS** <br><br> Hearing Date: August 9, 2023 <br> Time: 2:00 PM <br> Courtroom: Courtroom 2 <br> Before: Hon. William H. Orrick |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on August 9, 2023, at 2:00 PM, or at such other date as may be agreed upon or ordered, at the courtroom of the Honorable William H. Orrick, Courtroom 2, Defendants Robert Leshner, Geoffrey Hayes, AH Capital Management, LLC ("AH"), Polychain Alchemy, LLC ("Polychain"), Bain Capital Ventures (GP), LLC ("Bain"), Gauntlet Networks, Inc. ("Gauntlet"), and Paradigm Operations LP ("Paradigm") (together, the "Defendants") will and hereby do move the Court, pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice Plaintiffs' Amended Complaint ("AC") (ECF No. 76). The motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the arguments of counsel, and all other matters properly considered by the Court. This motion to dismiss is brought on the grounds that the Complaint fails to state a claim against Defendants upon which relief can be granted.

**REQUESTED RELIEF**

Defendants request that the Court grant Defendants' Motion to Dismiss and dismiss the claims asserted against Defendants and Compound DAO with prejudice.

1

## **<u>TABLE OF CONTENTS</u>**

2
**<u>Page</u>**

3  TABLE OF AUTHORITIES ............................................................................. ii

4  STATEMENT OF ISSUES ............................................................................. 1

5  PRELIMINARY STATEMENT....................................................................... 1

6  STATEMENT OF FACTS .............................................................................. 2

7  ARGUMENT ................................................................................................ 5

8      I.      Plaintiffs Do Not Allege That Defendants Are "Statutory

9              Sellers"............................................................................................. 6

10             a.      Plaintiffs Did Not Buy COMP Tokens From Any

11                     Defendant ............................................................................ 6

12             b.      Plaintiffs Fail To Plead That Any Defendant

13                     Successfully Solicited Their Sales ................................... 8

14             c.      Plaintiffs Fail to Allege That Any Relevant

15                     Purported Solicitation Occurred Within the One-

16                     Year Statute of Limitations .............................................. 12

17  CONCLUSION ............................................................................................ 13

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
*Anderson v. Binance*,

5
    2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) ........................................................................ 12

6
*Ashcroft v. Iqbal*,

7
    556 U.S. 662 (2009) ...................................................................................................................... 5

8
*Bell Atlantic Corp. v. Twombly*,

9
    550 U.S. 544 (2007) ............................................................................................................... 5, 10

10
*Capri v. Murphy*,

11
    856 F.2d 473 (2d Cir. 1988) ....................................................................................................... 8

12
*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,

13
    2012 WL 12893520 (C.D. Cal. Feb. 16, 2012) ......................................................................... 7

14
*In re Craftmatic Sec. Litig.*,

15
    890 F.2d 628 (3d Cir. 1989) ....................................................................................................... 8

16
*Elrod v. Harlow*,

17
    2011 WL 864959 (N.D. Cal. Mar. 11, 2011) ........................................................................... 2

18
*Forsberg v. Always Consulting Inc.*,

19
    2008 WL 5449003 (S.D.N.Y. Dec. 31, 2008) .......................................................................... 5

20
*In re Infonet Servs. Corp. Sec. Litig.*,

21
    310 F. Supp. 2d 1080 (C.D. Cal. 2003) .................................................................................... 7

22
*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,

23
    2011 WL 4389689 (C.D. Cal. May 5, 2011) ........................................................................ 6, 8

24
*Pino v. Cardone Cap. LLC*,

25
    55 F.4th 1253 (9th Cir. 2022) ............................................................................................. *passim*

26
*Pinter v. Dahl*,

27
    486 U.S. 622 (1988) ............................................................................................................. *passim*

28

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003)..........................................................................................8

*Ryder Int'l Corp. v. First Am. Nat. Bank*,
   943 F.2d 1521 (11th Cir. 1991).....................................................................................11

*Sollberger v. Wachovia Sec., LLC*,
   2010 WL 2674456 (C.D. Cal. June 30, 2010) ...............................................................7

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001)..........................................................................................5

*In re Tezos Sec. Litig.*,
   2018 WL 4293341 (N.D. Cal. Aug. 7, 2018)............................................................8, 12

*Toombs v. Leone*,
   777 F.2d 465 (9th Cir. 1985)....................................................................................12, 13

*Underwood v. Coinbase Glob., Inc.*,
   2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023) ..................................................................8

*Welgus v. TriNet Grp., Inc.*,
   2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ..................................................................7

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021)........................................................................................5

*XOMA Corp. Sec. Litig.*,
   1990 WL 357807 (N.D. Cal. Dec. 27, 1991) .................................................................7

*Zakinov v. Ripple Labs, Inc.*,
   2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ................................................................12

**Statutes & Regulations**

Securities Act of 1933, 15 U.S.C. § 77 ...............................................................*passim*

17 C.F.R. § 230.168 .........................................................................................................9

17 C.F.R. § 230.169 .........................................................................................................9

Fed. R. Civ. Proc. Rule 8 ................................................................................................1

Fed. R. Civ. Proc. Rule 12 ..............................................................................................1

**Other Authorities**

Solicitation, BLACK'S LAW DICTIONARY (11th ed. 2019)............................................................ 11

SEC. & FED. CORP. LAW § 8:17 (2d ed.)........................................................................... 9

**Case Filings**

Petition for Writ of Certiorari, *Cardone Cap., LLC v. Pino*

    (No. 22-1016) ........................................................................................................................ 8

1

**STATEMENT OF ISSUES**

2     1.     Whether Plaintiffs' claim under Section 12(a)(1) of the Securities Act should be

3   dismissed pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to

4   state a claim because Plaintiffs purchased the purported securities in the secondary market from

5   third parties – not directly from Defendants and without solicitation by Defendants – and Plaintiffs

6   therefore fail to plead that Defendants were statutory sellers.

7     2.     Whether Plaintiffs' claim under Section 12(a)(1) of the Securities Act should be

8   dismissed pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to

9   satisfy the one-year limitations period in Section 13 of the Securities Act.

10

**PRELIMINARY STATEMENT**

11     Plaintiffs' 45-page Amended Complaint boils down to a single claim against Defendants

12   for their alleged offers and sales of COMP tokens, which Plaintiffs allege were unregistered

13   securities in violation of Section 12(a)(1) of the Securities Act.  But Section 12(a)(1) of the

14   Securities Act only imposes liability on "statutory sellers" for their sales of an unregistered security.

15   15 U.S.C. § 77l (only permitting Section 12(a)(1) claims against a seller of an unregistered security

16   by the "the person purchasing such security from him").  Therefore, the dispositive threshold

17   question is whether these Defendants (directly or on behalf of Compound DAO, the existence of

18   which Defendants dispute but assume for this motion) sold COMP tokens directly to these Plaintiffs

19   or successfully solicited such sales.  Absent such direct sales or solicitation, Defendants cannot be

20   liable to Plaintiffs under the Securities Act.  The incontrovertible answer to that question – applying

21   the plain statutory language and binding precedent to the allegations in the Amended Complaint –

22   is no.  Plaintiffs do not adequately allege that Defendants or Compound DAO sold COMP tokens

23   to Plaintiffs or solicited sales of COMP tokens, so this lawsuit fails right out of the gate.

24     *First*, Plaintiffs do not allege that any Defendant or Compound DAO sold COMP tokens to

25   *anyone*, much less to the Plaintiffs themselves.  Instead, Plaintiffs allege that they bought a

26   collective total of $80 worth of COMP tokens from unnamed third parties on the digital asset

27   exchange Coinbase.  Plaintiffs therefore fail to state a claim based on direct sales because they do

28   not – and cannot – allege that Defendants or Compound DAO sold COMP tokens to any Plaintiff.

1    *Second*, Plaintiffs fail to allege that any Defendant or Compound DAO solicited sales by

2    urging or persuading prospective purchasers to buy COMP tokens.  Instead, Plaintiffs point to

3    various statements by individual Defendants that either detailed a Defendant's expertise with digital

4    assets, reflected that a Defendant was active in Compound's governance, or described Compound's

5    business model.  Such statements fall far short of the solicitation "directed at producing the sale"

6    or "persuad[ing] potential purchasers to invest" required by the Supreme Court and Ninth Circuit.

7    *Pinter v. Dahl*, 486 U.S. 622, 646 (1988); *Pino v. Cardone Cap. LLC*, 55 F.4th 1253, 1260 (9th

8    Cir. 2022).  In addition, Plaintiffs do not identify which of Defendants' alleged statements – if any

9    – they seek to construe as solicitations, and which – if any – occurred within the one-year limitations

10   period.  These textbook pleading failures provide independent grounds for dismissal.

11   Because Plaintiffs do not and cannot plead that Defendants were "statutory sellers" under

12   the Securities Act, this lawsuit should be dismissed in full with prejudice.[1]

13                                   **STATEMENT OF FACTS**

14   Defendants Robert Leshner and Geoffrey Hayes co-founded non-party Compound Labs in

15   2017.  AC ¶¶ 8, 9, 29.[2]  Defendants Bain, Polychain, AH, and Paradigm were investors in

16   Compound Labs, leading an $8.2 million seed funding round in May 2018 and a $25 million Series

17   A funding round in November 2019.  AC ¶¶ 34, 37.  Defendant Gauntlet provided risk management

18   services with respect to the Compound protocol.  AC ¶¶ 100-101.

19

20   _____

21   [1]     Defendant Compound DAO has not been served and is not a party to this motion.  *See* ECF
     No. 48 (recognizing that Compound DAO has not been served and declining default).  The AC
22   does not state a claim against Compound DAO for the same reasons it fails to state a Section 12
     claim against the other Defendants – because the AC does not and cannot allege that Compound
     DAO is a statutory seller.  The Court therefore should dismiss the AC in its entirety.  *See Elrod v.*
23   *Harlow*, 2011 WL 864959, at *4 (N.D. Cal. Mar. 11, 2011) ("[A] motion may be granted by the
     court sua sponte in favor of a nonappearing party on the basis of facts presented by other defendants
24   who have appeared.") (citing *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir.
     2008)).  Defendants dispute that Compound DAO is a juridical entity capable of being sued and
25   reserve all rights with respect to such arguments, although the Court need not reach this issue in
     order to dismiss the AC in its entirety for failure to state a claim.

26   [2]     Defendants' statement of facts is drawn from the AC and documents that the Court may
27   take judicial notice of on a motion to dismiss.  Defendants do not admit the truth of the allegations
     in the AC.

28   _____
     DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
     CASE NO. 3:22-CV-07781-WHO
                                              2

Compound Labs operated a successful decentralized finance ("DeFi") digital asset lending business.  AC ¶¶ 30-33, 38.  In traditional lending businesses, a centralized entity originates loans and collects interest payments from borrowers while paying interest to depositors and lenders.  By contrast, Compound Labs was powered by a protocol on the Ethereum blockchain[3] called Compound that was programmed to allow users to borrow and lend digital assets directly without third-party intermediaries.  AC ¶¶ 1, 26, 30.  Users of the Compound protocol posted digital assets as collateral to borrow other digital assets at a market-determined interest rate (approximately 3.86% at the time of filing), while other users loaned their digital assets at a market-determined interest rate (approximately 2.19% at the time of filing) to the pool of collateralized borrowers.  AC ¶ 30.  This business generated profit from the spread between the rate borrowers paid and the rate lenders earned.  AC ¶¶ 1, 32.  At the time Plaintiffs filed this lawsuit, the aggregate loans made through the Compound protocol were worth a little less than $3 billion.  AC ¶ 1.

In February 2020, Defendant Leshner announced that the Compound business would be transferred from Compound Labs to Defendant Compound DAO, a decentralized autonomous organization.  AC ¶ 39.  Compound Labs created a digital asset called COMP as the governance token for the Compound DAO.  AC ¶ 40.  Like other DAOs, the Compound DAO does not have a formal centralized management structure.  AC ¶ 28.  Instead, it is governed by all holders of COMP tokens, who may propose actions for the Compound DAO to take, which must be approved by majority vote of all COMP token holders.  AC ¶¶ 28, 40-43.  Plaintiffs specifically allege that the Compound DAO did not sell COMP tokens directly to the public.  AC ¶ 55.  Rather, users could obtain COMP tokens by borrowing or lending on the Compound protocol.  *Id.*  COMP tokens were also available for purchase on the secondary market through various centralized and decentralized digital asset exchanges.  AC ¶¶ 55, 83.

---

[3]     A blockchain is a distributed ledger that records transactions across a network of computers.  AC ¶ 24.  The transactions at issue in this case were recorded on the Ethereum blockchain.  *Id.*  A protocol is a computer-coded algorithm on the blockchain.  AC ¶ 26.  The Compound protocol was programmed to operate Compound Labs' DeFi digital asset lending business.  *Id.*

At the time this lawsuit was filed on December 8, 2022, Defendants Leshner, Hayes, Bain, Polychain, AH, Paradigm, and Gauntlet each held between 2.65% and 11.58% of the total circulating COMP tokens.[4]  AC ¶¶ 8-14.  Together, these Defendants held 46.41% of circulating COMP tokens.  *Id.*  Plaintiffs allege that individual Defendants touted their expertise in crypto business, AC ¶¶ 94-101, made governance proposals for the Compound protocol and voted on those proposals, AC ¶¶ 102-113, 122, and described Compound's business model on their websites and in public statements, AC ¶¶ 137-158.

The price of a COMP token fluctuated from $93.30 in June 2020 upon first listing to nearly $854 per token on May 11, 2021.  AC ¶¶ 56, 160.  The price of a COMP token decreased between May and June 2021, increased between June and September 2021, and then consistently decreased between November 2021 and December 2022.  AC ¶¶ 160-63.  Defendants held COMP tokens throughout this period and continued to hold them at the time this lawsuit was filed.  AC ¶¶ 8-14.

Plaintiffs allege that they purchased COMP tokens on the digital asset exchange Coinbase, not from Compound DAO or any other Defendant.  AC ¶¶ 15-17.  Indeed, Plaintiffs do not allege that any Defendant made any sales of COMP tokens at all.  Plaintiff Susan Franklin alleges to have purchased $2 worth of COMP tokens on Coinbase in December 2021.  AC ¶ 17.  Plaintiff Amanda Houghton alleges to have purchased $3 worth of COMP tokens on Coinbase in November 2022.  *Id.* ¶ 16.[5]  Plaintiff Charles Douglas alleges to have purchased $75 worth of COMP tokens on Coinbase in January 2022.  *Id.* ¶ 15.  Thus, Plaintiffs collectively allege to have purchased $80 worth of COMP tokens – less than 0.00003% of COMP's total market capitalization.

Plaintiffs assert a single claim on behalf of themselves and a putative class of others purportedly similarly situated against Defendants pursuant to Sections 5 and 12(a) of the Securities

---

[4]   Plaintiffs do not allege that Compound DAO ever held or sold any COMP tokens.  *See* AC ¶¶ 7, 55.

[5]   Ms. Houghton and Ms. Franklin each also alleges to have been "compensated" with $9 of COMP tokens via Coinbase Earn in February 2021 and July 2021, respectively.  AC ¶¶ 16-17.  Coinbase Earn allegedly allowed users of Coinbase to receive a de minimis amount of COMP tokens for free if they watched a video about the Compound protocol.  AC ¶ 70.  Given that the amounts Ms. Houghton and Ms. Franklin received through Coinbase Earn exceed each of their total purchases, it is not clear whether either alleges any net losses.

1  Act of 1933 for the alleged offer and sale of COMP tokens, which Plaintiffs allege were

2  unregistered securities.  AC ¶¶ 194-216.

3  **ARGUMENT**

4  Plaintiffs have the burden to plead "sufficient factual matter, accepted as true, to state a

5  claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations

6  omitted).  To do so, the plaintiff must allege sufficient facts to show "more than a sheer possibility

7  that a defendant has acted unlawfully." *Id.*  "Labels and conclusions" or a "formulaic recitation of

8  the elements of a cause of action" are insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

9  555 (2007).  Instead, "only a complaint that states a plausible claim for relief with well-pleaded

10  facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss." *Whitaker*

11  *v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (citing *Iqbal*, 556 U.S. at 679-80).  While

12  the Court must credit a plaintiff's well-pleaded allegations on a motion to dismiss, it need not

13  "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

14  unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

15  Plaintiffs' sole claim arises under Section 12(a) of the Securities Act, which provides

16  purchasers of unregistered securities a narrow private right of action against the person who offered

17  or sold them the unregistered securities.  15 U.S.C. § 77l.[6]  Plaintiffs may assert a claim under

18  Section 12(a) only if (i) the instrument sold is a "security" within the meaning of the federal

19  securities laws;[7] and (ii) the person asserting the claim "purchas[ed] such security from" the

20  defendant.  *Id.*; *Pinter*, 486 U.S. at 641.  This second element is known as the "statutory seller"

21  requirement.  *Pinter*, 486 U.S. at 646.

22

---

23  [6]     Plaintiffs appear to rely on both Sections 5 and 12(a) in their sole cause of action.  To the
extent that Plaintiffs are asserting a Section 5 claim, that claim must be dismissed because there is

24  no private right of action under Section 5.  *See, e.g.*, *Forsberg v. Always Consulting Inc.*, 2008 WL
5449003, at *2 (S.D.N.Y. Dec. 31, 2008) ("Although Section 5 does not provide for a private right

25  of action, claims brought pursuant to Section 5 have been construed as claims arising under Section
12 of the Securities Act of 1933, 15 U.S.C. § 77l, which does provide for a private right of action.").

26
[7]     The COMP token is not a security, as Defendants would establish if this case were to

27  proceed past the motion to dismiss stage.  The Court need not reach that question on this motion,
however, because Plaintiffs cannot satisfy Section 12(a)'s "statutory seller" requirement.

28

The Supreme Court has held that a person is a "statutory seller" under only two scenarios. *Pinter*, 486 U.S. at 647. *First*, liability may attach if the defendant "passed title, or other interest in the security, to the buyer for value." *Id.* at 642. Liability under this prong requires direct privity: "[R]emote purchasers are precluded from bringing actions against remote sellers . . . . [A] buyer cannot recover against his seller's seller." *Id.* at 644 n.21. *Second*, liability may attach if the defendant "successfully solicits the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities' owner." *Id.* at 647.

The AC must be dismissed in its entirety because Plaintiffs do not adequately allege that any Defendant or Compound DAO sold COMP tokens directly to Plaintiffs or successfully solicited such sales.

**I.      Plaintiffs Do Not Allege That Defendants Are "Statutory Sellers"**

**a.  Plaintiffs Did Not Buy COMP Tokens From Any Defendant**

All of the named Plaintiffs in this case allege that they purchased COMP tokens from unnamed third parties in the secondary market on the digital asset exchange Coinbase; none alleges to have purchased directly from any Defendant or Compound DAO. AC ¶ 15 ("Plaintiff Charles Douglas . . . purchased approximately $75 of COMP on the Coinbase exchange in January 2022 . . . ."); *id.* ¶ 16 ("Plaintiff Amanda Houghton . . . purchased approximately $3 worth of COMP in November 2022 on Coinbase . . . ."); *id.* ¶ 17 ("Plaintiff Susan Franklin . . . purchased approximately $2 worth of COMP on the Coinbase exchange on December 26, 2021 . . . ."). Indeed, the AC does not allege that any Defendant sold COMP tokens to *anyone*, much less that any Defendant sold directly to Plaintiffs.

The fact that Plaintiffs did not purchase COMP tokens from any Defendant or Compound DAO forecloses liability under the first prong of the *Pinter* test. Section 12(a)(1) liability attaches "only [to] the buyer's immediate seller." *Pinter*, 486 U.S. at 644 n.21; *see also id.* at 642 (noting that Section 12 "contemplates a buyer-seller relationship not unlike traditional contractual privity"); *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *9 (C.D. Cal. May 5, 2011) (dismissing Section 12 claims against defendants where the defendants did not sell directly to

plaintiffs).  Plaintiffs do not (and cannot) allege that any Defendant or Compound DAO passed title in COMP tokens directly to them.  Therefore, Defendants cannot be statutory sellers under the first prong of *Pinter*.  *See* 15 U.S.C. § 77l(a).

Instead, Plaintiffs offer only generic and conclusory allegations that "Defendants" sold them COMP tokens, which find no factual support in Plaintiffs' allegations that they purchased "on Coinbase."  *Compare* AC ¶¶ 15-17 (describing Plaintiffs' purchases), *with id*. ¶ 211 ("During the Class Period, Defendants sold COMP tokens to Plaintiff and the Class members.").  These generic allegations, which fail to differentiate among the various Defendants or plead any facts regarding any particular sales by any particular Defendant, are insufficient to survive a motion to dismiss. *See, e.g.*, *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *19 n.9 (N.D. Cal. Jan. 17, 2017) (dismissing solicitation allegations that "are conclusory and not specific to any of the defendants"); *XOMA Corp. Sec. Litig.*, 1990 WL 357807, at *8 (N.D. Cal. Dec. 27, 1991) (dismissing Section 12 statutory seller claim where plaintiff failed to "allege that any particular defendants solicited *any particular plaintiff*"); *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1100 (C.D. Cal. 2003) ("As Infonet and the Individual Defendants did not pass title to the securities to Plaintiffs, Defendants[] cannot be held liable under the first prong of *Pinter*."); *see also Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (dismissing shotgun pleading under Rule 8 pleading standard "where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong").  Nor does Plaintiffs' conclusory allegation that "Defendants sold COMP tokens . . . by transferring title to COMP tokens directly to class members," AC ¶ 212, rather than to any of the named Plaintiffs themselves, save their claims.  "Lead Plaintiffs may not assert claims because there are potential members of the proposed class who could assert those claims."  *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2012 WL 12893520, at *5 (C.D. Cal. Feb. 16, 2012) (dismissing Section 12 claim on statutory seller grounds where lead plaintiffs alleged that "[s]ome members of the proposed Class purchased shares directly from [defendants]"

but lead plaintiffs themselves had not purchased shares directly from defendants) (alteration in original) (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

Plaintiffs therefore fail to meet their burden on the first prong of the *Pinter* test.

**b.  Plaintiffs Fail To Plead That Any Defendant Successfully Solicited Their Sales**

Plaintiffs also fail to adequately plead that any Defendant or Compound DAO successfully solicited their purchases of COMP tokens.  Under the second prong of the *Pinter* test, Section 12(a)(1) liability does not attach unless a Defendant "successfully solicits the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities owner."  *Pinter*, 486 U.S. at 647.  That is, defendants can be liable for solicitation "directed at producing the sale," but Section 12 liability cannot reach "collateral participants in the . . . transaction."  *Id.* at 646, 650 n.26.  In order to plead "solicitation," plaintiffs must plausibly allege both that defendants successfully "urge[d] another to purchase a security," and that "defendants solicited purchase of the securities for their own financial gain."  *Pino*, 55 F.4th at 1259 (quoting *In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005)).  To do so, Plaintiffs must plead specific acts of solicitation "that [we]re intended to command attention and persuade potential purchasers to invest."  *Id.* at 1260.[8]

---

[8]     The Ninth Circuit in *Pino* departed from prior precedent and deepened a circuit split by holding that social media posts soliciting sales (*e.g.*, "I am offering investment opportunities to the everyday investor, like you!") can be "solicitations" under Section 12 even if the defendant did not directly or actively target the particular plaintiff.  *Compare Pino*, 55 F.4th at 1256, 1258, *with In re Craftmatic Sec. Litig.*, 890 F.2d 628, 636 (3d Cir. 1989) ("The purchaser must demonstrate direct and active participation in the solicitation of the immediate sale . . . ."); *Capri v. Murphy*, 856 F.2d 473, 479 (2d Cir. 1988) ("[P]laintiffs must show that [a defendant] actually solicited their investment . . . ."); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003) (same); *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018) (Seeborg, J.) (requiring that a defendant was "directly involved in the actual solicitation of a securities purchase"); *Me. State Ret. Sys.*, 2011 WL 4389689, at *9 (Pfaelzer, J.) (requiring that solicitation occur in the context of "a direct relationship between the purchaser and the defendant"); *Underwood v. Coinbase Glob., Inc.*, 2023 WL 1431965, at *9 (S.D.N.Y. Feb. 1, 2023) (Engelmayer, J.) ("To hold a defendant liable under Section 12 as a seller, a purchaser such as plaintiffs must, therefore, demonstrate its direct and active participation in the solicitation of the immediate sale.").  The *Pino* defendants filed a petition for writ of certiorari to the Supreme Court on this issue on April 14, 2023.  Petition for Writ of Certiorari at i, *Cardone Cap., LLC v. Pino* (No. 22-1016).  If *Pino* is reversed, Plaintiffs' claims would fail for the additional reason that they do not even attempt to plead any direct solicitation by Defendants to Plaintiffs.  Defendants reserve all rights to supplement their arguments

A "solicitation" under Section 12(a)(1) must be more than providing factual information about the underlying business, or else the term would come to swallow any communication made by anyone with a financial interest about that business.[9] Section 12(a)(1) therefore attaches liability under the solicitation prong only where a defendant "urge[s] another to purchase a security" – not where a defendant merely communicates factual business information about the company. *Id.* at 1259.

In the AC, Plaintiffs fail to allege any statements by Defendants or Compound DAO soliciting the purchase of COMP tokens. The only non-conclusory reference to solicitation in the AC is an allegation that an unspecified Defendant "endeavored to persuade [Coinbase] to list COMP for trading" and thus that Compound DAO "actively solicited purchasers of COMP by (among other things) working together with Coinbase shortly after beginning its liquidity-mining and yield-farming program to encourage and facilitate secondary-market purchases." AC ¶¶ 63-68; *see also id.* ¶ 86 (speculating that unspecified Defendants took unspecified actions to facilitate listings on other exchanges); *id.* ¶ 5 (alleging Defendants "solicit" sales with unspecified "efforts to facilitate and encourage a robust secondary market for COMP, and their performance of other

---

if the Supreme Court grants defendants' certiorari petition in *Pino*.

In any event, Plaintiffs do not satisfy the solicitation standard set out in *Pino*, which requires that Defendants urged or persuaded potential purchasers to purchase COMP Tokens. *Pino*, 411 F.4th at 1260. In *Pino*, for example, defendants were expressly offered securities for purchase through social media, with statements such as: "[b]y accessing social media, I am offering investment opportunities to the everyday investor, like you!" *id.* at 1256, and "[t]his is the largest Reg A+ crowdfunding ever done for real estate investments of this quality using social media . . . . By using no middleman & going directly to the public using social media we reduce our cost. This ensures more of your money goes directly into the assets, resulting in lower promotional cost." *Id.* The Ninth Circuit considered these statements to be solicitations because they – unlike the statements alleged in the AC – spoke directly to the opportunity and desirability of the investment and encourage the listener to purchase an interest in the investment.

[9]    This limitation is reflected in SEC Rules 168 and 169, which recognize that certain communications containing "factual business information" do not constitute an offer to sell for purposes of Section 5(c). 17 C.F.R. § 230.168-169; *see also* Rule 169 limited communications— Non-reporting issuers, 3A SEC. & FED. CORP. LAW § 8:17 (2d ed.); SEC Div. of Corp. Fin. Compliance and Disclosure Interpretations, Securities Act Rules (updated Nov. 6, 2017), at Question 256.25 (explaining that "factual business information" is not considered to be an offer for securities because such information typically includes "information about the issuer, its business, financial condition, products, services, or advertisement of such products or services" as opposed to "predictions, projections, forecasts or opinions with respect to valuation of a security" or discussion of past performance of a security).

1    steps necessary to the widespread distribution of COMP to investors."). These conclusory

2    statements about encouragement and facilitation of listings are not solicitations of sales. Rather,

3    these are precisely the sort of allegations that the Supreme Court foreclosed when it rejected the

4    "substantial factor" test in *Pinter* and declined to extend liability to those whose participation was

5    "a substantial factor in causing the transaction to take place." *See* 486 U.S. at 649-50 (noting that

6    "§ 12's failure to impose express liability for mere participation in unlawful sales transactions

7    suggests that Congress did not intend that the section impose liability on participants collateral to

8    the offer or sale").

9          While Plaintiffs cite a number of other generic statements attributed to various Defendants,

10   they do not specify which of them – if any – they are asking this Court to construe as "solicitations,"

11   let alone explain how those statements solicited the purchase of COMP tokens. This omission is

12   fatal to Plaintiffs' AC. Without such specificity, Plaintiffs fail to give Defendants fair notice of the

13   grounds of the claim against them, as required by the Federal Rules of Civil Procedure. *See*

14   *Twombly*, 550 U.S. at 555 n.3 ("Without some factual allegation in the complaint, it is hard to see

15   how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the

16   claim, but also 'grounds' on which the claim rests."). In any event, it is clear on the face of the AC

17   that none of the alleged statements attributed to Defendants urged buyers to purchase or were

18   attempts to persuade potential purchasers to invest in COMP tokens, and therefore none is an

19   actionable solicitation under *Pinter*'s second prong. *See Pinter*, 486 U.S. at 644; *Pino*, 55 F.4th at

20   1259-60.

21         Many of the statements cited in the AC do not even mention COMP tokens. Some are

22   simply generic statements detailing certain Defendants' expertise in the digital assets industry in

23   general. *See* AC ¶¶ 96, 97, 98, 100.[10] Others merely describe the operation of the Compound

24   protocol. *See id.* ¶¶ 32, 101, 102, 103, 108, 109, 111, 112, 113, 115. A statement cannot constitute

25   ───────────────

26   [10]    For example, Plaintiffs cite a generic statement lifted from Paradigm's website which
     simply says that Paradigm "take[s] a deeply hands-on approach" to support the projects in which it
27   invests. AC ¶ 96 (alteration in original). That statement – which is the sole statement alleged to
     have been made by Paradigm – does not even refer to COMP, let alone constitute a solicitation for
28   the sale of COMP.

a solicitation for purposes of the Securities Act if the statement did not actually attempt to encourage the purchase of the purported security at issue.  *See Pinter*, 486 U.S. at 646 (limiting liability to those "who solicit offers to purchase securities"); *Pino*, 55 F.4th at 1259 (a solicitation must be "directed at producing the sale") (quoting *Pinter*, 486 U.S. at 646)); *Ryder Int'l Corp. v. First Am. Nat. Bank*, 943 F.2d 1521, 1532 (11th Cir. 1991) (no statutory seller liability where defendant "did not specifically recommend or 'talk [the plaintiff] into buying'" the security); *see also* Solicitation, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The act or an instance of requesting or seeking to obtain something; a request or petition").

Similarly, several of the statements alleged in the AC simply relate to public proposals or discussion about governance of the Compound protocol.  *See* AC ¶¶ 104-113; *see, e.g.*, *id.* ¶ 105 ("Partner Defendants publicly discuss governance decisions with each other on the Compound forum.").  At best, these statements request votes from existing COMP tokenholders – they do not attempt to persuade anyone to purchase or invest in COMP tokens.

Other cited statements describe the role of the COMP token in the Compound protocol, but similarly do not call for anyone to purchase COMP tokens.  *See* AC ¶¶ 43, 45, 46, 75, 139-58.  For example, the AC alleges that (i) AH prepared a presentation that outlined Compound's model as one where Governance Token Holders could "capture a revenue stream," *id.* ¶ 140; (ii) Polychain's CEO said that users of Compound who contribute capital could be rewarded with COMP tokens, which "represent an ownership stake in that underlying financial product," *id.* ¶¶ 141, 153; and (iii) Leshner said that COMP tokens are tied to "an important and valuable product," *id.* ¶ 154, and that Compound "starts with the Compound governance token, COMP," *id.* ¶ 43.  At most, these statements reflect Defendants' descriptions of how Compound works, including the role played by COMP tokens in the governance of the Compound DAO.  These descriptive statements are a far cry from the explicit offers to sell that the Ninth Circuit has held constitute solicitation.  *Compare id.* ¶¶ 139-58, *with Pino*, 55 F.4th at 1256 ("I am offering investment opportunities to the everyday investor, like you!  . . . [Y]ou're gonna walk away with a 15% annualized return.").  Critically

1    missing is any statement urging or persuading buyers to purchase COMP tokens, as is required to

2    state a claim.

3        Finally, Plaintiffs fail to tie Defendants' alleged statements to any "successful" sales.  The

4    successful solicitation requirement removes liability for those who "lacked involvement in [the

5    plaintiff's] purchasing decision."  *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *9; *see also Pinter*,

6    486 U.S. at 647 ("The language and purpose of § [12(a)(1)] suggest that liability extends only to

7    the person who successfully solicits the purchase . . . .").  Here, Plaintiffs fail to explain how any

8    Defendant's statement relates to their purchasing decisions.

9            **c.  Plaintiffs Fail to Allege That Any Relevant Purported Solicitation Occurred**

10                **Within the One-Year Statute of Limitations**

11       The allegations in the AC also fail to satisfy the limitations period.  Section 12 of the

12   Securities Act is subject to a strict one-year statute of limitations.  15 U.S.C. § 77m ("No action

13   shall be maintained to . . . enforce a liability created under section [12(a)(1)], unless brought within

14   one year after the violation upon which it is based.").  In order to state a claim for violation of

15   Section 12(a)(1), Plaintiffs must allege a "violation" – either a direct sale or act of solicitation –

16   that occurred within one year of the date the action was filed.  *Toombs v. Leone*, 777 F.2d 465, 468

17   (9th Cir. 1985) ("In asserting a violation of Section 12, the plaintiff must affirmatively plead

18   sufficient facts in his complaint to demonstrate conformity with the statute of limitations.");

19   *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *9 (N.D. Cal. Feb. 26, 2020) ("[A] plaintiff

20   alleging a § [12] claim must plead compliance with § 77m's statute of limitations."); *Anderson v.

21   Binance*, 2022 WL 976824, at *2-3 (S.D.N.Y. Mar. 31, 2022) (granting defendants' motion to

22   dismiss because the latest act of solicitation occurred more than a year before plaintiffs filed the

23   action).

24       With respect to sales or transfers of title, the AC does not allege that any Plaintiff purchased

25   directly from any Defendant or Compound DAO on any date, and Plaintiffs allege that they

26   received COMP tokens via Coinbase Earn more than a year before they filed this complaint on

27   December 8, 2022.  *See* AC ¶ 16 (alleging receipt of $9 of COMP via Coinbase Earn in February

28

2021); ¶ 17 (alleging receipt of $9 of COMP via Coinbase Earn in July 2021).  These alleged transactions therefore cannot form the basis for liability under a direct seller theory.

With respect to solicitations, Plaintiffs have alleged only three statements that were made after December 8, 2021 – one year before Plaintiffs filed this action.  Those three statements merely described the mechanics of COMP tokens and did not urge or persuade any potential investor to purchase COMP tokens; thus, they do not constitute solicitation as a matter of law.  *See* AC ¶ 101 (citing alleged statement by Gauntlet employee "describ[ing] Gauntlet's ongoing contributions to developing, improving, and enhancing Compound"); *id.* ¶ 132 (describing statements by non-defendant Compound Labs), *id.* ¶ 133 (same).  All other statements for which Plaintiffs allege a particular date occurred prior to the one-year cutoff and are therefore time-barred.  *See, e.g.*, AC ¶¶ 144, 147, 157, 158.  The remaining statements are undated, and are therefore not actionable under Ninth Circuit precedent.  *See, e.g.*, AC ¶ 32; *see Toombs*, 777 F.2d at 468.  In either case, Plaintiffs are foreclosed by the statute of limitations from relying on these undated statements and statements outside of the statute of limitations, providing an independent ground to dismiss Plaintiffs' sole cause of action.  15 U.S.C. § 77m (limiting the statutory remedy to claims "brought within one year after the violation upon which it is based").

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.


Dated: May 12, 2023

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Jennifer Kennedy Park*
Jennifer Kennedy Park (SBN 344888)
jkpark@cgsh.com
1841 Page Mill Rd Suite 250
Palo Alto, CA 94304
Tel: +1 (650) 815-4100

Roger A. Cooper (Admitted *pro hac vice*)
racooper@cgsh.com
Jared Gerber (Admitted *pro hac vice*)
jgerber@cgsh.com

Samuel Levander (Admitted *pro hac vice*)
slevander@cgsh.com
One Liberty Plaza
New York, NY 10006
Tel: +1 (212) 225-2000

*Attorneys for Defendant*
*Polychain Alchemy, LLC*

LATHAM & WATKINS LLP

 */s/ Matthew Rawlinson*
Matthew Rawlinson (SBN 231890)
matt.rawlinson@lw.com
140 Scott Drive
Menlo Park, CA 94025
Tel: +1 (650) 328-4600

Douglas K. Yatter (SBN 236089)
douglas.yatter@lw.com
Benjamin Naftalis (Admitted *pro hac vice*)
benjamin.naftalis@lw.com
1271 Avenue of the Americas
New York, NY 10020
Tel: +1 (212) 906-1200

Susan E. Engel (Admitted *pro hac vice*)
susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: +1 (212) 637-2200

*Attorneys for Defendant AH Capital Management,*
*L.L.C.*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP
*/s/ Peter B. Morrison*
Peter B. Morrison (SBN 230148)
peter.morrison@skadden.com
Zachary M. Faigen (SBN 294716)
zack.faigen@skadden.com
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel: +1 (213) 687-5000

Alexander C. Drylewski (Admitted *pro hac vice*)
alexander.drylewski@skadden.com
One Manhattan West
New York, NY 10001
Tel: +1 (212) 735-3000

*Attorneys for Defendant Paradigm Operations LP*

JENNER & BLOCK LLP
*/s/ Kayvan B. Sadeghi*
Kayvan B. Sadeghi (Admitted *pro hac vice*)
ksadeghi@jenner.com
1155 Avenue of the Americas
New York, NY 10036
Tel: +1 (212) 891 1600

Benjamin T. Hand (Cal. Bar No. 330451)
bhand@jenner.com
455 Market Street Suite 2100
San Francisco, CA 94105
Tel: +1 (628) 267-6800

*Attorneys for Defendant Bain Capital Ventures (GP), LLC*

MORRISON COHEN LLP
*/s/ Jason Gottlieb*
Jason Gottlieb (Admitted *pro hac vice*)
jgottlieb@morrisoncohen.com
Michael Mix (Admitted *pro hac vice*)
mmix@morrisoncohen.com
Edward P. Gilbert (Admitted *pro hac vice*)
egilbert@morrisoncohen.com
Vani Upadhyaya (Admitted *pro hac vice*)
vupadhyaya@morrisoncohen.com
909 Third Avenue
New York, NY 10022
Tel: +1 (212) 735-8600

*Attorneys for Defendants*
*Robert Leshner, Geoffrey Hayes,*
*and Gauntlet Networks, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### FILER'S ATTESTATION

I, Jennifer Kennedy Park, am the ECF User whose ID and password are being used to file this Notice of Motion and Motion to Dismiss.  In compliance with Civil Local Rule 5-1(i), I hereby attest that concurrence in the filing of this document have been obtained from each of the other signatories.

Dated: May 12, 2023                     */s/ Jennifer Kennedy Park*
                                                          Jennifer Kennedy Park