**CLEARY GOTTLIEB STEEN
& HAMILTON LLP**
Jennifer Kennedy Park (SBN 344888)
jkpark@cgsh.com

1841 Page Mill Rd Suite 250
Palo Alto, CA 94304
Tel: +1 (650) 815-4100

Roger A. Cooper (Admitted *pro hac vice*)
Jared Gerber (Admitted *pro hac vice*)
Samuel Levander (Admitted *pro hac vice*)

One Liberty Plaza
New York, NY 10006

Attorneys for Defendant
POLYCHAIN ALCHEMY, LLC

[*additional parties in signature block*]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Amanda Houghton; Charles Douglas; and Susan Franklin, | Case No. 3:22-cv-07781-WHO |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |
| v. | Hearing Date: August 16, 2023 |
| Compound DAO; Robert Leshner; Geoffrey Hayes; AH Capital Management, LLC; Polychain Alchemy, LLC; Bain Capital Ventures (GP), LLC; Gauntlet Networks, Inc.; Paradigm Operations LP, | Time: 2:00 PM<br>Courtroom: Courtroom 2<br>Before: Hon. William H. Orrick |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ............................................................................................................. 2

I.   Plaintiffs Fail To Adequately Allege That Defendants Are
     Statutory Sellers .............................................................................................. 2

     a.   Plaintiffs' Opposition Concedes That Defendants Were Not
          Direct Sellers ........................................................................................... 2

     b.   The Opposition's Assertion That Defendants Solicited
          Plaintiffs' Purchases Also Fails As A Matter Of Law ............................ 3

          i.    Plaintiffs Abandon Any Argument That The
                Individual Defendants Solicited Their Purchases .......................... 3

          ii.   Plaintiffs' Theory Of Partnership Liability Is Not
                Allowed Under The Securities Act .................................................. 4

          iii.  Plaintiffs Fail To Adequately Allege That The
                "Partnership" Solicited Their Purchases ......................................... 5

                A.   None Of Plaintiffs' Allegations Constitutes
                     Solicitation ............................................................................. 6

                B.   Plaintiffs Fail To Allege A "Successful"
                     Solicitation ........................................................................... 12

II.  Plaintiffs' Solicitation Claims Are Time-Barred Because The
     Alleged "Violation" Occurred More Than One Year Prior To
     This Action ...................................................................................................... 13

CONCLUSION ......................................................................................................... 15

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Statutes**

4

15 U.S.C. § 77k..............................................................................................................4

5

15 U.S.C. § 77m.................................................................................................2, 9, 13, 14

6

Cal. Corp. Code § 16306.................................................................................................7

7

**Cases**

8

*Anderson v. Binance,*

9

    2022 WL 976824 (S.D.N.Y. Mar. 31, 2022)...............................................14, 15

10

*Ashcroft v. Iqbal,*

11

    556 U.S. 662 (2009)........................................................................................9

12

*Brody v. Homestore, Inc.,*

13

    2003 WL 22127108 (C.D. Cal. Aug. 8, 2003)..............................................11

14

*Capri v. Murphy,*

15

    856 F.2d 473 (2d Cir. 1988).......................................................................4, 7

16

*In re Charles Schwab Corp. Sec. Litig.,*

17

    257 F.R.D. 534 (N.D. Cal. 2009)....................................................................8

18

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.,*

19

    2012 WL 12893520 (C.D. Cal. Feb. 16, 2012) ..............................................2

20

*City of Pontiac Gen. Emps.' Ret. Sys. V. MBIA, Inc.,*

21

    637 F.3d 169 (2d Cir. 2011) ........................................................................14

22

*In re Daou Sys., Inc.,*

23

    411 F.3d 1006 (9th Cir. 2005) ...................................................................5, 10

24

*Davy v. Paragon Coin, Inc.,*

25

    2021 WL 2940200 (N.D. Cal. Mar. 26, 2021)...............................................6

26

*Diskin v. Lomasney & Co.,*

27

    452 F.2d 871 (2d Cir. 1971)........................................................................14

28

*Dreiling v. Am. Exp. Co.*,

    458 F.3d 942 (9th Cir. 2006) ..................................................................................... 11

*FCC v. Fox Television Studios, Inc.*,

    556 U.S. 502 (2009) ................................................................................................... 13

*Hollifield v. Resolute Cap. Partners Ltd., LLC*,

    2023 WL 4291524 (C.D. Cal. May 12, 2023) ....................................................... 12

*Hudson v. Sherwood Sec. Corp.*,

    1989 WL 108797 (N.D. Cal. July 27, 1989) ......................................................... 11

*In re Keegan Mgmt. Co., Sec. Litig.*,

    1991 WL 253003 (N.D. Cal. Sept. 10, 1991) .......................................................... 4

*In re Lehman Bros. Sec. & Erisa Litig.*,

    681 F. Supp. 2d 495 (S.D.N.Y. 2010) ..................................................................... 9

*Lewis v. Casey*,

    518 U.S. 343 (1996) ................................................................................................... 13

*Lujan v. Defenders of Wildlife*,

    504 U.S. 555 (1992) ................................................................................................... 13

*In re Med. Cap. Sec. Litig.*,

    2010 WL 11508331 (C.D. Cal. Aug. 11, 2010) .................................................... 14

*Pino v. Cardone Cap. LLC*,

    55 F.4th 1253 (9th Cir. 2023) ........................................................................ 5, 10, 12

*Pinter v. Dahl*,

    486 U.S. 622 (1988) .......................................................................................... *passim*

*Pirani v. Slack Techs., Inc.*,

    445 F. Supp. 3d 367 (N.D. Cal. 2020) ..................................................................... 8

*In re Portal Software, Inc. Sec. Litig.*,

    2006 WL 2385250 (N.D. Cal. Aug. 17, 2006) ....................................................... 8

*Primo v. Pac. Biosciences of Calif., Inc.*,

    940 F. Supp. 2d 1105 (N.D. Cal. 2013) ................................................................... 8

*Russello v. United States*,
    464 U.S. 16 (1983)........................................................................5, 14

*Ryder Int'l Corp. v. First Am. Nat. Bank*,
    943 F.2d 1521 (11th Cir. 1991) ....................................................5, 8

*Schneider v. Cal. Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998) ...........................................................7

*Schneider v. Traweek*,
    1990 WL 169856 (C.D. Cal. Sept. 5, 1990)......................................4

*SEC v. Ripple Labs, Inc.*,
    2023 WL 4507900 (S.D.N.Y. July 13, 2023) ...................................1

*Shain v. Duff & Phelps Credit Rating Co.*,
    915 F. Supp. 575 (S.D.N.Y. 1996).....................................................9

*In re Shart*,
    2014 WL 6480307 (B.A.P. 9th Cir. Nov. 19, 2014).........................7

*Shaw v. Digit. Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996)...............................................................7

*Siemers v. Wells Fargo & Co.*,
    2006 WL 3041090 (N.D. Cal. Oct. 24, 2006) .................................13

*Slack Techs., LLC v. Pirani*,
    143 S. Ct. 1433 (2023).........................................................................5

*In re Tezos Sec. Litig.*,
    2018 WL 4293341 (N.D. Cal. Aug. 7, 2018)...............................6, 12

*Toombs v. Leone*,
    777 F.2d 465 (9th Cir. 1985) ............................................................14

*Underwood v. Coinbase Glob., Inc.*,
    2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023).........................9, 11, 13

*Vanguard Specialized Funds v. VEREIT Inc.*,
    2016 WL 5858735 (D. Ariz. Oct. 3, 2016)......................................11

*Vargas-Ramos v. Specialized Loan Servicing LLC*,

    2022 WL 18397505 (C.D. Cal. Sept. 21, 2022)................................................................. 8

*Warth v. Seldin*,

    422 U.S. 490 (1975) ........................................................................................................ 3

*Zwerling v. Ford Motor Co.*,

    2023 WL 2899524 (N.D. Cal. Apr. 10, 2023) ................................................................. 3

**Other Authorities**

Violation, BLACK'S LAW DICTIONARY (11 ed. 2019) ............................................................. 14

**PRELIMINARY STATEMENT**

Defendants' Motion to Dismiss (the "Motion") made clear that the Amended Complaint must be dismissed because Plaintiffs failed to adequately plead that any individual Defendant was a statutory seller – a required element of Plaintiffs' sole claim – and because Plaintiffs' claim is time-barred.  Plaintiffs concede in their Response to Defendants' Motion to Dismiss (the "Opposition") that they did not purchase any COMP tokens from Defendants, Opp. at 21, and do not attempt to argue that any individual Defendant engaged in any conduct that could be considered solicitation.  Instead, Plaintiffs shift focus and now argue that the "Compound DAO" (a purported entity in which *Plaintiffs* are also partners under their theory) engaged in solicitation, and that the "Compound DAO's" solicitations can be attributed to each Defendant as its "partners."[1]  But the plain text of Section 12 of the Securities Act forecloses Plaintiffs' attempt to hold alleged partners liable for the acts of a purported partnership.

Moreover, even if Section 12 permitted this sort of claim against partners (it does not), the Amended Complaint fails to allege anything amounting to actionable solicitation on the part of the "Compound DAO."  The vast majority of the "Compound DAO's" alleged solicitations precede the formation of that supposed partnership and thus cannot support the claim that any "partnership" engaged in solicitation.  And the few remaining allegations fall far short of meeting the standard for solicitation, which requires, among other elements, that relevant statements successfully "urge"

---

[1]     In their Opposition, Plaintiffs wrongly assert that Defendants "concede" several points that Defendants vigorously contest. Opp. at 2–3, 8, 18. First, Plaintiffs assert that Defendants concede that they formed a general partnership. *Id.* at 2, 18. But Defendants expressly reserved all arguments regarding any supposed partnership and whether it can be sued, and did not admit the truth of any allegations in the Amended Complaint. *See* Mot. at 2 nn.1 & 2. Second, Plaintiffs claim that "[i]n line with recent court decisions and regulatory action," Defendants do not deny that the COMP token is a security. Opp. at 2. Again, Defendants reserved all rights as to this point, *see* Mot. at 5 n.7, and *do* intend to vigorously contest whether COMP tokens are securities – a basic requirement to establish a violation of Section 12 of the Securities Act – should the Motion be denied. In fact, a recent summary judgment decision specifically found that a cryptocurrency token purchased on a secondary market (as here) is not a "securities" transaction and thus fails that requirement, undermining Plaintiffs' entire theory of liability. *See SEC v. Ripple Labs, Inc.*, 2023 WL 4507900, at *8 (S.D.N.Y. July 13, 2023) ("XRP, as a digital token, is not in and of itself a 'contract, transaction[,] or scheme' that embodies the *Howey* requirements of an investment contract."). Third, Plaintiffs claim that the "Compound DAO" conceded that "COMP was actually a revenue-raising device," Opp. at 3, but Defendants again have not conceded this point, and the "Compound DAO" could not have made this concession given that it has not been served and has not appeared in this case.

Plaintiffs to purchase the specific "security" in question.  The statements on which Plaintiffs rely at most describe the positive aspects of the Compound protocol and its governance process.  Such allegations do not amount to solicitation under controlling Supreme Court and Ninth Circuit law.

Finally, Plaintiffs' claim is also time-barred.  Plaintiffs do not contest in their Opposition that the alleged statements they seek to construe as solicitations occurred more than one year before this action was filed.  *See* Mot. at 12–13.  Instead, they argue that this action is timely because the one-year statute of limitations is triggered by Plaintiffs' purchases, not Defendants' alleged violations.  But that argument contravenes the plain language of the Securities Act, which requires that a claim be "brought within one year after the *violation* upon which it is based," 15 U.S.C. § 77m (emphasis added), and finds no support in any case law.

## ARGUMENT

### I.   Plaintiffs Fail To Adequately Allege That Defendants Are Statutory Sellers

Plaintiffs' sole claim, which arises under Section 12(a)(1) of the Securities Act, applies only to individuals and entities that (1) "passed title, or other interest in the security, to the buyer for value," or (2) "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities' owner." Mot. at 6 (quoting *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988)).  Plaintiffs concede that Defendants did not sell them any COMP tokens, and their solicitation allegations fail as a matter of law, so the Amended Complaint must be dismissed.

#### a.   Plaintiffs' Opposition Concedes That Defendants Were Not Direct Sellers

Plaintiffs concede that no Defendant passed title to any Plaintiff. Opp. at 21 (stating that it "is not in dispute" that Plaintiffs did not purchase COMP tokens directly from any Defendant).  As to *Pinter*'s first prong, that concession is decisive.  *Pinter*, 486 U.S. at 644 n.21 (Section 12(a)(1) liability attaches "only [to] the buyer's immediate seller").  Plaintiffs' assertion that the "Compound DAO" "distributed" tokens *to others*, Opp. at 21–22, is insufficient to state a claim under *Pinter*'s first prong.  *See* Mot. at 7 (citing *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2012 WL 12893520, at *5 (C.D. Cal. Feb. 16, 2012) (dismissing claim on statutory seller grounds where

1    plaintiffs alleged "[s]ome members of the proposed Class purchased shares directly from

2    [defendants]," but plaintiffs themselves did not) (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975))).

3            **b. The Opposition's Assertion That Defendants Solicited Plaintiffs' Purchases**

4                **Also Fails As A Matter Of Law**

5        Plaintiffs fare no better under *Pinter*'s second prong. In their Opposition, Plaintiffs do not

6    even attempt to identify any allegations in their Amended Complaint showing that any individual

7    Defendant engaged in conduct that would amount to solicitation. Rather, they argue only that the

8    "Compound DAO" engaged in solicitation, for which they seek to hold Defendants liable as

9    purported "partners" of the "Compound DAO partnership." Even if this theory were adequately

10   alleged in the Amended Complaint (and it is not), partnership liability does not support a cause of

11   action against the individual Defendants under the Securities Act and Supreme Court case law. In

12   any event, Plaintiffs fail to allege facts showing that the "Compound DAO" engaged in any

13   actionable solicitation.

14            **i. Plaintiffs Abandon Any Argument That The Individual Defendants**

15              **Solicited Their Purchases**

16        As demonstrated in the Motion, Plaintiffs fail to plead that any individual Defendant

17   successfully solicited Plaintiffs' purchases of COMP tokens, and at most rely on improper group

18   pleading in an attempt to plead that any Defendant engaged in solicitations. *See* Mot. at 7–8, 10 &

19   n.10. The Opposition does not dispute this and instead shifts to argue that the "Compound DAO"

20   solicited sales of COMP tokens. Opp. 1–2; *see also id*. at 11–12 (asserting that the "Compound

21   [DAO] Solicited Plaintiffs' Purchases" and that "each Defendant is liable to Plaintiffs based on the

22   partnership's solicitation activities"). Thus, Plaintiffs have abandoned any argument that each

23   Defendant's actions solicited their sales. *Zwerling v. Ford Motor Co.*, 2023 WL 2899524, at *4

24   n.4 (N.D. Cal. Apr. 10, 2023) ("[L]itigants waive arguments by failing to raise them in an

25   opposition to a motion to dismiss.") (quoting *Jones v. Regents of Univ. of Cal.*, 2022 WL 1137089,

26

27

28

1  at *2 (N.D. Cal. Apr. 18, 2022)).  This alone forecloses the claim that any individual Defendant is

2  a statutory seller.

3           **ii.**   **Plaintiffs' Theory Of Partnership Liability Is Not Allowed Under The**

4                    **Securities Act**

5       Instead of arguing that any Defendant is liable based on its own alleged solicitation,

6  Plaintiffs claim that each Defendant is liable for "Compound DAO's" alleged solicitation because

7  each Defendant is supposedly a general partner in the "Compound DAO."  But the Securities Act

8  does not allow that theory of partnership liability.

9       Even assuming the "Compound DAO" is a partnership – a point that Defendants do not

10  concede in the litigation – it is well settled that, under Section 12, "liability extends only to *the*

11  *person who successfully solicits the purchase*." *Pinter*, 486 U.S. at 647 (emphasis added); *see also*

12  *In re Keegan Mgmt. Co., Sec. Litig.*, 1991 WL 253003, at *11 (N.D. Cal. Sept. 10, 1991) (rejecting

13  aiding and abetting liability for Section 12 claim "[b]ecause the language of Section 12 suggests

14  that Congress intended to limit liability to one who offers or sells the security"); *Capri v. Murphy*,

15  856 F.2d 473, 478–79 (2d Cir. 1988) (citations omitted) ("While there is no doubt that [defendant]

16  LCG played a major role in setting up the [partnership], that is not sufficient to cast LCG as a

17  'seller.'  Instead, plaintiffs must show that LCG actually solicited their investment in [the

18  partnership].").  For this reason, claims under Section 12 are properly dismissed where plaintiffs

19  do not adequately allege a defendant *personally* engaged in actionable solicitation.  *See, e.g.*,

20  *Keegan*, 1991 WL 253003, at *11; *Schneider v. Traweek*, 1990 WL 169856, at *17 (C.D. Cal. Sept.

21  5, 1990) ("Applying the standard set forth in *Pinter*, it is evident that Defendant Fainsbert's alleged

22  status as the 'Secondary General Partner' does not make him, '[b]y definition a seller of Traweek

23  85–25 securities.'").

24       This case law properly applies the plain text of Section 12, which forecloses holding any

25  Defendant individually liable for the alleged actions of the "Compound DAO" as a whole.  Unlike

26  Section 11 of the Securities Act, where Congress expressly extended liability to "every person who

27  was a . . . partner in the issuer," 15 U.S.C. § 77k(a)(2), Congress did not extend liability to partners

28  in Section 12.  "[W]here Congress includes particular language in one section of a statute but omits

1   it in another section of the same Act, it is generally presumed that Congress acts intentionally and

2   purposely in the disparate inclusion or exclusion."  *Russello v. United States*, 464 U.S. 16, 23

3   (1983)); *see also Slack Techs., LLC v. Pirani*, 143 S. Ct. 1433, 1442 n.3 (2023) (noting that Section

4   11 and Section 12 "contain distinct language that warrants careful consideration").  Congress

5   plainly made a decision to extend only Section 11 liability to partners, but not Section 12, and the

6   Court cannot ignore that clear statutory distinction.

7        Finally, Plaintiffs offer no authority supporting their argument that Section 12 liability

8   extends to partners, only briefly asserting that "Defendants do not deny that they are liable for

9   Compound's actions as its partners."  Opp. at 22.  But Defendants do contest the validity of this

10   theory, *see* Mot. at 2 nn.1 & 2, particularly where the Amended Complaint does not clearly set forth

11   a theory of how any alleged partnership relationship can overcome the requirements for pleading

12   that any individual Defendant engaged in solicitation under *Pinter*.

13        **iii.   Plaintiffs Fail To Adequately Allege That The "Partnership" Solicited**

14        **Their Purchases**

15        Even if Plaintiffs were permitted to plead a Section 12 claim against each Defendant based

16   on the "Compound DAO" soliciting their purchase of COMP tokens, Plaintiffs do not adequately

17   allege that the "Compound DAO" engaged in any solicitation here.  The Ninth Circuit has made

18   clear that to plead conduct amounting to solicitation, a "plaintiff must allege that the defendants . . .

19   urge[d] another to purchase a security."  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005));

20   *see also Pino v. Cardone Cap. LLC*, 55 F.4th 1253, 1259 (9th Cir. 2023) (requiring that a defendant

21   "urge another to purchase a security" in order to plead solicitation); *accord Ryder Int'l Corp. v.*

22   *First Am. Nat. Bank*, 943 F.2d 1521, 1532 (11th Cir. 1991) (no statutory seller liability where

23   defendant "did not specifically recommend or 'talk [the plaintiff] into buying'" the security); *see*

24   *also* Mot. at 8–12.  As Defendants have already shown in their Motion, *id.*, the facts alleged in the

25   Amended Complaint do not meet this standard, and nothing in Plaintiffs' Opposition changes this

26   result.

27

28

## A. None Of Plaintiffs' Allegations Constitutes Solicitation

Plaintiffs offer five theories as to how the "Compound DAO" itself engaged in solicitation. Opp. at 12–19. But these theories fundamentally misconstrue the standard for solicitation liability. According to Plaintiffs, solicitation "encompasses all forms of enabling and encouraging securities purchases." *Id.* at 9–10 (arguing that "defendants 'solicit' through all manner of conduct directed at producing securities purchases"). That standard runs headlong into the Supreme Court's holding that being "a substantial factor in causing the transaction to take place" is not sufficient to plead solicitation. Mot. at 9–10 (citing *Pinter*, 486 U.S. at 649–50). Simply "enabling" a purchase of a purported security was not enough in *In re Tezos Securities Litigation*, where the court rejected a plaintiff's solicitation argument against a defendant who allegedly "provid[ed] [ICO] investors with virtual currency conversion services" and "contribut[ed] these virtual currencies to the Tezos ICO on behalf of investors." 2018 WL 4293341, at *9–10 (N.D. Cal. Aug. 7, 2018). Rather, courts require far more before finding that a plaintiff has adequately pleaded solicitation, such as allegations that the defendant offered to increase the purchasers' holdings by 10% in email communications and participated in hiring a celebrity endorser to tout potential sales. *Davy v. Paragon Coin, Inc.*, 2021 WL 2940200, at *8 (N.D. Cal. Mar. 26, 2021); *see* Second Am. Compl. ¶¶ 252–56, *Davy v. Paragon Coin, Inc.*, No. 4:18-cv-00671-JSW (N.D. Cal. June 10, 2019), ECF No. 101. Though Plaintiffs insist that they do not seek to "resurrect the 'substantial factor' test" or penalize "collateral participants," Opp. at 9–13, Plaintiffs impermissibly seek to impose substantial factor liability by another name.

Reading the Amended Complaint's allegations in light of the proper standard – not Plaintiffs' disguised substantial factor test – none of Plaintiffs' five theories constitute solicitation.

*First*, Plaintiffs' argument that the "Compound DAO" was the "key player" in bringing COMP tokens to market and that "Compound was responsible for every aspect of COMP's design, creation, and distribution to the general public," Opp. at 12, is both factually unsupported and insufficient to state a solicitation claim. There is not a single allegation in the Amended Complaint suggesting that the "Compound DAO" brought COMP tokens to market. Plaintiffs cite allegations in the Amended Complaint that describe conduct by *Compound Labs* that pre-dates the alleged

transition to a DAO in June 2020. *See, e.g.*, AC ¶ 46 (alleging a statement in May 2020 that token holders "would soon" have control). Neither the "Compound DAO" nor any of its alleged "partners" can be charged with liability for designing or creating COMP tokens before the "Compound DAO" even existed. Cal. Corp. Code § 16306(b) ("A person admitted as a partner into an existing partnership is not personally liable for any partnership obligation incurred before the person's admission as a partner."); *see also In re Shart*, 2014 WL 6480307, at *18 (B.A.P. 9th Cir. Nov. 19, 2014) (holding that in order to find liability, "it would be necessary to establish the date the partnership was created, because a new partner is generally not liable for the debts of an existing firm."). And, in any event, playing a key role in the initial launch of a token is not grounds for solicitation liability. *See Capri*, 856 F.2d at 478–79 (playing "a major role in setting up the [partnership]" not sufficient absent showing defendant "actually solicited [plaintiffs'] investment"); *see also Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1215 (1st Cir. 1996) (explaining, in the context of a firm commitment underwriting, that an issuer "cannot be held liable as [a] 'seller[]' under Section 12[(a)](2) unless they actively 'solicited' the plaintiffs' purchase of securities to further their own financial motives"). Plaintiffs also have already conceded that they did not buy tokens in the initial distribution of COMP tokens on June 16, 2020, or any other distribution, Opp. at 21; *supra* at 2–3, and therefore cannot base their solicitation claim on such a distribution. *See Pinter*, 486 U.S. at 648 ("The language and purpose of § [12(a)(1)] suggest that liability extends only to the person who successfully solicits *the* purchase.") (emphasis added).

     *Second*, Plaintiffs argue that "Compound persuaded multiple crypto asset exchanges to list COMP for trading." Opp. at 13. This theory, which is based on conduct allegedly encouraging and facilitating listings, fails for two reasons. To begin with, the underlying allegations in the Amended Complaint suggest only that *Compound Labs* – which is not a party in this litigation – assisted Coinbase with respect to the Earn program. *See* AC ¶¶ 66, 70–73. Those allegations cannot support the Opposition's implausible argument that a so-called partner Defendant took any such action with respect to Coinbase or, for that matter, any other exchange. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such

as a memorandum in opposition to a defendant's motion to dismiss."); *Vargas-Ramos v. Specialized Loan Servicing LLC*, 2022 WL 18397505, at *4 (C.D. Cal. Sept. 21, 2022) (disregarding "allegations in the Opposition that contradict the allegations in the Complaint").[2]

Plaintiffs' second theory also falters because, as explained in the Motion, *see* Mot. at 9–10, statements encouraging and facilitating listings are not the same as statements urging potential purchasers to buy COMP tokens. *See Ryder*, 943 F.2d at 1532 (no statutory seller liability where defendant "did not specifically recommend or 'talk [the plaintiff] into buying'" the security). Plaintiffs offer no sound reason to treat such statements as solicitations. All of the cases they cite are inapposite because, unlike here, the defendants there signed a registration statement. *See Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 384 (N.D. Cal. 2020), *vacated and remanded sub nom. Slack Techs., LLC v. Pirani*, 143 S. Ct. 1433 (2023); *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1126 (N.D. Cal. 2013); *In re Portal Software, Inc. Sec. Litig.*, 2006 WL 2385250, at *4 (N.D. Cal. Aug. 17, 2006); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 549 (N.D. Cal. 2009). Courts have held that signing a registration statement can be sufficient to allege solicitation of the purchase of securities. But here, Plaintiffs have not alleged specific conduct urging the purchase of their tokens, much less a registration statement or other document bearing Defendants' signatures that does so.

*Third*, Plaintiffs argue that Coinbase's statements related to the Coinbase Earn program urged the purchase of COMP tokens. Opp. at 14–15 (citing AC ¶ 70). But these statements are irrelevant because they were made not by any Defendant, but by non-party Coinbase (which is not alleged to be a partner in the "Compound DAO"). Furthermore, Plaintiffs offer pure conjecture in the Opposition that "Compound" paid Coinbase to advertise COMP tokens for purchase, Opp. at 14, but allege no facts to plausibly support any such inference. Although the Opposition employs the vague term "Compound" in connection with these allegations, the portion of the Amended

---

[2]    Plaintiffs' allegation, made on "information and belief," that the "Compound DAO" worked with "at least one of the [unnamed] Partner Defendants" to list COMP tokens for trading, AC ¶ 63, is wholly insufficient to state a claim against any of the Defendants here, much less all of them, *see* Mot. at 7. Moreover, the contradiction between the Amended Complaint and the Opposition is not resolved by Plaintiffs' vague allusion to some other unnamed party working with Coinbase, *see* AC ¶ 70, which fails even under notice pleading standards, *see* Mot. 9–10.

1    Complaint to which it cites alleges that "Compound Labs" (a non-defendant) "and/or one or more

2    [unnamed] Partner Defendants" paid Coinbase in connection with this conduct. *See id.* (citing AC

3    ¶¶ 70–73). This is insufficient as a matter of law. *See Shain v. Duff & Phelps Credit Rating Co.*,

4    915 F. Supp. 575, 582–83 (S.D.N.Y. 1996) (no solicitation liability under agency theory without

5    allegations of control); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial

6    plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable*

7    inference that the defendant is liable for the misconduct alleged.") (emphasis added).

8           In any event, courts frequently hold that making a security look "attractive" in exchange for

9    some form of remuneration is not sufficient to constitute solicitation. *See, e.g.*, *In re Lehman Bros.*

10   *Sec. & Erisa Litig.*, 681 F. Supp. 2d 495, 499–500 (S.D.N.Y. 2010), *aff'd sub nom. In re Lehman*

11   *Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011) (rating agency that collaborated with

12   issuer on drafting prospectus supplements and determining credit enhancements did not engage in

13   solicitation). In fact, just recently, another court rejected allegations that Coinbase solicited the

14   sale of digital tokens (including COMP tokens) where it "promoted the sale of Tokens by providing

15   users with descriptions of each Token and its purported value proposition, participated in direct

16   promotions, including airdrops of free Tokens designed to increase trading volume, wrote news

17   updates on price movements of the Tokens and linked to stories about the Tokens published across

18   the internet." *Underwood v. Coinbase Glob., Inc.*, 2023 WL 1431965, at \*9 (S.D.N.Y. Feb. 1,

19   2023) (brackets, citations and quotations omitted). If that alleged conduct was insufficient to

20   establish Coinbase's solicitation, then *a fortiori*, Plaintiffs cannot establish that any Defendant

21   engaged in solicitation by allegedly paying Coinbase to do the same.[3]

22          *Fourth*, Plaintiffs contend that general statements regarding COMP's governance and

23   structure constitute solicitation. Opp. at 15–17. Again, the actual allegations in the Amended

24   Complaint concerning decentralization and governance that Plaintiffs seek to attribute to the

---

[3]      In addition, Plaintiffs' allegations with respect to Coinbase Earn are time-barred even under Plaintiffs' interpretation of the relevant statute of limitations because the only two named Plaintiffs who received tokens via Coinbase Earn – Amanda Houghton and Susan Franklin – allegedly received those tokens in February and July 2021, respectively, more than a year prior to filing this action. AC ¶¶ 16–17; *see* 15 U.S.C. § 77m (providing for a one-year statute of limitations for Section 12(a)(1) claims).

"Compound DAO" all refer to statements and conduct that occurred *prior* to the supposed DAO's formation date on June 16, 2020, *id*. at 15 (citing AC ¶¶ 40–43, 45–47), and therefore cannot be imputed to Defendants as purported partners in the "Compound DAO," *see supra* at 6–7. Plaintiffs are also wrong in asserting that by discussing COMP's governance, Defendants somehow "urged" Plaintiffs to purchase COMP tokens. Describing COMP's governance structure merely conveys factual information, which, as described below, is not solicitation. *See infra* at 11. Plaintiffs argue that "solicitors who successfully urge" purchases because of COMP's governance are statutory sellers no less than if they "told people to buy" for a different reason. Opp. at 16. But by allegedly making statements describing COMP's governance (which no Plaintiff alleges to have seen or claims was directed at potential purchasers, as opposed to existing holders), neither the "Compound DAO" nor any Defendant "told [Plaintiffs] to buy" at all, or otherwise attempted to persuade anyone to purchase COMP tokens because of its governance structure (or anything else, for that matter).

*Fifth*, Plaintiffs argue that the "Compound DAO" solicited Plaintiffs' purchases by "promoting the Compound business." Opp. at 17–19. But again, this argument seeks to water down this Circuit's standard for solicitation and disregards the nature of the statements alleged in the Amended Complaint, which did not urge the purchase of COMP tokens.

The Ninth Circuit's recent decision in *Pino* reiterates the well-settled requirement that a defendant must "urge another to purchase a security" to satisfy the solicitation prong of *Pinter*. *See Pino*, 55 F.4th at 1259 (a defendant must "urge another to purchase a security" to engage in solicitation) (quoting *Daou*, 411 F.3d at 1029). Though *Pino* held that solicitation need not be face-to-face or have targeted the plaintiff, *Pino* nevertheless involved explicit requests for users to buy securities using modern means of mass communication. *See id*. at 1256 (citing statements including "[b]y accessing social media, I am offering investment opportunities to the everyday investor, like you!").[4]

---

[4]     As explained in the Motion, *Pino* departed from prior precedent and deepened a circuit split by holding that one can be liable for soliciting sales of securities by means of social media posts even if the defendant did not directly target the plaintiff who purchased the securities, and the *Pino* defendants have filed a petition for writ of certiorari. *See* Mot. at 8 n.8. The Supreme Court has since requested a response from the *Pino* plaintiff. If *Pino* is reversed, Plaintiffs' claims would fail

Regardless of whether through mass communications or one-on-one conversations, providing factual information about a purported security that does not "urge" someone to purchase is not solicitation. *See* Mot. at 11–12; *see Hudson v. Sherwood Sec. Corp.*, 1989 WL 108797, at *1 (N.D. Cal. July 27, 1989), *aff'd*, 951 F.2d 360 (9th Cir. 1991), *and aff'd sub nom. Hudson v. Richard A. Eisner & Co.*, 951 F.2d 360 (9th Cir. 1991) (no Section 12 liability where defendant made favorable statements about issuer's working capital and financial reports); *Brody v. Homestore, Inc.*, 2003 WL 22127108, at *5 (C.D. Cal. Aug. 8, 2003) (underwriters who "met with potential investors and money managers and presented highly favorable information about the Company, including forecasts of strong revenue and profit growth," did not solicit sales); *Vanguard Specialized Funds v. VEREIT Inc.*, 2016 WL 5858735, at *17 (D. Ariz. Oct. 3, 2016) (participating in roadshow not solicitation); *Underwood*, 2023 WL 1431965, at *9.[5]

Here, Plaintiffs allege acts of solicitation that amount to nothing more than factual descriptions of Compound's business model. As to many of the Defendants, the most that Plaintiffs can muster is statements "that COMP's value was tied to Compound's business prospects." Opp. at 18.[6] Such descriptive statements simply do not urge the purchase of a security. Plaintiffs also conflate statements regarding the Compound *protocol* with statements about the COMP *token*. *Id.* at 17–18. But only the COMP token is alleged to be an unregistered security. The meager statements that Plaintiffs cite here pale in comparison to statements found to be solicitations in

---

for the additional independent reason that they do not plead any direct solicitation of Plaintiffs by Defendants.

[5] Plaintiffs argue that SEC Rules 168 and 169, which shield certain factual statements from becoming a basis for solicitation liability, work in their favor because those rules apply only in the case of "'an offering pursuant to a registration statement.'" Opp. 18–19 (quoting 17 C.F.R. § 230.168(3)(a)). But those rules do not support Plaintiffs' negative inference. Rather, those rules and related SEC guidance parallel what courts have held in Section 12 cases. *See* Mot. at 9 n.9. With respect to alleged unregistered securities and registered securities alike, communicating factual information about a business does not constitute solicitation.

[6] Plaintiffs' Opposition makes only fleeting references to such statements by Defendants AH, Polychain, and Gauntlet, cites a single statement by Bain made two years before the alleged formation of the "Compound DAO," *see* Opp. at 3–4 (quoting AC ¶ 32 (quoting https://medium.com/@saliloquy/money-markets-for-cryptoassets-dc02c57c305e)), and does not mention any statements by Defendants Paradigm or Hayes. *See also Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (allowing courts to "consider documents referred to in the complaint").

other cases cited by Plaintiffs, such as *Tezos*.   In contrast to that case, where officers of the defendant issued a "white paper" of great length and specificity "touting" a token, *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *1, 11, there are no allegations of any type of "white paper" touting COMP tokens, or any comparable communication.

### B.   Plaintiffs Fail To Allege A "Successful" Solicitation

As the Motion demonstrates, Section 12 imposes liability only on persons who "successfully" solicited *Plaintiffs'* specific purchases.  *See* Mot. at 12 (citing *Pinter*, 486 U.S. at 647 ("The language and purpose of § [12(a)(1)] suggest that liability extends only to the person who successfully solicits the purchase . . . .")).   Therefore, to adequately plead "successful" solicitation, Plaintiffs must also show that they were actually aware of or influenced by Defendants' alleged actions when purchasing COMP tokens.  *See Hollifield v. Resolute Cap. Partners Ltd., LLC*, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023) (dismissing solicitation claims because "Plaintiffs d[id] not allege that they attended any seminars or dinners or listened to any radio shows" hosted by defendants); *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *9 ("Without averments that he was cognizant of, or influenced by, [defendant] Draper's involvement in the Tezos project, [plaintiff]'s statutory seller claim against Draper is not plausible.").

Unable to allege that they were influenced by or even aware of Defendants' alleged statements (many of which predate their purchases by years), Plaintiffs try to evade this pleading requirement by conflating it with reliance, which is not an element of Section 12.  Opp. at 20–21.  But Plaintiffs' insistence that they need not plead reliance attacks a strawman.  Without inserting a reliance element, *Pinter* still requires that Plaintiffs plausibly allege a causal connection between the alleged solicitation with their purchases.  *Pinter*, 486 U.S. at 648; *see also Hollifield*, 2023 WL 4291524, at *6; *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *9.[7]  Absent such a connection,

---

[7]   Plaintiffs cite *Pino* for the uncontested proposition that reliance is not an element of a claim under Section 12.  Opp. at 20.  Notably, in *Pino*, the plaintiff had alleged that the plaintiff attended a marketing presentation hosted by the defendants and invested in the subject funds thereafter.  *Pino*, 55 F.4th at 1256.  Here, by contrast, Plaintiffs do not allege any awareness of, or that they were privy to, *any* solicitation by *any* Defendant.

Plaintiffs fail to allege that any Defendant is "the person who successfully solicit[ed] the[ir] purchase[s]." *Pinter*, 486 U.S. at 647.[8]

Indeed, as a constitutional matter, Plaintiffs' theory that Section 12 does not require them to allege a link between the purchase and solicitation cannot be right. Accepting such a theory would impermissibly extend Section 12 to plaintiffs who lack Article III standing because their injuries would not be fairly traceable to the defendant's conduct. *See FCC v. Fox Television Studios, Inc.*, 556 U.S. 502, 516 (2009) (explaining that the canon of constitutional avoidance counsels that "ambiguous statutory language [must] be construed to avoid serious constitutional doubts"). Article III's causation requirement demands that a plaintiff's injury be "fairly traceable to the challenged action of the defendant," rather than "the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Accordingly, this Court previously held that a plaintiff lacked standing to sue for Securities Act and Exchange Act violations a broker with whom the plaintiff did not transact or speak. *Siemers v. Wells Fargo & Co.*, 2006 WL 3041090, at *5–7 (N.D. Cal. Oct. 24, 2006). Plaintiffs cannot be permitted to challenge public statements to which Plaintiffs do not allege they were even exposed, Opp. at 12–15, 17, because they lack a "stake in litigating conduct . . . to which [they have] not been subject." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Section 12 cannot be read to authorize claims that are unmoored from Article III's basic requirements.

## II. Plaintiffs' Solicitation Claims Are Time-Barred Because The Alleged "Violation" Occurred More Than One Year Prior To This Action

Even if Plaintiffs could state a Securities Act claim, that claim would be time-barred as a matter of law. The Securities Act requires any action under Section 12(a)(1) to be "brought within one year after the *violation* upon which it is based." Mot. at 12 (quoting 15 U.S.C. § 77m (emphasis added)). Plaintiffs therefore may challenge violations – here, alleged acts of solicitation – only if

---

[8]    Plaintiffs' strained argument that *Pinter's* use of the word "successful" "reflects only that there is no liability unless 'a sale has taken place,'" Opp. at 21, makes no sense. If a purchaser never saw, or even was aware of, a particular solicitation, yet purchased the alleged security for other reasons, such solicitation could hardly be considered "successful." And that is not how courts have construed *Pinter*. *See* Mot. at 8–9; *Underwood*, 2023 WL 1431965, at *9.

they occurred within one year of the date this action was filed.  *See Anderson v. Binance*, 2022 WL

976824, at *3 (S.D.N.Y. Mar. 31, 2022) (granting defendants' motion to dismiss where acts of

solicitation occurred more than a year before plaintiffs filed their complaint).  Unable to dispute

that this action was filed more than one year after each challenged act of solicitation, *see* Mot. at

12–13, Plaintiffs instead argue that the statute of limitations should run from the date of their

purchases, rather than the date of Defendants' alleged solicitations.  Opp. at 22–24.  But the word

"violation" in the applicable statute of limitations triggers the limitations period based on the

defendant's allegedly wrongful act, not the plaintiff's response to that act.  *See* Violation, BLACK'S

LAW DICTIONARY (11 ed. 2019) ("[a]n infraction or breach of the law; a transgression").  Plaintiffs'

contrary argument would improperly read "violation" out of Section 13 of the Securities Act, and

rewrite the statute by replacing it with "sale."[9]  Courts that have considered this issue have squarely

rejected Plaintiffs' position.  *See Anderson*, 2022 WL 976824, at *3.

Plaintiffs cite no case that has adopted their novel theory in the context of solicitations.

Instead, they rely solely on cases that stand for the uncontroversial proposition that the statute of

limitations for a *direct sale* runs from the date of purchase, as the "violation" in the context of such

a sale occurs on the date of the sale itself.  *See Diskin v. Lomasney & Co.*, 452 F.2d 871, 875–76

(2d Cir. 1971) (defendant was a direct seller who passed title to plaintiffs within the one-year statute

of limitations); *In re Med. Cap. Sec. Litig.*, 2010 WL 11508331, at *4 (C.D. Cal. Aug. 11, 2010)

(statute of limitations running from sale where violation is direct sale, not solicitation); *Toombs v.

Leone*, 777 F.2d 465, 467 (9th Cir. 1985) (same).  Plaintiffs also point to dicta in *Pinter* that the

Securities Act "allow[s] suits for a full year following sale," *see* Opp. at 23 (emphasis removed),

---

[9]      Significantly, Congress used the word "sale" in another limitations provision contained in the Securities Act.  *See* 15 U.S.C. § 77m ("In no event shall any such action be brought to enforce a liability . . . under section 77l(a)(2) of this title more than three years after the sale.").  In interpreting this provision, the Court must therefore give meaning to Congress's distinct use of "violation" and "sale." *Russello*, 464 U.S. 23–24. Plaintiffs' citation to *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 176 (2d Cir. 2011)), Opp. at 24, does not change this calculus.  Unlike in *City of Pontiac*, which interpreted a separate statute of limitations that ran from discovery and turned on the court's interpretation of the accrual of the cause of the action, *see id*. at 175, the specific statutory language here provides that the statute of limitation runs from the "violation," and not "discovery" or "accrual."

1    but that passing reference in a footnote was made in the context of rejecting defendant sellers' *in*

2    *pari delicto* defense.  *Pinter*, 486 U.S. at 637 n.13.

3            Finally, Plaintiffs have no answer to *Anderson v. Binance*, 2022 WL 976824, which took

4    on the exact question here and granted defendants' motion to dismiss based on alleged solicitation

5    that occurred more than a year before plaintiffs filed their complaint, even though the relevant sales

6    occurred within a year of filing.  Unable to distinguish *Anderson* on the facts or law, Plaintiffs argue

7    only that it was wrongly decided.  Opp at. 28.  It was not.

8                                    **CONCLUSION**

9            For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint in its

10   entirety with prejudice.

11

12    Dated: July 27, 2023

13                                              CLEARY GOTTLIEB STEEN & HAMILTON LLP

14                                               */s/ Jennifer Kennedy Park*
                                                Jennifer Kennedy Park (SBN 344888)
15                                              jkpark@cgsh.com
                                                1841 Page Mill Rd Suite 250
16                                              Palo Alto, CA 94304
                                                Tel: +1 (650) 815-4100
17
                                                Roger A. Cooper (Admitted *pro hac vice*)
18                                              racooper@cgsh.com
                                                Jared Gerber (Admitted *pro hac vice*)
19                                              jgerber@cgsh.com
                                                Samuel Levander (Admitted *pro hac vice*)
20                                              slevander@cgsh.com
                                                One Liberty Plaza
21                                              New York, NY 10006
                                                Tel: +1 (212) 225-2000
22
                                                *Attorneys for Defendant*
23                                              *Polychain Alchemy, LLC*

24                                              LATHAM & WATKINS LLP

25                                               */s/ Matthew Rawlinson*
                                                Matthew Rawlinson (SBN 231890)
26                                              matt.rawlinson@lw.com
                                                140 Scott Drive
27                                              Menlo Park, CA 94025
                                                Tel: +1 (650) 328-4600
28
                                                Morgan E. Whitworth (SBN 304907)

morgan.whitworth@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: +1 (415) 391-0600

Douglas K. Yatter (SBN 236089)
douglas.yatter@lw.com
Benjamin Naftalis (Admitted *pro hac vice*)
benjamin.naftalis@lw.com
1271 Avenue of the Americas
New York, NY 10020
Tel: +1 (212) 906-1200

Susan E. Engel (Admitted *pro hac vice*)
susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: +1 (212) 637-2200

*Attorneys for Defendant AH Capital Management,*
*L.L.C.*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP

/s/ Peter B. Morrison
Peter B. Morrison (SBN 230148)
peter.morrison@skadden.com
Zachary M. Faigen (SBN 294716)
zack.faigen@skadden.com
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel: +1 (213) 687-5000

Alexander C. Drylewski (Admitted *pro hac vice*)
alexander.drylewski@skadden.com
One Manhattan West
New York, NY 10001
Tel: +1 (212) 735-3000

*Attorneys for Defendant Paradigm Operations LP*

JENNER & BLOCK LLP

/s/ Kayvan B. Sadeghi
Kayvan B. Sadeghi (Admitted *pro hac vice*)
ksadeghi@jenner.com
1155 Avenue of the Americas
New York, NY 10036
Tel: +1 (212) 891 1600

Benjamin T. Hand (Cal. Bar No. 330451)
bhand@jenner.com
455 Market Street Suite 2100

1

San Francisco, CA 94105
Tel: +1 (628) 267-6800

2

*Attorneys for Defendant Bain Capital Ventures*

3

*(GP), LLC*

4

MORRISON COHEN LLP

5

*/s/ Jason Gottlieb*

6

Jason Gottlieb (Admitted *pro hac vice*)
jgottlieb@morrisoncohen.com

7

Michael Mix (Admitted *pro hac vice*)
mmix@morrisoncohen.com

8

Edward P. Gilbert (Admitted *pro hac vice*)
egilbert@morrisoncohen.com

9

Vani Upadhyaya (Admitted *pro hac vice*)
vupadhyaya@morrisoncohen.com

10

909 Third Avenue

11

New York, NY 10022
Tel: +1 (212) 735-8600

12

13

LONDON & STOUT P.C.
Ellen London (SBN 325580)

14

elondon@londonstoutlaw.com

15

1999 Harrison St., Suite 655
Oakland, CA 94612

16

Tel: +1 (415) 862-8494

17

*Attorneys for Defendants*
*Robert Leshner, Geoffrey Hayes,*

18

*and Gauntlet Networks, Inc.*

19

20

21

22

23

24

25

26

27

28

1

## **FILER'S ATTESTATION**

2

I, Jennifer Kennedy Park, am the ECF User whose ID and password are being used to file

3 this Notice of Motion and Motion to Dismiss.  In compliance with Civil Local Rule 5-1(i), I hereby

4 attest that concurrence in the filing of this document have been obtained from each of the other

5 signatories.

6 Dated: July 27, 2023                          */s/ Jennifer Kennedy Park*
                                                        Jennifer Kennedy Park

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28