UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA HOUGHTON, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ROBERT LESHNER, et al.,<br><br>　　　　Defendants. | Case No. 22-cv-07781-WHO<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 79 |

Plaintiffs are purchasers of COMP tokens, a cryptocurrency created by Compound Labs, Inc. Amended Complaint ("AC") ¶¶ 1-2, 15-17. They assert one cause of action against a range of defendants for violation of sections 5 and 12(a) of the Securities Act of 1933, based on allegations that defendants were "sellers" of unregistered securities. AC ¶¶ 206-216. Some of the defendants, identified below as the Partner Defendants, claim that they are not sellers, statutory or otherwise, and move to dismiss. I find that plaintiffs have plausibly alleged that each of the Partner Defendants solicited plaintiffs' COMP purchases. The Partner Defendants' motion is DENIED. An initial Case Management Conference is set for October 10, 2023 at 2:00 p.m.

## BACKGROUND

Plaintiffs allege that Compound Labs, Inc. created a business ("Compound") that allows users to borrow and lend crypto assets through the Compound Protocol. *Id*. ¶¶ 1, 5. They say that in 2020, Compound Labs transferred control over the Compound business to defendant Compound DAO ("Decentralized Anonymous Organization"), a California general partnership. *Id*. ¶¶ 2, 7. They contend that Compound DAO is currently governed by the holders of the COMP tokens and that more than 50% of the COMP tokens are controlled by fewer than 10 people, including each of the Partner Defendants here who use their majority to exercise control over the Compound business. *Id*. ¶¶ 2, 7.

Defendants Robert Leshner and Geoffrey Hayes are the alleged co-founders of Compound Labs, the entity that created the Protocol that is now owned by Compound DAO, controlling 2.65% and 3.82% of the COMP votes respectively. *Id*. ¶¶ 8-9. Defendant Bain Capital Ventures LLC is a private equity firm whose "crypto division" controls 9.71% of COMP votes and is operated out of San Francisco. *Id*. ¶ 10. Defendant Polychain Academy LLC is an investment fund that controls at least 11.58% of the COMP votes. *Id*. ¶ 11. Defendant AH Capital Management, LLC (d/b/a as Andreesen Horowitz) is a venture capital and investment firm that controls 9.68% of the COMP votes. *Id*. ¶12. Defendant Paradigm Operations LP is an investment firm that controls 4.2% of the COMP votes. *Id*. ¶ 13. Defendant Gauntlet Networks, Inc, is an investment firm that controls 4.77% of COMP votes. *Id*. ¶14. The defendants named in this paragraph are referred to in the Amended Complaint and this Order as the Partner Defendants.

Plaintiffs assert that the Partner Defendants have violated the Securities Act because COMP is an unregistered security and defendants solicited the public's investment in COMP. In the AC, plaintiffs identify acts each individual Partner Defendant took with respect to the creation and governance of COMP or the Compound Protocol, as well as public comments that plaintiffs allege were meant to encourage the public to purchase COMP tokens starting in June 2020. AC ¶¶ 29-38 (creation of Compound Protocol and COMP); ¶¶ 39-47 (governance of COMP); ¶¶ 48-71 (offering COMP to the public). Plaintiffs note that the value of COMP peaked in May 2021 at nearly $500 per token, but deceased in value by half by the Fall of 2021, and allege that the value has continued to fall. AC ¶¶ 90, 159-163.

The Partner Defendants move to dismiss the Amended Complaint, arguing that none of them can be held liable as "statutory sellers" under the Securities Act and because plaintiffs fail to allege that each defendant actively solicited a plaintiff to purchase COMP within the one year statute of limitations. Dkt. No. 79.

**LEGAL STANDARD**

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.     STATUTORY SELLER AND SOLICITATION**

Under Section 12 of the Securities Act, a person may be liable as a "statutory seller" where they either pass title or other interest in the security directly to the buyer, or where they "successfully solicit" someone else to buy a security motivated in part by a desire to serve their own or the security owner's financial interests. *See Pinter v. Dahl*, 486 U.S. 622, 646 (1988) ("The language and purpose of § 12(1) suggest that liability extends only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner. If he had such a motivation, it is fair to say that the buyer 'purchased' the security from him and to align him with the owner in a rescission action.").

3

Plaintiffs admit that they did not buy COMP directly from any of the Partner Defendants and instead purchased COMP on Coinbase's secondary market. They contend that the Partner Defendants are liable as statutory sellers because of their solicitation of COMP. *See Pinter*, 486 U.S. at 647 ("The applicability of § 12 liability to brokers and others who solicit securities purchases has been recognized frequently since the passage of the Securities Act. It long has been 'quite clear,' that when a broker acting as agent of one of the principals to the transaction successfully solicits a purchase, he is a person from whom the buyer purchases within the meaning of § 12 and is therefore liable as a statutory seller."). The Partner Defendants argue that they cannot have solicited plaintiffs' COMP purchases because they were merely "collateral" participants in the transaction and were not parties making "potentially injurious solicitations that are intended to command attention and persuade potential purchasers to invest in the Funds." *Pino v. Cardone Cap.*, LLC, 55 F.4th 1253, 1260 (9th Cir. 2022); *see also Pinter*, 486 U.S. at 651 (noting Congress did not intend to "expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services" to liability under Section 12). They also assert that the "solicitation statements" identified in the AC as having been made by the Partner Defendants regarding COMP fail to amount to solicitation by each Partner Defendant but are, instead, "generic statements detailing certain Defendants' expertise in the digital assets industry," merely describing the operation of and public discussions regarding the Compound protocol. Mot. at 10-12.

Solicitation is broadly construed in the Ninth Circuit. In *Pino*, the Ninth Circuit allowed a broad theory of solicitation, holding that a real estate management company that invested in property by pooling money from many other investors could be a statutory seller liable for solicitation based on YouTube videos and Instagram posts touting the investments and rates of return. *Pino*, 55 F.4th at 1256;[1] *see also Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341 (11th Cir.

---

[1] In *Pino*, the Ninth Circuit concluded that social media posts generally soliciting sales can be solicitations under Section 12 even if the defendant did not directly or actively target the particular plaintiff. *Pino*, 55 F.4th at 1256, 1258. The Partner Defendants contend that aspect of *Pino* is in conflict with other circuit court decisions and preserve their rights to supplement their argument if the Supreme Court grants certiorari in the *Pino* case. Mot. at 8 n. 8.

4

2022) (finding solicitation can occur within the meaning of the Securities Act, "by promoting a security in a mass communication," and as long as the communication attempts to "urge or persuade" another to buy a particular security, the "efforts at persuasion need not be personal or individualized."); *Davy v. Paragon Coin, Inc.*, No. 18-CV-00671-JSW, 2021 WL 2940200, at *8 (N.D. Cal. Mar. 26, 2021) (investor who was alleged to have edited and commented on a White Paper and investor presentation and officer of company that negotiated and purchased "ad placements with companies that operate virtual currency related websites" potentially liable for solicitation); *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 384 (N.D. Cal. 2020), aff'd, 13 F.4th 940 (9th Cir. 2021), *vacated and remanded sub nom. Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023) (recognizing pre-*Pino* split in circuit regarding whether signing of offering statements sufficient to plead solicitation, but holding sufficient allegations where "all of the Individual Defendants signed the Offering Materials, that certain defendants solicited sales at the Investor Day, and that all of the Individual Defendants were financially motivated to solicit sales").[2]

In one particularly instructive pre-*Pino* case from this District, the Hon. Richard Seeborg held that a company's comprehensive involvement with the design, operation and monetization of a cryptocurrency enterprise was sufficient to allege statutory seller liability. *See In re Tezos Sec. Litig.*, No. 17-CV-06779-RS, 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018) (allegations of entities' "comprehensive involvement with the [] planning and execution" of cryptocurrency offering, including "creation of the Tezos technology, establishment of a legal entity to monetize DLS' interest in that technology, development of a platform to facilitate said monetization, and minute-to-minute oversight of the monetization process itself" rise above the level of "collateral participation").

The plaintiffs' numerous allegations regarding the Partner Defendants' roles with Compound and then Compound DAO, including their design and governance decisions, their efforts to successfully monetize COMP and bring it to secondary markets, and their public

---

[2] The Ninth Circuit's *Pirani* decision was vacated and reversed and remanded on other grounds so that the District Court could determine whether plaintiff could demonstrate purchase of shares traceable to challenged statements. *Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023).

comments, plausibly plead solicitation under *Pino*.[3] What each individual or entities' role was or is – as supported by the public comments each made regarding Compound Labs, the Compound Protocol, Compound DAO, or COMP – and whether each role was or is extensive enough to qualify as an actionable "solicitation" for a particular Partner Defendant or for the partnership as a whole, should be tested on an evidentiary basis.[4]

The two recent cases relied on by the Partner Defendants are inapposite. In *Underwood v. Coinbase Glob., Inc*., No. 21 CIV. 8353 (PAE), 2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023), the court found that the secondary marketplace defendant, Coinbase, could not be held liable for "solicitation" under Section 12 because plaintiffs failed to "describe conduct beyond the 'collateral' participation that *Pinter* and its progeny exclude from Section 12 liability." *Id*. at *9. Here, plaintiffs are not suing the marketplaces where COMP was advertised or traded or suing Coinbase for hosting COMP or posting the Earn videos or writing news articles about COMP. Instead, plaintiffs are suing the entities they plausibly allege not only created the Earn videos or directed Coinbase to create the Earn videos but the entities who created and promoted COMP and then secured the agreement of the secondary markets to allow trading of COMP on their sites.

For similar reasons, *Risley et al. v. Universal Navigation Inc., d/b/a Uniswap Labs, et al*.,

---

[3] The detailed and specific nature of the allegations here distinguish much of the caselaw cited by the Partner Defendants. *See, e.g., Schneider v. Traweek*, No. CV 88-0905 RG (KX), 1990 WL 169856, at *17 (C.D. Cal. Sept. 5, 1990) ("Plaintiffs' allegations that Defendant Fainsbert was the 'Secondary General Partner' of the [] limited partnership and provided unspecified "assistance" in issuing the private placement memorandum [] are simply insufficient under *Pinter* to plead § 12(2) "seller" liability"); *Hollifiel v. Resolute Cap. Partners Ltd., LLC*, No. 2:22-CV-07885-SB-RAO, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023) (allegations that defendants "hosted" "investor seminars, dinners, and radio shows" insufficient as compare to specific allegations that a different defendant "solicited their investments").

[4] The Partner Defendants mischaracterize the breadth of plaintiffs' allegations. For example, they argue that plaintiffs allege that only Compound Labs (the predecessor to Compound DAO) was responsible for the Coinbase Earn Program, and therefore none of the Partner Defendants can be liable for solicitation based on that program. Reply at 7-8. However, the AC alleges that "Compound Labs and/or one or more Partner Defendants agreed to pay Coinbase a commission to sell or provide COMP to its investors, to encourage those investors to invest in COMP through 'education videos' created by or at the direction of one or more Partner Defendants." AC ¶ 70. The Partner Defendants assert that these sorts of inferences regarding their involvement with Compound Labs or the Compound DAO are implausible or irrelevant, but given the statements from the Partner Defendants quoted in the AC regarding their hands-on roles with development of crypto assets in general and COMP in particular, *see* AC ¶¶ 95-113, plaintiffs allegations are sufficient and discovery should be allowed to test them.

No. 22 CIV. 2780 (KPF), 2023 WL 5609200 (S.D.N.Y. Aug. 29, 2023) is inapposite. There, the court considered whether the developers and investors in a trading platform (the "Uniswap Protocol") could be liable as statutory sellers where plaintiffs purchased "scam tokens" using the platform. Not surprisingly, the court held that those who created the platform could not be liable as sellers or for solicitation for harms caused by scammers using the Uniswap Protocol. Not only did the court consider a different issue with respect to differently-situated parties – *i.e.*, liability of platform creators and funders for the conduct of scammers using the platform – but *Risley* rejected a solicitation theory of liability under a materially different standard. *See id.* at \*18 ("fatal to their claims, Plaintiffs offer nothing more than a conclusory allegation that Defendants 'sold, promoted, and/or solicited the Tokens directly to Plaintiffs and the Class members' . . . . Second, and independently fatal, there is no allegation that the alleged solicitation was successful. *See Holsworth v. BProtocol Fund*, No. 20 Civ. 2810 (AKH), 2021 WL 706549, at \*3 (S.D.N.Y. Feb. 22, 2021) (rejecting solicitation claim where plaintiff had not "shown that he was directly contacted by [d]efendants or that he purchased securities as a result of any active solicitations by [d]efendants")." The standard is decidedly broader in the Ninth Circuit, as confirmed by *Pino*, where "direct" contact is not required and liability may flow from mass communications.[5]

In sum, the facts alleged here do not show as a matter of law that the Partner Defendants were mere collateral participants to solicitations. Instead, the allegations support the Partner

---

[5] Relatedly, the Partner Defendants point out that plaintiffs fail to allege reliance on any of the statements or other solicitation-conduct the Partner Defendants engaged in. Mot. at 12, Reply at 12-13. Those allegations, however, are not required for a Section 12 claim. *See Pino*, 55 F.4th at 1260 ("To state a claim under § 12(a)(2), Pino need not have alleged that he specifically relied on any of the alleged misstatements identified in the FAC."); *see also In re Longfin Corp. Sec. Class Action Litig.*, No. 18CV2933 (DLC), 2019 WL 1569792, at \*5 (S.D.N.Y. Apr. 11, 2019), *on reconsideration*, No. 18CV2933(DLC), 2019 WL 3409684 (S.D.N.Y. July 29, 2019) ("To state a claim under Section 12(a)(1) of the Securities Act, a plaintiff need not plead scienter, reliance, or fraud."). The bounds of the causal connection between the Partner Defendants' conduct and plaintiffs' purchasing decisions can be explored in discovery, but given the underlying theory regarding these defendants' creation, design, and control of marketing of COMP, a sufficient casual connection for Article III purposes (Reply at 13) has been alleged at this point. *See also In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005) ("Causation, however, is not a necessary element of a prima facie case under section 12 of the Securities Act. *See Casella v. Webb*, 883 F.2d 805, 808 & n. 8 (9th Cir.1989) (holding that if the alleged misrepresentations are material, a plaintiff is entitled to recovery whether or not the misrepresentations caused the alleged damage.").

Defendants' control over the solicitations or others making solicitations on their behalf and at their direction. *See Shain v. Duff & Phelps Credit Rating Co.*, 915 F. Supp. 575, 582 (S.D.N.Y. 1996) (explaining the Second Circuit in *Capri v. Murphy*, 856 F.2d 473, 478–79 (2d Cir. 1988) "shared this Court's view that solicitation requires direct and personal contact, *or control* over and direction of the person who makes the direct solicitation") (emphasis added); *but see In re Lehman Bros. Sec. & Erisa Litig.*, 681 F. Supp. 2d 495, 500 (S.D.N.Y. 2010), *aff'd sub nom. In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011) (ratings agencies who advised on loans to purchase for pool, assisted in drafting prospective supplements, and collaborated on credit enhancements in support of another entity's work to structure a deal were insufficient for Section 12 liability).

In their Motion and Reply, defendants do not fully engage with the various statements that plaintiffs identify in their AC to specifically contest whether particular statements constitute independent solicitations or can be seen as part of the larger solicitation campaign alleged. Plaintiffs likewise do not address statements made by each of the Partner Defendants in their Opposition. Instead, plaintiffs refer to "Compound" or "Compound DAO" generally and identify the paragraphs in the AC where they allege how the Partner Defendants were involved in creating, designing, and then opening the market for "Compound," including efforts to persuade exchanges to offer COMP, paying exchanges to carry promotional videos, and encouraging investors to purchase COMP and play a role in "governance." Oppo. at 11-18.[6]

As a result of the approach plaintiffs take in their Opposition, grouping the Partner Defendants as "Compound" or "Compound DAO", the Partner Defendants in Reply raise a new issue: "Section 12 of the Securities Act forecloses Plaintiffs' attempt to hold alleged partners liable for the acts of a purported partnership." Reply at 4-5. The Partner Defendants rely on

---

[6] The Partner Defendants argue plaintiffs have engaged in impermissible "group pleading." Reply at 3. However, it is really plaintiffs' Opposition that groups the defendants as "Compound" or "Compound DAO." The AC identifies specific acts taken by each of the individual Partner Defendants with respect to Compound Labs and COMP. *See, e.g.*, AC ¶¶ 34, 35, 37, 95 (initial funding), 44, 50, 80, 93, 110 (identified Partner Defendants active in COMP governance and public debates), 6, 63, 74-75 (public comments and efforts to list COMP), 96-100, 103 (allegations regarding Partner Defendants' hand-on approach and assistance with general crypto projects or Compound specifically), 139-140 (public comments on governance).

caselaw rejecting aiding and abetting liability under Section 12 and argue that the different statutory language in Section 11 (expressly reaching partners) and Section 12 (limiting liability to "[a]ny person") indicates a Congressional intent to exclude partnership liability from Section 12. *See In re Keegan Mgmt. Co. Sec. Litig.*, No. CIV. 91-20084 SW, 1991 WL 253003, at *11 (N.D. Cal. Sept. 10, 1991) (noting the Supreme Court "declined to decide whether someone other than the offeror or seller could be held liable as an aider and abettor"); *see also* 15 U.S.C. § 77k(a)(2) (noting the definition of liability in Section 11, expressly included "every person who was a director of (or person performing similar functions) or *partner* in the issuer at the time of the filing") (emphasis added).

In their sur-reply,[7] plaintiffs point out that the Securities Act defines "any person" to include "a partnership," 15 U.S.C. § 77l(a)(1). They also argue that under state law the individual partners within the Compound DAO partnership may be liable for the acts of the Compound DAO partnership. *See, e.g., Mariani v. Price Waterhouse*, 70 Cal. App. 4th 685, 706 (1999) ("A general partner, of course, is liable for all debts of a partnership.").

I have already concluded that there are sufficient allegations against each of the Partner Defendants to allow the Securities Act claim to go forward at this juncture. What liability may eventually be assessed against Compound DAO is still to be determined.[8] The Partner Defendants have "reserved" their right to contest whether Compound DAO is a general partnership or whether any of them are general partners in that or a related partnership. The exact contours of liability, whether it flows from the acts of "Compound DAO" or flows from the acts of one or more Partner Defendants, cannot be determined at this juncture. Liability is more appropriately tested on a full evidentiary record at summary judgment or trial. Relatedly, the Partner Defendants may be right

---

[7] Plaintiffs seek leave to file a sur-reply on the issue of whether general partnerships can be liable for Securities Act violations as a matter of state law, and the Partner Defendants oppose or in the alternative seek leave to file a response to that sur-reply. *See* Dkt. Nos. 89, 90. The requests for leave are GRANTED. I have fully considered both supplemental filings.

[8] Compound DAO has not appeared in this case. Plaintiffs have twice moved for entry of a Clerk's Default against Compound DAO, but those requests have been denied. *See* Dkt. Nos. 39, 48, 83, 84. Plaintiffs have not yet filed a motion seeking entry of default by the Court (as opposed to the Clerk's Office) for my review and determination.

that even if they are found to be formal partners in the Compound DAO "partnership" and liable for some of all of the Compound DAO's acts, they cannot be liable for acts that predate their entry into the partnership. *See* Reply at 7 (citing Cal. Corp. Code § 16306(b)). When such liability arose or is cut off as to particular partners should be tested at summary judgment. *See, e.g., Capri v. Murphy*, 856 F.2d 473, 478–79 (2d Cir. 1988) (noting that general partnership played major role in setting up a coal mining venture could be liable under Section 12 if the partnership itself "solicited" investments in a mining operation and remanding to district court "for further factual findings on this issue").

## II.  STATUTE OF LIMITATIONS

The Partner Defendants also argue that plaintiffs' allegations fail to satisfy the one-year statute of limitations period that flows from the point of the violation. 15 U.S.C. § 77m. The Partner Defendants assert that plaintiffs have not identified specific acts of solicitation by each specific Partner that occurred within the year prior to the December 2022 filing of this case. Mot. at 13 (noting only three alleged statements occurring after December 8, 2021); *see also* AC ¶¶ 101 (statement by Gauntlet employee), 132 & 133 (statements by Compound Labs). Plaintiffs respond that the triggering act that starts the statute running is the purchase of an unregistered security, which occurred within a year of the filing of this suit. *See Pinter*, 486 U.S. at 637 n. 13 ("Section 12(1)'s deterrent effect is achieved, to a great extent, by a provision allowing suits for a full year following sale. *See* 15 U.S.C. § 77m. Thus, the purchaser of unregistered securities may keep his securities and reap his profit if the securities perform well during the year, but rescind the sale if they do not."); *see also* AC ¶¶ 15-17.

The Partner Defendants describe the language from *Pinter* that plaintiffs rely on as dicta that is in any event limited to "direct sales" falling under the first *Pinter* test defining statutory sellers. They point out that for solicitation-based claims, like the ones here, at least one court has determined that the statute runs from the date of the solicitation. *See, e.g., Anderson v. Binance*, No. 1:20-CV-2803 (ALC), 2022 WL 976824, at *3 (S.D.N.Y. Mar. 31, 2022) ("The statute of limitations runs for one year 'after the violation upon which it was based,' and the violation alleged for the Section 12(a)(1) claim is solicitation [defendant's republication of investor reports],

which occurred earlier than one year of filing."). They also note that where Congress intended the statute of limitations to run from a "sale" as opposed to a "violation," it has made that clear. *See* 15 U.S.C. § 77m.[9]

*Anderson v. Binance* cursorily considered the statute of limitations issue, and I disagree with its conclusion. The act that qualifies a defendant as a "statutory seller" is the sale or the solicitation. However, the triggering event for a Section 12 claim is the purchase of the asset. A plaintiff cannot file a claim unless and until she purchased an unregistered asset. It makes little sense to require a plaintiff to file a suit in less than 12 months after purchase – depending on the timing of the defendant's solicitations – when the deterrent effect of Section 12 allows a purchaser to keep the unregistered security for up to 12 months in order to reap potential profits. *See Pinter*, 486 U.S. at 637 n. 13. In order to serve that deterrent purpose, the statute runs from the purchase.

## CONCLUSION

The motion to dismiss is DENIED. An initial Case Management Conference is set for October 10, 2023, at 2:00 p.m. The Joint Case Management Conference Statement is due October 3, 2023.

**IT IS SO ORDERED.**

Dated: September 20, 2023

William H. Orrick
United States District Judge

---

[9] 15 U.S.C. § 77m provides in full:

> No action shall be maintained to enforce any liability created under section 77k or 77l(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(a)(1) of this title, unless brought within one year after the *violation* upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(a)(2) of this title more than three years after the *sale*.

(emphasis added).