1   LATHAM & WATKINS LLP
    Douglas K. Yatter (SBN 236089)
2     *douglas.yatter@lw.com*
    Benjamin Naftalis (Admitted *pro hac vice*)
3     *benjamin.naftalis@lw.com*
    1271 Avenue of the Americas
4   New York, NY 10020
    Tel: +1 (212) 906-1200
5
    Matthew Rawlinson (SBN 231890)
6     *matt.rawlinson@lw.com*
    140 Scott Drive
7   Menlo Park, CA 94025
    Tel: +1 (650) 328-4600
8
    *Attorneys for AH Capital Management, L.L.C.*
9
    *[Additional Counsel on Signature Page]*
10

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                 SAN FRANCISCO DIVISION

14
    Amanda Houghton; Charles Douglas; and          Case No. 3:22-cv-07781-WHO
15   Susan Franklin, on behalf of themselves and
    all others similarly situated,                 **DEFENDANTS' NOTICE OF MOTION**
16                                                  **AND MOTION TO COMPEL**
                        Plaintiffs,                 **ARBITRATION AND STAY**
17                                                  **PROCEEDINGS**
                   v.
18                                                  Date:    October 9, 2024
    Compound DAO; Robert Leshner; Geoffrey          Time:    2:00 p.m.
19   Hayes; AH Capital Management, LLC;              Dept.:   Courtroom 2
    Polychain Alchemy, LLC; Bain Capital            Judge:   Honorable William H. Orrick
20   Ventures (GP), LLC; Gauntlet Networks,
    Inc.; Paradigm Operations LP,
21
22                      Defendants.
23   AH Capital Management, L.L.C., et al.,
24                      Counterclaimants,
25                 v.
26   Amanda Houghton, et al.,
27                      Counterclaim Defendants.
28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

    **PLEASE TAKE NOTICE** that on October 9, 2024, or as soon thereafter as this matter may be heard, in the courtroom of the Honorable William H. Orrick, located in Courtroom 2 of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Robert Leshner, Geoffrey Hayes, AH Capital Management, LLC (AH), Polychain Alchemy, LLC (Polychain), Bain Capital Ventures (GP), LLC (Bain), Gauntlet Networks, Inc. (Gauntlet), and Paradigm Operations LP (Paradigm) (together, Defendants), will and hereby do move the Court pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, to compel arbitration of the claims brought against them by Plaintiffs Amanda Houghton, Charles Douglas, and Susan Franklin (together, Plaintiffs) on behalf of themselves and all others similarly situated and to stay the proceedings pending arbitration.

**REQUESTED RELIEF**

    Defendants seek an order compelling Plaintiffs to arbitrate their claims because Plaintiffs' claims are subject to a mandatory arbitration agreement.

    This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Morgan E. Whitworth and the exhibits attached thereto, the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any other argument or evidence that may be received by the Court upon hearing of this Motion.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................II

STATEMENT OF ISSUE ........................................................................................................ 1

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 3

LEGAL STANDARD............................................................................................................... 6

ARGUMENT ........................................................................................................................... 7

    I.     Plaintiffs Agreed To The Arbitration Agreement In The User Agreement ...................................................................................................... 8

    II.    The User Agreement Clearly And Unmistakably Delegates Questions Of Arbitrability To The Arbitrator....................................................... 10

    III.   Defendants Can Enforce The Arbitration Agreement Against Plaintiffs Under The Doctrine Of Equitable Estoppel ........................................ 13

          A.    Plaintiffs' Claims Are Intertwined With The User Agreement ...................................................................................... 14

          B.    Plaintiffs Allege Substantially Interdependent Conduct By Signatory Coinbase And Non-Signatory Defendants ............................ 16

    IV.   This Action Should Be Stayed Pending The Completion Of Arbitration........................................................................................................ 18

CONCLUSION....................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009)................................................................. 13

*B.D. v. Blizzard Ent., Inc.*,
  76 Cal. App. 5th 931 (2022) ................................................... 8

*Berk v. Coinbase, Inc.*,
  840 F. App'x 914 (9th Cir. 2020) .......................................... 8

*Bielski v. Coinbase, Inc.*,
  87 F.4th 1003 (9th Cir. 2023) ............................................. 6, 8

*Blanton v. Domino's Pizza Franchising LLC*,
  962 F.3d 842 (6th Cir. 2020) ................................................ 12

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) .............................................. 11

*Casa Arena Blanca LLC v. Rainwater ex rel. Green*,
  2022 WL 839800 (10th Cir. Mar. 22, 2022) .......................... 10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ................................................ 6

*Coinbase, Inc. v. Suski*,
  144 S. Ct. 1186 (2024)........................................................... 12

*Coinmint, LLC v. DX Corr Design, Inc.*,
  2023 WL 9595893 (N.D. Cal. Apr. 24, 2023) ....................... 11

*Combined Energies v. CCI, Inc.*,
  514 F.3d 168 (1st Cir. 2008).................................................. 16

*Contec Corp. v. Remote Sol., Co.*,
  398 F.3d 205 (2d Cir. 2005)................................................... 10

*Donovan v. Coinbase Global, Inc.*,
  649 F. Supp. 3d 946 (N.D. Cal. 2023) .................................. 13

*Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*,
  756 F.3d 1098 (8th Cir. 2014) ............................................... 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*,
  2020 WL 3869186 (N.D. Cal. July 9, 2020) ........................................................................ 2

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ............................................................................................................ 10

*Franklin v. Cmty. Reg'l Med. Ctr.*,
  998 F.3d 867 (9th Cir. 2021) ...............................................................................13, 14, 16

*Goldman v. KPMG, LLP*,
  173 Cal. App. 4th 209 (2009) ......................................................................................14, 16

*Goldman, Sachs & Co. v. City of Reno*,
  747 F.3d 733 (9th Cir. 2014) ................................................................................................ 8

*Green Tree Fin. Corp.-Ala v. Randolph*,
  531 U.S. 79 (2000) ................................................................................................................ 6

*Hansen v. KPMG, LLP*,
  2005 WL 6057105 (C.D. Cal. Mar. 29, 2005) .................................................................. 18

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) ..........................................................................................................6, 10

*Herrera v. Cathay Pac. Airways Ltd.*,
  104 F.4th 702 (9th Cir. 2024) ...........................................................................3, 14, 15, 16

*In re Pac. Fertility Ctr. Litig.*,
  814 F. App'x 206 (9th Cir. 2020) ...................................................................................... 16

*Johnson v. Walmart Inc.*,
  57 F.4th 677 (9th Cir. 2023) ................................................................................................ 7

*JSM Tuscany, LLC v. Sup. Ct.*,
  193 Cal. App. 4th 1222 (2011) .......................................................................................... 14

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) .....................................................................................9, 11, 12

*Meadows v. Dickey's Barbecue Restaurants Inc.*,
  144 F. Supp. 3d 1069 (N.D. Cal. 2015) .............................................................................. 2

*MouseBelt Labs Pte. Ltd. v. Armstrong*,
  674 F. Supp. 3d 728 (N.D. Cal. 2023) .............................................................................. 15

*Mundi v. Union Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) ............................................................................................. 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*Norcia v. Samsung Telecomms. Am., LLC,*
    845 F.3d 1279 (9th Cir. 2017) ........................................................................................ 6

*Oracle Am., Inc. v. Myriad Grp. A.G.,*
    724 F.3d 1069 (9th Cir. 2013) ...................................................................................... 11

*Pino v. Cardone Cap., LLC,*
    55 F.4th 1253 (9th Cir. 2022) ....................................................................................... 17

*Pinter v. Dahl,*
    486 U.S. 622 (1988) ....................................................................................................... 17

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.,*
    862 F.3d 981 (9th Cir. 2017) ..................................................................................... 9, 11

*Rent-A-Center, West, Inc. v. Jackson,*
    561 U.S. 63 (2010) ......................................................................................................... 10

*Revitch v. DIRECTV, LLC,*
    977 F.3d 713 (9th Cir. 2020) .......................................................................................... 9

*Roberts v. Obelisk, Inc.,*
    2019 WL 1902605 (S.D. Cal. Apr. 29, 2019) ............................................................... 16

*Smith v. Spizzirri,*
    601 U.S. 472 (2024) ................................................................................................... 7, 18

*Swiger v. Rosette,*
    989 F.3d 501 (6th Cir. 2021) .......................................................................................... 10

*Tice v. Amazon.com, Inc.,*
    845 F. App'x 535 (9th Cir. 2021) .................................................................................... 9

*Unite Here Local 30 v. Sycuan Band of the Kumeyaay Nation,*
    35 F.4th 695 (9th Cir. 2022) ............................................................................................ 7

*Zirpoli v. Midland Funding, LLC,*
    48 F.4th 136 (3d Cir. 2022) ........................................................................................... 10

## STATUTES

9 U.S.C. § 1 *et seq.* ............................................................................................................. 1, 6

9 U.S.C. § 2 ............................................................................................................................. 6

9 U.S.C. § 3 ....................................................................................................................... 7, 18

9 U.S.C. § 4 ............................................................................................................................. 6

15 U.S.C. § 77*l*(a)(2) ............................................................................................................ 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iv

## OTHER AUTHORITIES

American Arbitration Association, *Consumer Arbitration Rules*,
available at https://adr.org/sites/default/files/Consumer%20Rules.pdf (last
visited July 23, 2024) ...................................................................................................... 2, 5, 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUE

Whether Plaintiffs' claims against Defendants are subject to mandatory arbitration.

### PRELIMINARY STATEMENT

In discovery responses served on July 9, 2024, Plaintiffs admitted for the first time that they agreed to the Coinbase User Agreement—both when they created their Coinbase accounts and then again when Coinbase updated its User Agreement in January 2022. That User Agreement contains a mandatory arbitration agreement that applies broadly to "any dispute, claim, [or] disagreement arising out of or relating in any way to … any product sold or distributed through the Coinbase Site." Declaration of Morgan E. Whitworth (Whitworth Decl.), Ex. 1, Appendix 5, § 1.1. Indeed, the User Agreement has contained an arbitration agreement for over a decade. Given Plaintiffs' admission, there can be no question about the existence of an arbitration agreement. It is also clear that Plaintiffs' claims in this case fall squarely within the agreement's scope. This lawsuit is therefore proceeding in the wrong forum.

Plaintiffs' claims against Defendants arise out of and relate to COMP, which is a "product sold or distributed through" Coinbase. Indeed, Plaintiffs allege that all of the COMP they ever acquired was via the Coinbase platform. AC ¶¶ 15-17. Plaintiffs bring claims under Section 12 of the Securities Act seeking to rescind their alleged purchases of COMP on Coinbase. ECF No. 76 ¶¶ 15-17 (AC). Plaintiffs claim that Defendants solicited their COMP purchases because Defendants (or one of them) allegedly paid Coinbase a commission to sell COMP or were responsible for educational videos through which Plaintiffs earned COMP on Coinbase. ECF No. 94 at 3-4 & n.4 (citing AC ¶ 70). Because Plaintiffs agreed to arbitrate "any … claim … relating in any way to" "any product sold or distributed through" Coinbase, Plaintiffs' claims fall within the scope of the arbitration agreement.

Defendants are entitled to enforce the arbitration agreement against Plaintiffs, and any questions about Defendants' rights as non-signatories to the arbitration agreement are for the arbitrator to decide.  Plaintiffs' arbitration agreement includes a broad, express delegation clause providing that "[t]he arbitrator shall have exclusive authority to resolve any Dispute … arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement."  Whitworth Decl., Appendix 5, § 1.6.  The arbitration agreement also provides that arbitration will be administered in accordance with the Consumer Arbitration Rules of the American Arbitration Association (AAA), *id.*, Appendix 5, § 1.4, which in turn provide that "[t]he arbitrator shall have the power to rule on … any objections with respect to the existence, scope, or validity of the arbitration agreement."  American Arbitration Association, *Consumer Arbitration Rules*, available at https://adr.org/sites/default/files/Consumer%20Rules.pdf (last visited July 23, 2024) (AAA Rules).[1]  Because these provisions are "clear and unmistakable" evidence that Plaintiffs agreed to have an arbitrator decide arbitrability questions, an arbitrator must decide any challenges to the arbitration agreement.

Even if there were no delegation provision (there is), Plaintiffs' claims plainly fall within the scope of the arbitration agreement, and Defendants as non-signatories are entitled to enforce Plaintiffs' arbitration agreement against them under the doctrine of equitable estoppel.  California law allows non-signatory defendants to compel a signatory plaintiff to arbitrate where either (i) the claims are "intimately founded in and intertwined with" the underlying contract, *or* (ii) the signatory "alleges substantially interdependent and concerted conduct by the nonsignatory and

---

[1] The AAA rules are properly subject to judicial notice.  *E.g.*, *Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*, 2020 WL 3869186, at *2 (N.D. Cal. July 9, 2020); *Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1078 & n.5 (N.D. Cal. 2015).

another signatory." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 & n.5 (9th Cir. 2024).  Both prongs are satisfied in this case (and only one needs to be).  Plaintiffs identified Coinbase as the means by which they purchased or otherwise acquired COMP; the User Agreement governs all transactions on Coinbase; Plaintiffs allege that Defendants solicited their purchases by "working together with Coinbase" and "agree[ing] to pay Coinbase a commission to sell or provide COMP," AC ¶¶ 68, 70; and Plaintiffs now seek to unwind the very purchases that they made on Coinbase.

Accordingly, Plaintiffs should be compelled to arbitrate their claims against Defendants and proceedings in this Court should be stayed pending resolution of arbitration.

## STATEMENT OF FACTS

Defendants Robert Leshner and Geoffrey Hayes co-founded non-party Compound Labs in 2017.  AC ¶¶ 8, 9, 29.  Defendants Bain, Polychain, AH, and Paradigm were investors in Compound Labs, with some involved in an $8.2 million seed funding round in May 2018 and all involved in a $25 million Series A funding round in November 2019. *Cf.* AC ¶¶ 34, 37.  Defendant Gauntlet provided risk management services with respect to the Compound protocol. AC ¶¶ 100-101.

Plaintiffs assert a single claim on behalf of themselves and a putative class against Defendants pursuant to 12(a) of the Securities Act of 1933 for the alleged offer and sale of COMP tokens, which Plaintiffs contend are unregistered securities.  AC ¶¶ 194-216.  Plaintiffs do not allege that they purchased COMP tokens directly from any of the Defendants but instead allege that they purchased and acquired COMP tokens on the digital-asset exchange Coinbase.  AC ¶¶ 15-17.  Plaintiff Susan Franklin alleges that she received $9 of COMP by watching a video on Coinbase Earn in July 2021, and that she purchased $2 worth of COMP tokens on Coinbase in December 2021. AC ¶ 17.  Plaintiff Amanda Houghton alleges that she received $9 of COMP by

watching a video on Coinbase Earn in February 2021, and that she purchased $3 worth of COMP tokens on Coinbase in November 2022.  AC ¶ 16.  Plaintiff Charles Douglas alleges that he purchased $75 worth of COMP tokens on Coinbase in January 2022.  AC ¶ 15.  Plaintiffs do not allege any other purchases or acquisitions of COMP.

Plaintiffs now seek to unwind those transactions, requesting "recission or rescissory damages."  AC ¶ 6, Prayer for Relief.  This Court denied Defendants' motion to dismiss, finding that plaintiffs had plausibly alleged a cause of action.  ECF No. 94 at 1, 5-6.  In so doing, the Court recognized that "Plaintiffs admit that they did not buy COMP directly from any of" the Defendants "and instead purchased COMP on Coinbase's secondary market."  *Id.* at 4.  And the Court found that Plaintiffs "plausibly allege[d]" that "one or more" Defendants had solicited Plaintiffs' purchases through educational videos on Coinbase about COMP and had an agreement to pay Coinbase a commission to sell or provide COMP to Coinbase users.  *Id.* at 6 & n.4 (quoting AC ¶ 70).

Coinbase is a centralized digital-asset platform where users can store cryptocurrency as well as trade, purchase, and sell tokens.  AC ¶¶ 63, 65, 77.  To access Coinbase's services and engage in cryptocurrency transactions, prospective users are required to create an account and accept the User Agreement.  Whitworth Decl. Ex. 1.  For the first time, on July 9, 2024, Plaintiffs admitted in discovery responses that "when [they] created [their] Coinbase account, [they] accepted, consented to, and/or agreed to, the then-existing Coinbase User Agreement."  Whitworth Decl. Ex. 3, RFA 1; Whitworth Decl. Ex. 4, RFA 1; Whitworth Decl. Ex. 5, RFA 1.  They further admitted that when Coinbase updated its User Agreement on January 31, 2022, they "accepted, consented to, and/or agreed to, the updated Coinbase User Agreement that went into effect on or around January 31, 2022."  Whitworth Decl. Ex. 3, RFA 3; Whitworth Decl. Ex. 4, RFA 3; Whitworth Decl. Ex. 5, RFA 3.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Appendix 5 of the 2022 User Agreement contains an arbitration agreement, which exists in materially identical form today.   Whitworth Decl. Ex. 1 (2022 User Agreement); *see also* Whitworth Decl. Ex. 2 (May 15, 2024 User Agreement).[2]   At the outset, Section 1.1 ("Applicability of Arbitration Agreement") states:

> Subject to the terms of this Arbitration Agreement, you and Coinbase agree that any dispute, claim, [or] disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any product sold or distributed through the Coinbase Site, the Services, or the User Agreement and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms (each, a 'Dispute') will be resolved by binding arbitration, rather than in court ….

Whitworth Decl. Ex. 1, Appendix 5, § 1.1.   Section 1.4 provides that "[t]he arbitration will be administered by the American Arbitration Association ('AAA'), in accordance with the Consumer Arbitration Rules (the 'AAA Rules') then in effect."   *Id.*, Appendix 5, § 1.4.   Those AAA Rules broadly delegate to the arbitrator "the power to rule on … any objections with respect to the existence, scope, or validity of the arbitration agreement."   AAA Rules, Rule 14(a).   Consistent with the AAA Rules, Section 1.6 contains an express delegation clause clarifying the scope of disputes falling under the arbitrator's authority:

> The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement ….

*Id.*, Appendix 5, § 1.6.

In their July 9, 2024 discovery responses, Plaintiffs stated that they agreed to these provisions and have continued to use Coinbase.   Whitworth Decl. Ex. 3, RFA 7, 9; Whitworth

---

[2]   Because Plaintiffs deny that "the May 15, 2024 Version of the Coinbase User Agreement applies to the transactions alleged in the Complaint," Whitworth Decl. Ex. 3, RFA 11; Whitworth Decl. Ex. 4, RFA 11; Whitworth Decl. Ex. 5, RFA 11, this motion focuses on the language from the 2022 User Agreement, which Plaintiffs admit they agreed to and which contains materially identical language.

Decl. Ex. 4, RFA 7, 9; Whitworth Decl. Ex. 5, RFA 7, 9; *see also* Whitworth Decl. Ex. 6, RTI 2 (failing to identify any refusals to consent to the User Agreement).

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements and reflects a strong policy in favor of arbitration.  9 U.S.C. §§ 1 *et seq.*  Section 2 of the FAA provides that any written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2.  Section 4 allows a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" to "petition any United States district court ... for an order directing that ... arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

The FAA "limits federal court review of arbitration agreements to two gateway arbitrability issues: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'" *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  The court must "determine[] whether a valid arbitration agreement exists."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).  If a valid arbitration agreement exists, and if it contains a delegation provision granting the arbitrator the power to decide "'gateway' questions of 'arbitrability,'" *id.* at 67-68, then the delegation clause "further limit[s] federal court review by assigning these gateway questions to an arbitrator." *Bielski*, 87 F.4th at 1009.

The party seeking arbitration must prove the existence of an agreement by a preponderance of the evidence.  *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).  If the moving party does so, the burden flips and "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.- Ala v. Randolph*, 531 U.S. 79, 91 (2000).  Once a court finds that an "agreement to arbitrate has

been made," "doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration." *Johnson v. Walmart Inc.*, 57 F.4th 677, 680-81 (9th Cir. 2023) (citation omitted); *see also Unite Here Local 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 704 (9th Cir. 2022) ("[F]ederal courts apply a presumption in favor of arbitrability."). "The nonmoving party's opposition … must consist of more than unsupported allegations or denials." *Id.*

Where a dispute is subject to arbitration, the district court "shall on application of one of the parties stay the trial of the action until arbitration has been had." 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

## ARGUMENT

Plaintiffs' claims against Defendants are subject to binding arbitration.  Plaintiffs consented to the User Agreement, which includes an arbitration agreement for any dispute relating in any way to any product sold or distributed through Coinbase.  That broad arbitration agreement clearly applies to Plaintiffs' purchase or receipt of COMP through Coinbase.  As part of that agreement, Plaintiffs also agreed to delegate questions about the enforceability and scope of the arbitration agreement to the arbitrator, both through an express delegation provision and through the User Agreement's incorporation of the AAA Consumer Arbitration Rules.  Therefore, even if Plaintiffs complain that Defendants as non-signatories cannot enforce the arbitration agreement, that is a dispute about the enforceability and scope of the arbitration agreement, and it is therefore for the arbitrator to decide.

In any event, California law allows non-parties to an arbitration agreement to equitably estop a party from avoiding an arbitration obligation in two circumstances.  Both are applicable here.  First, Plaintiffs' claims are intimately founded in and intertwined with the User Agreement: Plaintiffs' lawsuit hinges on their purchases of COMP; Plaintiffs admit they acquired their COMP exclusively by using the Coinbase platform; the User Agreement governs all transactions on

Coinbase; and Plaintiffs seek rescissory damages based on those purchases.  Second, Plaintiffs allege substantially interdependent conduct between signatory Coinbase and non-signatory Defendants relating to the Coinbase Earn videos and Defendants' alleged efforts to list COMP on Coinbase.

Once the Court finds this dispute subject to arbitration, it should stay proceedings pending the completion of arbitration.

## I.     Plaintiffs Agreed To The Arbitration Agreement In The User Agreement

Plaintiffs entered into a valid arbitration agreement when they affirmatively assented to the User Agreement.  Federal courts apply "general state-law principles of contract interpretation" to determine whether an agreement to arbitrate exists.  *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (quotation omitted).  Under California law, "[m]utual assent, or consent, of the parties is essential to the existence of a contract."  *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 943 (2022) (quotation omitted).

Plaintiffs' recently submitted discovery responses settle this question:  They admitted that they "accepted, consented to, and/or agreed to" the Coinbase User Agreement "when [they] created [their] Coinbase account[s]," Whitworth Decl. Ex. 3, RFA 1; Whitworth Decl. Ex. 4, RFA 1; Whitworth Decl. Ex. 5, RFA 1, and that they "accepted, consented to, and/or agreed to, the updated Coinbase User Agreement that went into effect on or around January 31, 2022," Whitworth Decl. Ex. 3, RFA 3; Whitworth Decl. Ex. 4, RFA 3; Whitworth Decl. Ex. 5, RFA 3.  That User Agreement contains a valid and enforceable arbitration agreement.  Indeed, the Ninth Circuit has enforced this very agreement (and its delegation clause) before.  *Bielski*, 87 F.3th at 1007 (9th Cir. 2023) (delegation clause); *Berk v. Coinbase, Inc.*, 840 F. App'x 914, 914-16 (9th Cir. 2020) (arbitration agreement).

Accordingly, there is no question as to the *existence* of an agreement to arbitrate.  Further,

that agreement applies to Plaintiffs' claims because it applies to "any … claim … arising out of or relating in any way to … any product sold or distributed through the Coinbase Site."  Whitworth Decl., Ex. 1, Appendix 5, § 1.1.  Plaintiffs' claims arise out of and directly relate to their purchases and acquisitions of COMP tokens on the Coinbase platform, and therefore clearly fall within the arbitration agreement's broad reach.

Moreover, to the extent Plaintiffs intend to challenge whether the User Agreement reaches Plaintiffs' claims against Defendants, that challenge would not raise a question of contract formation.  Defendants are not claiming to be *parties* to the User Agreement.  Rather, California law allows Defendants as *non-parties* to equitably estop Plaintiffs from avoiding *their* agreement to arbitrate claims relating to their purchases of COMP on Coinbase.  As just discussed, there is no question about Plaintiffs' agreement to the User Agreement.  And the Ninth Circuit has held that, whether a *non-signatory* (Defendants) can equitably estop signatories (Plaintiffs) from avoiding their contractual obligations is a question relating to the *scope* of an arbitration agreement, rather than a question relating to the *formation* of an agreement.  *Mundi v. Union Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009); *see also Tice v. Amazon.com, Inc.*, 845 F. App'x 535, 537 (9th Cir. 2021); *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985-86 (9th Cir. 2017) (*PGE*).[3]  Thus, once the Court finds that an arbitration agreement exists, its task is at an end when there is "clear and unmistakable evidence" of a delegation clause, *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127-28 (9th Cir. 2013), as discussed below.[4]

---

[3] *Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020), dealt with the distinct question of whether an affiliate could enforce an arbitration agreement as a *party* to the agreement, and concluded that that issue was "one of agreement *formation*" rather than "*scope*."  *Id.* at 720.  *Revitch* did not consider the question at issue here, addressed in *Mundi* and *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127-28 (9th Cir. 2013), which is when a non-party may equitably estop a party from avoiding an agreement to arbitrate.

[4] Other circuits agree that whether a non-signatory can enforce an arbitration agreement "goes directly to whether [the non-signatory] can *enforce* arbitration as the agreement provides, not

1

## II.     The User Agreement Clearly And Unmistakably Delegates Questions Of Arbitrability To The Arbitrator

2

3      The Supreme Court has recognized that an arbitration agreement may let "an arbitrator

4  decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,'"

5  such as whether that agreement "covers a particular controversy." *Henry Schein*, 586 U.S. at 67-

6  68 (2019) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).    A

7  "delegation provision" that gives the arbitrator "exclusive authority to resolve any dispute relating

8  to the … enforceability … of [an] Agreement" is presumptively valid and enforceable. *Rent-A-*

9  *Center*, 561 U.S. at 71-72.   When an agreement "delegates the arbitrability question to an

10 arbitrator, a court may not override the contract" because the court "possesses no power to decide

11 the arbitrability issue." *Henry Schein*, 586 U.S. at 68.  To delegate these questions, an agreement

12 must do so "by 'clear and unmistakable' evidence." *Id.* at 69 (quoting *First Options of Chicago,*

13 *Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

14

15      Here, the User Agreement clearly and unmistakably delegates gateway questions regarding

16 who can enforce the arbitration agreement, and it does so in two ways.  *First*, the User Agreement

17 contains an express delegation provision:

18

19          The arbitrator shall have exclusive authority to resolve any Dispute, including,
20          without limitation, disputes arising out of or related to the interpretation or
           application of the Arbitration Agreement, including the enforceability, revocability,

21

22  whether the agreement *exists*." *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 144 (3d Cir. 2022)
    (emphasis original); *see also Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 211 (2d Cir. 2005)
23  (holding whether a non-signatory can enforce an arbitration agreement "is a matter of the
    Agreement's continued existence, validity and scope, and is therefore subject to arbitration under
24  the terms of the arbitration clause"); *Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021) (holding
    that "a nonsignatory's ability to enforce an arbitration agreement concern[s] a question of
25  arbitrability");  *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098,
    1100 (8th Cir. 2014) (compelling arbitration against non-signatory because "[w]hether a particular
26  arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is
    a threshold question of arbitrability"); *Casa Arena Blanca LLC v. Rainwater ex rel. Green*, 2022
27  WL 839800, at *5 (10th Cir. Mar. 22, 2022) (holding that whether a non-signatory could enforce
    an arbitration agreement raised "no issue of contract formation," but "only of contract
28  enforcement").

scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement ….

Whitworth Decl. Ex. 1, Appendix 5, § 1.6.  Plaintiffs therefore broadly agreed that the arbitrator has "exclusive authority" to decide any dispute "arising out of or related to the interpretation or application of the Arbitration Agreement," including disputes about its "enforceability" and "scope." *Id.*

*Second*, the User Agreement incorporates the AAA rules, providing that "[t]he arbitration will be administered by the American Arbitration Association ('AAA'), in accordance with the Consumer Arbitration Rules (the 'AAA Rules') then in effect."  Whitworth Decl. Ex. 1, Appendix 5, § 1.4.  Rule 14(a) of the AAA Rules states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Rules, Rule 14(a).  The Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (noting that "virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Coinmint, LLC v. DX Corr Design, Inc.*, 2023 WL 9595893, at \*5 (N.D. Cal. Apr. 24, 2023) (compelling arbitration where agreement incorporated AAA rules).  Thus, in multiple ways, Plaintiffs have agreed to arbitrate threshold questions of arbitrability, including scope and enforceability.  *Cf. PGE*, 862 F.3d at 985-86 (whether signatory "agreed to arbitrate its dispute" against nonsignatory was "question[] of the scope of the arbitration agreement" that was "delegated to the arbitrators").

While the Ninth Circuit held in *Kramer*, 705 F.3d 1122, that the delegation clause in that

case did not clearly and unmistakably delegate to the arbitrator questions regarding non-signatory enforcement, the language of that delegation clause differs from the one that Plaintiffs agreed to, and thus that case is no obstacle here.  The arbitration agreement in *Kramer* said that "[e]ither you or we *may choose* to have any dispute between you and us decided by arbitration" and "if either you or we *elect*, any claims or disputes arising out of this transaction, or relating to it, will be determined by binding arbitration."  *Id.* at 1124 (emphasis added).  The Ninth Circuit found that this language—which is entirely missing here—evidenced an intent that only *the signatories* could *invoke* the arbitration agreement.  *Id.* at 1127.  To the contrary, here, Plaintiffs agreed both that "any dispute … relating in any way to … any product sold or distributed through the Coinbase Site … *will be resolved* by binding arbitration," Whitworth Decl. Ex. 1, Appendix 5, § 1.1 (emphasis added), and that an arbitrator has exclusive authority to resolve any questions of arbitrability, *id.*, Appendix 5, §§ 1.1, 1.4.

Accordingly, Plaintiffs have agreed to arbitrate gateway questions of arbitrability, including who can enforce the agreement, twice over.  The User Agreement clearly delegates issues of who can enforce its terms to an arbitrator, and its belt-and-suspenders incorporation of the AAA rules confirms that fact.  Deciding as much does not predetermine the merits of this case—or even resolve whether Plaintiffs will ultimately be compelled to arbitrate their claims against Defendants under the doctrine of equitable estoppel.  Instead, it simply acknowledges that Plaintiffs already agreed *who decides* whether they must arbitrate their claims:  the arbitrator, rather than the court.  *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 852 (6th Cir. 2020); *see also Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192-93 (2024) (describing "three layers of arbitration disputes: (1) merits, (2) arbitrability, and (3) who decides arbitrability").  This Court

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

should compel arbitration on that basis.[5]

## III. Defendants Can Enforce The Arbitration Agreement Against Plaintiffs Under The Doctrine Of Equitable Estoppel

While this Court should not reach questions of scope or enforceability in light of Plaintiffs' double agreement to delegate those gateway questions of arbitrability to an arbitrator, the Court should still compel arbitration if it decides to resolve those gateway questions on its own. Plaintiffs agreed to arbitrate "any dispute … relating in any way to … any product sold or distributed through the Coinbase Site," Whitworth Decl. Ex. 1, Appendix 5, § 1.1, which includes the COMP tokens that Plaintiffs allege they bought on Coinbase or received after watching videos on Coinbase Earn, AC ¶¶ 15-17. Indeed, Plaintiffs identified Coinbase as the only platform through which they allegedly purchased (or earned) COMP. *Id.* And they offer those purchases as the sole foundation for their claims, thereby inextricably linking this action to the terms of Coinbase's User Agreement, which govern those purchases.

Plaintiffs cannot evade their prior commitment to arbitrate merely because Defendants did not sign the User Agreement. "[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021) (citation omitted); *see Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).

Here, California law allows a "nonsignatory defendant [to] compel a signatory plaintiff to

---

[5] In *Donovan v. Coinbase Global, Inc.*, 649 F. Supp. 3d 946, 954-956 (N.D. Cal. 2023), Judge Thompson granted Coinbase's motion to compel arbitration based on Coinbase's User Agreement while simultaneously denying a non-signatory's motion to compel arbitration pursuant to the User Agreement. But the non-signatory there did not argue that the delegation clause required the arbitrator to decide whether the non-signatory could enforce the arbitration agreement; it instead argued solely the merits of the equitable-estoppel argument. *See generally* Defendant GMO-Z.COM TRUST's Notice of Motion and Motion to Compel Arbitration and Stay Proceedings, *Donovan v. Coinbase Global, Inc.*, 649 F. Supp. 3d 946 (N.D. Cal. 2023) (No. 22-cv-02826-TLT), 2022 WL 18640018. *Donovan* therefore had no opportunity to consider (and did not consider) the distinguishing factors here.

arbitrate under the doctrine of equitable estoppel" in two circumstances. *JSM Tuscany, LLC v. Sup. Ct.*, 193 Cal. App. 4th 1222, 1238 (2011); *see also Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 219 (2009). First, "a nonsignatory to a contract may enforce an arbitration provision under the doctrine of equitable estoppel when 'the claims [against the non-signatory] are "intimately founded in and intertwined with" the underlying contract.'" *Herrera*, 104 F.4th at 707 (citations omitted). Second, "[a] nonsignatory may also enforce an arbitration provision under the doctrine of equitable estoppel 'when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."'" *Id.* at 707 n.5 (citations omitted). Both scenarios apply here.

A.    **Plaintiffs' Claims Are Intertwined With The User Agreement**

To determine whether a plaintiff's claims are "intertwined with" an underlying contract, courts "look to the relationships of persons, wrongs and issues," focusing on whether it "would be unfair for [the plaintiff] to avoid arbitration." *Franklin*, 998 F.3d at 870, 875. In *Herrera*, for instance, the Ninth Circuit looked to the relationships between signatory consumers who purchased flights that were ultimately cancelled, a third-party vendor that the consumers used to book the flights (and whose terms and conditions included an arbitration agreement), and the nonsignatory airline that cancelled the flights. 104 F.4th at 707-711. The court held that the plaintiffs' claims against the airline were intertwined with the third-party-vendor contract and, therefore, that the nonsignatory airline could thus enforce the vendor's arbitration agreement under the doctrine of equitable estoppel. *Id.* at 710. The court highlighted the role of the signatory vendor as a "middleman," noting that if plaintiffs were "able to sustain their claim" against the nonsignatory airline, "they would be entitled to a refund." *Id.* at 709, 710. And "[t]o determine the appropriate refund," the court "need[ed] to know how much the [plaintiffs] paid" the signatory vendor, which

was "a transaction governed by" the terms and conditions containing the arbitration agreement. *Id.* at 710.

That same reasoning applies here.  Plaintiffs assert a claim pursuant to Section 12(a) of the Securities Act of 1933 for the alleged offer and sale of COMP tokens.  AC ¶¶ 194-216.  Their theory is that Defendants ensured that COMP would be available for purchase on Coinbase or could be acquired through Coinbase Earn.  *See, e.g.*, AC ¶ 54  ("Defendants took steps to ensure that COMP tokens are tradeable on secondary markets …"); AC ¶ 70 (Defendants sought "to ensure a robust secondary market for COMP"); ECF No. 94 at 6 ("[P]laintiffs are suing … the entities who created and promoted COMP and then secured the agreement of the secondary markets to allow trading of COMP on their sites.").  And as this Court found, "Plaintiffs admit that they did not buy COMP directly from any of" the Defendants "and instead purchased COMP on Coinbase's secondary market."  ECF No. 94 at 4; *see also* AC ¶¶ 15-17.

Just like *Herrera*, under Plaintiffs' own allegations, Coinbase acted as the key intermediary or "middleman" for their purchases of COMP tokens.  104 F.4th at 709.  Just like *Herrera*, if Plaintiffs are ultimately "able to sustain their claims" against Defendants, *id.* at 710, they would be entitled to "recission or rescissory damages," AC ¶ 6, Prayer for Relief; *see* 15 U.S.C. § 77*l*(a)(2)—that is, a refund.  Just like *Herrera*, to "determine the appropriate refund," this Court "would need to know" how much Plaintiffs paid for the COMP tokens they bought on the Coinbase platform (as well as other Coinbase-specific information, like exchange rates), which is a "transaction governed by" the Coinbase User Agreement.  *Herrera*, 104 F.4th at 710.  And just like *Herrera*, "[i]t is this interconnectedness that makes equitable estoppel appropriate here."  *Id.*

Other district courts in California have reached the same conclusion in similar situations.  *See, e.g.*, *MouseBelt Labs Pte. Ltd. v. Armstrong*, 674 F. Supp. 3d 728, 741-42 (N.D. Cal. 2023) (applying equitable estoppel to cryptocurrency investor whose alleged losses "hinge[d] on" value

of tokens it obtained under third-party contract containing arbitration agreement); *Roberts v. Obelisk, Inc.*, 2019 WL 1902605, at *7 (S.D. Cal. Apr. 29, 2019) (applying equitable estoppel because "[d]etermining whether the pre-order" of specialized computers called cryptocurrency miners "constituted a sale of securities … will require a factfinder to wade through the Terms and Conditions of the pre-order").

That Plaintiffs did not affirmatively plead that they entered into the User Agreement containing the arbitration agreement is irrelevant.  The Ninth Circuit has previously compelled arbitration by non-signatories "even though" the plaintiffs "d[id] not mention" the contract containing an arbitration clause.  *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020).  And that makes sense, for Plaintiffs "cannot avoid arbitration by dint of artful pleading alone."  *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 172 (1st Cir. 2008).  Rather, "it is the substance of the plaintiff's claim that counts, not the form of its pleading."  *Franklin*, 998 F.3d at 875.

In short, "the linchpin for equitable estoppel is fairness."  *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 220 (2009).  Applying equitable estoppel here furthers that interest because Plaintiffs' claims are based solely on their alleged transactions on Coinbase.

## B. Plaintiffs Allege Substantially Interdependent Conduct By Signatory Coinbase And Non-Signatory Defendants

Plaintiffs also allege that Coinbase and Defendants engaged in "substantially interdependent and concerted misconduct" "intimately connected with" the User Agreement.  *Herrera*, 104 F.4th at 707 n.5.  In particular, Plaintiffs allege that "Coinbase made a 2018 investment in Compound Labs," which made it "easily able to coordinate with [Defendants] to quickly list the new digital asset."  AC ¶ 66.  They allege that "Compound DAO … actively solicited purchasers of COMP by (among other things) working together with Coinbase shortly

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

after beginning its liquidity-mining and yield-farming program to encourage and facilitate secondary-market purchases." AC ¶ 68.  And they allege that "[w]ith the help of Compound Labs," Coinbase added COMP to the "Earn" feature and Defendants "agreed to pay Coinbase a commission to sell or provide COMP to its investors, to encourage those investors to invest in COMP through 'education videos' created by or at the direction of one or more" Defendants.  AC ¶ 70; *see also* ECF No. 94 at 6 n.4 (citing this allegation and AC ¶¶ 95-113, regarding Defendants' "hands-on roles with development of crypto assets in general and COMP in particular").

To be sure, Defendants disputed the adequacy of these allegations, arguing that Plaintiffs' allegations were conclusory, relied on group pleading, and rested on a flawed understanding of the Supreme Court and Ninth Circuit's case law.  *See generally* ECF No. 79.  Specifically, to plead that a defendant "solicited" a plaintiff's purchase, Defendants argued, the plaintiff must show that the defendant "request[ed] value" in exchange for the security.  *Pinter v. Dahl*, 486 U.S. 622, 647 (1988); *Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1256, 1258 (9th Cir. 2022) (finding sufficient a defendant's videos and posts stating investors "could receive $480,000 in cash flow after investing $1,000,000," where defendant received 35% of the offering profits); ECF No. 79 at 8-12; ECF No. 88 at 5-12.  The Court rejected Defendants' argument, citing, *inter alia*, Plaintiffs' allegations that "one or more" Defendants solicited their purchases by "creat[ing] the Earn videos or direct[ing] Coinbase to create the Earn videos," as well as allegedly "agree[ing] to pay Coinbase a commission to sell or provide COMP to its investors."  ECF No. 94 at 6 & n.6.

In short, Plaintiffs' claim rests on their allegation that Coinbase worked together with Defendants to list and advertise COMP in what they claim is an offer and sale of securities in violation of Section 5 (which prohibits offers and sales through the means of a prospectus or prospectus-like document).  AC ¶¶ 206-216, Prayer for Relief; ECF No. 94 at 6 ("[P]laintiffs are suing the entities" that allegedly "directed Coinbase to create the Earn videos" and "created and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

promoted COMP and then secured the agreement of the secondary markets to allow trading of COMP on their sites."); *cf. Hansen v. KPMG, LLP*, 2005 WL 6057105, at *3 (C.D. Cal. Mar. 29, 2005) (granting non-signatories' motion to compel arbitration where plaintiff's complaint "describes the non-signatory Defendants as one team" and "seeks to hold them jointly liable for each other's conduct").  Equitable estoppel applies for this reason too.  Whatever the merits of their novel solicitation theory, Plaintiffs must pursue their claim in arbitration.

## IV.    This Action Should Be Stayed Pending The Completion Of Arbitration

The FAA specifies that, when a dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until [the] arbitration" has concluded. 9 U.S.C. § 3.  So "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Spizzirri*, 601 U.S. at 478.  Defendants therefore request that the Court stay these proceedings pending the completion of arbitration.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court compel arbitration of Plaintiffs' claims against Defendants and stay these proceedings.

Dated:  August 12, 2024                                    Respectfully submitted,

LATHAM & WATKINS LLP

/s/ Susan E. Engel
Susan E. Engel (Admitted *pro hac vice*)
  susan.engel@lw. com
555 Eleventh Street, NW, Suite 1000
Washington, D. C. 20004
Tel: +1 (212) 637-2200

Douglas K. Yatter (SBN 236089)
  douglas.yatter@lw. com
Benjamin Naftalis (Admitted *pro hac vice*)
  benjamin.naftalis@lw. com
Gregory Mortenson (Admitted *pro hac vice*)
  gregory.mortenson@lw. com

1271 Avenue of the Americas
New York, NY 10020
Tel: +1 (212) 906-1200

Morgan E. Whitworth (SBN 304907)
  morgan.whitworth@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Matthew Rawlinson (SBN 231890)
  matt.rawlinson@lw. com
140 Scott Drive
Menlo Park, CA 94025
Tel: +1 (650) 328-4600

*Attorneys for Defendant AH Capital Management,
L.L.C.*

CLEARY GOTTLIEB STEEN & HAMILTON
LLP

*/s/ Roger A. Cooper*
Jennifer Kennedy Park (SBN 344888)
jkpark@cgsh.com
1841 Page Mill Rd Suite 250
Palo Alto, CA 94304
Tel: +1 (650) 815-4100

Roger A. Cooper (Admitted *pro hac vice*)
racooper@cgsh.com
Jared Gerber (Admitted *pro hac vice*)
jgerber@cgsh.com
Samuel Levander (Admitted *pro hac vice*)
slevander@cgsh.com
One Liberty Plaza
New York, NY 10006
Tel: +1 (212) 225-2000

*Attorneys for Defendant
Polychain Alchemy, LLC*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP

*/s/ Peter B. Morrison*
Peter B. Morrison (SBN 230148)
peter.morrison@skadden.com
Zachary M. Faigen (SBN 294716)
zack.faigen@skadden.com

300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel: +1 (213) 687-5000

Alexander C. Drylewski (Admitted *pro hac vice*)
One Manhattan West
New York, NY 10001
Tel: +1 (212) 735-3000

*Attorneys for Defendant Paradigm Operations LP*

JENNER & BLOCK LLP

*/s/ Kayvan B. Sadeghi*
Kayvan B. Sadeghi (Admitted *pro hac vice*)
ksadeghi@jenner.com
1155 Avenue of the Americas
New York, NY 10036
Tel: +1 (212) 891 1600

H. An N. Tran (SBN 267685)
atran@jenner.com
525 Market Street 29th Floor
San Francisco, CA 94105
Tel: +1 (628) 267-6800

*Attorneys for Defendant Bain Capital Ventures
(GP), LLC*

MORRISON COHEN LLP

*/s/ Jason Gottlieb*
Jason Gottlieb (Admitted *pro hac vice*)
jgottlieb@morrisoncohen.com
Michael Mix (Admitted *pro hac vice*)
mmix@morrisoncohen.com
Vani Upadhyaya (Admitted *pro hac vice*)
vupadhyaya@morrisoncohen.com
909 Third Avenue
New York, NY 10022
Tel: +1 (212) 735-8600

LONDON & STOUT P.C.
Ellen London
elondon@londonstoutlaw.com
1999 Harrison St., Suite 655
Oakland, CA 94612

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

20

Tel: +1 (415) 862-8494

*Attorneys for Defendants*
*Robert Leshner, Geoffrey Hayes,*
*and Gauntlet Networks, Inc.*

DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS
Case No. 3:22-cv-07781-WHO

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

In compliance with Civil Local Rule 5-1(i)(3), I attest that all other counsel on whose behalf this filing is jointly submitted have approved of and concurred in this filing.

*/s/ Susan E. Engel*
Susan E. Engel

LATHAM&WATKINS LLP
ATTORNEYS AT LAW