1   LATHAM & WATKINS LLP
    Douglas K. Yatter (SBN 236089)
2     *douglas.yatter@lw.com*
    Benjamin Naftalis (Admitted *pro hac vice*)
3     *benjamin.naftalis@lw.com*
    1271 Avenue of the Americas
4   New York, NY 10020
    Tel: +1 (212) 906-1200
5
    Matthew Rawlinson (SBN 231890)
6     *matt.rawlinson@lw.com*
    140 Scott Drive
7   Menlo Park, CA 94025
    Tel: +1 (650) 328-4600
8
    *Attorneys for AH Capital Management, L.L.C.*
9
    *[Additional Counsel on Signature Page]*
10

11                  UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14
    Amanda Houghton; Charles Douglas; and          Case No. 3:22-cv-07781-WHO
15  Susan Franklin, on behalf of themselves and
    all others similarly situated,                 **DEFENDANTS' REPLY IN SUPPORT**
16                                                  **OF MOTION TO COMPEL**
                     Plaintiffs,                    **ARBITRATION AND STAY**
17                                                  **PROCEEDINGS**
                     v.
18                                                  Date:    November 13, 2024
    Compound DAO; Robert Leshner; Geoffrey         Time:    2:00 p.m.
19  Hayes; AH Capital Management, LLC;              Dept.:   Courtroom 2
    Polychain Alchemy, LLC; Bain Capital           Judge:   Honorable William H. Orrick
20  Ventures (GP), LLC; Gauntlet Networks,
    Inc.; Paradigm Operations LP,
21
                     Defendants.
22
    AH Capital Management, LLC, et al.,
23
                     Counterclaimants,
24
                     v.
25
    Amanda Houghton, et al.,
26
                     Counterclaim Defendants.
27

28

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................I

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.    Defendants Did Not Waive Their Right To Arbitrate ........................................... 2

        A.    Defendants Did Not Know Of Their Right To Arbitrate Until July 2024.................................................................................... 2

        B.    Defendants' Subsequent Cooperation In Discovery Is Not Inconsistent With Their Right To Arbitrate.................................... 4

    II.    Plaintiffs Agreed To The Arbitration Agreement In The User Agreement ............................................................................................................ 6

    III.    The User Agreement Clearly And Unmistakably Delegates Questions Of Arbitrability To The Arbitrator........................................... 7

    IV.    Defendants Can Enforce The Arbitration Agreement Against Plaintiffs Under The Doctrine Of Equitable Estoppel ...................... 11

        A.    Plaintiffs' Claims Are Intertwined With The User Agreement And Allege Substantially Interdependent Conduct........................................................................................... 11

        B.    The Supreme Court's *Morgan* Decision Does Not Change The Analysis ........................................................................ 13

CONCLUSION ................................................................................................................. 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alvarez v. Sheraton Operating Corp.*,
  2023 WL 2491279 (9th Cir. Mar. 14, 2023) .......................................................................... 5

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) ...................................................................................................... 10, 13

*Austin v. Univ. of Or.*,
  925 F.3d 1133 (9th Cir. 2019) ............................................................................................ 12

*Awuah v. Coverall N. Am., Inc.*,
  554 F.3d 7 (1st Cir. 2009) .................................................................................................... 8

*B.D. v. Blizzard Ent., Inc.*,
  76 Cal. App. 5th 931 (2022) ................................................................................................. 3

*Bielski v. Coinbase, Inc.*,
  87 F.4th 1003 (9th Cir. 2023) .............................................................................................. 7

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ............................................................................................. 9

*Bugna v. Fike*,
  80 Cal. App. 4th 229 (2000) ............................................................................................... 13

*Caremark, LLC v. Chickasaw Nation*,
  43 F.4th 1021 (9th Cir. 2022) .............................................................................................. 3

*Contec Corp. v. Remote Sol. Co.*,
  398 F.3d 205 (2d Cir. 2005) ................................................................................................. 8

*Donovan v. Coinbase Global, Inc.*,
  649 F. Supp. 3d 946 (N.D. Cal. 2023) ................................................................... 3, 4, 10, 11

*Fisher v. A.G. Becker Paribas Inc.*,
  791 F.2d 691 (9th Cir. 1986) ............................................................................................... 4

*Franklin v. Cmty. Reg'l Med. Ctr.*,
  998 F.3d 867 (9th Cir. 2021) ......................................................................................... 12, 13

*GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*,
  590 U.S. 432 (2020) ............................................................................................................ 13

*Gile v. Dolgen Cal., LLC*,
  2022 WL 17248087 (9th Cir. Nov. 28, 2022) ...................................................................... 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) ................................................................................................. 7

*Herrera v. Cathay Pac. Airways Ltd.*,
    104 F.4th 702 (9th Cir. 2024) ............................................................................ 11

*Hill v. Xerox Bus. Servs., LLC*,
    59 F.4th 457 (9th Cir. 2023) .............................................................................. 2

*Honeywell v. Workers' Comp. Appeals Bd.*,
    35 Cal. 4th 24 (2005) ...................................................................................... 14

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ........................................................................................... 10

*In re Transact, Inc.*,
    2014 WL 3888230 (C.D. Cal. Aug. 6, 2014) ................................................... 13

*Kelly v. Pub. Util. Dist. No. 2*,
    2012 WL 12886214 (E.D. Wash. July 30, 2012) ............................................. 5

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013) ........................................................................ 8, 9

*Last v. M-I, LLC*,
    2024 WL 551948 (E.D. Cal. Feb. 12, 2024) .................................................... 6

*Letizia v. Prudential Bache Sec., Inc.*,
    802 F.2d 1185 (9th Cir. 1986) .......................................................................... 4

*Mahamedi IP Law, LLC v. Paradice & Li, LLP*,
    2017 WL 2727874 (N.D. Cal. Feb. 14, 2017) ................................................. 6

*Martin v. Yasuda*,
    829 F.3d 1118 (9th Cir. 2016) .......................................................................... 5

*McBurnie v. Acceptance Now, LLC*,
    643 F. Supp. 3d 1041 (N.D. Cal. 2022) ........................................................... 5

*Metalclad Corp. v. Ventana Env't Org. P'ship*,
    109 Cal. App. 4th 1705 (2003) ...................................................................... 11

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022) ...................................................................................... 2, 13

*Newirth v. Aegis Senior Cmtys., LLC*,
    931 F.3d 935 (9th Cir. 2019) .......................................................................... 4, 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*Newman v. Plains All Am. Pipeline, L.P.*,
44 F.4th 251 (5th Cir. 2022) ........................................................................................ 9

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013) .................................................................................... 10

*Palmer v. Omni Hotel Mgmt. Corp.*,
2016 WL 816017 (S.D. Cal. Mar. 1, 2016) ................................................................. 6

*Rent-A-Center W., Inc. v. Jackson*,
561 U.S. 63 (2010) ....................................................................................................... 9

*Sequoia Benefits & Ins. Servs., LLC v. Costantini*,
553 F. Supp. 3d 752 (N.D. Cal. 2021) ......................................................................... 5

*Steiner v. Apple Comput., Inc.*,
2007 WL 4219388 (N.D. Cal. Nov. 29, 2007) ............................................................ 6

*Sywula v. Teleport Mobility, Inc.*,
2023 WL 4630620 (S.D. Cal. July 18, 2023) .............................................................. 6

*Van Ness Townhouses v. Mar Indus. Corp.*,
862 F.2d 754 (9th Cir. 1988) ....................................................................................... 5

*Young v. ByteDance Inc.*,
700 F. Supp. 3d 808 (N.D. Cal. 2023) ................................................................. 10, 12

*Young v. Solana Labs, Inc.*,
2024 WL 4023087 (N.D. Cal. Sept. 3, 2024) ...................................................... 1, 3, 12

*Zirpoli v. Midland Funding, LLC*,
48 F.4th 136 (3d Cir. 2022) ......................................................................................... 8

**STATUTES**

Cal. Civ. Code § 1559 .......................................................................................................... 1

Cal. Evid. Code § 623 ......................................................................................................... 14

**OTHER AUTHORITIES**

American Arbitration Association, *Consumer Arbitration Rules*, Rule 14(a),
available at https://adr.org/sites/default/files/Consumer%20Rules.pdf .................................. 2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PRELIMINARY STATEMENT

Plaintiffs do not dispute that their claims arise directly out of their alleged purchases of COMP tokens on Coinbase and fall squarely within the arbitration provision in Coinbase's User Agreement (User Agreement).  ECF No. 169-2 at 28.  Instead, Plaintiffs seek to avoid their arbitration agreement by arguing that Defendants waived their right to invoke it and that Defendants are not signatories to the User Agreement.  Those arguments fail.

First, while Plaintiffs insist that Defendants were aware of the arbitration clause in the User Agreement, awareness of an arbitration provision alone does not establish waiver.  Plaintiffs repeatedly invoke the recent decision in *Young v. Solana Labs, Inc.*, 2024 WL 4023087 (N.D. Cal. Sept. 3, 2024), but they ignore its consequence for their waiver argument.  *Solana Labs denied* arbitration because defendants had insufficient evidence showing the *plaintiff had agreed to* a platform's arbitration provision—even though the plaintiff had attested to his purchase of tokens through that platform and the platform's terms of use included an arbitration provision.  Plaintiffs do not and cannot argue that any Defendant in this case was aware that Plaintiffs had *agreed to* the User Agreement—at least not until Plaintiffs admitted their agreement in responding to Defendants' discovery.  Once Defendants knew of that agreement, Defendants promptly and timely filed this motion to compel arbitration.

Second, Plaintiffs are wrong that Defendants cannot compel arbitration because Defendants are not parties to the User Agreement and its arbitration agreement.  Plaintiffs' insistence that Defendants are "strangers" to the Coinbase User Agreement misses the point, because California's equitable-estoppel doctrine allows Defendants as *non-parties* to prevent Plaintiffs from avoiding *their* agreement to arbitrate.  Plaintiffs confuse the third-party beneficiary doctrine—which requires a contract to be "made expressly for the benefit of a third person," Cal. Civ. Code § 1559—with equitable estoppel, which does not.  Under California law, a party to an arbitration agreement cannot avoid its contractual obligations by bringing claims against non-signatories that are based on allegations of concerted conduct with a signatory.  Here, the gravamen of Plaintiffs' allegations is that Defendants solicited their purchases by "working together with

Coinbase" and "agree[ing] to pay Coinbase a commission to sell or provide COMP."  ECF No. 76 ¶¶ 68, 70 (AC).

Moreover, this estoppel question, which relates to scope rather than formation of the arbitration agreement, is not for this Court but for the arbitrator.  Plaintiffs do not dispute that the User Agreement both (1) has an express delegation provision, which gives the arbitrator "exclusive authority to resolve" questions relating to "enforceability" and "scope" of the arbitration agreement, ECF No. 169-2 at 29, and also (2) incorporates the AAA Rules, which give the arbitrator authority to rule on issues relating to "the existence, scope, or validity of the arbitration agreement."[1]  Further, there is no limitation in the User Agreement (or its delegation provision) as to *who* can choose to invoke the arbitration agreement.  To the contrary, the parties to the User Agreement agreed to a broad delegation of questions of arbitrability—including questions of "enforceability" and "scope," ECF No. 169-2 at 29—without any carve-out for questions relating to *who* can enforce the User Agreement.

Defendants therefore request that the Court find this dispute subject to arbitration and then stay proceedings pending the completion of arbitration.

## ARGUMENT

### I.    Defendants Did Not Waive Their Right To Arbitrate

A party waives its right to compel arbitration only if it has "(1) knowledge of an existing right to compel arbitration" and then takes "(2) intentional acts inconsistent with that existing right."  *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023).  Until Plaintiffs' July 9, 2024 discovery responses, Defendants did not know of their right to compel arbitration.  By promptly moving for arbitration after they became aware of it, they did not "intentional[ly] relinquish[]" that right.  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (citation omitted).

### A.    Defendants Did Not Know Of Their Right To Arbitrate Until July 2024

Plaintiffs claim that "the only factual predicate for Defendants' supposed right to arbitrate is that Plaintiffs purchased their COMP tokens on Coinbase."  ECF No. 187-1 at 7 (Resp.).  Not

---

[1] American Arbitration Association, *Consumer Arbitration Rules*, Rule 14(a), available at https://adr.org/sites/default/files/Consumer%20Rules.pdf (AAA Rules).

so.   Courts must "always" decide "whether an arbitration agreement was formed" before compelling arbitration. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). And to show contract formation, Defendants had to put forward evidence showing that Plaintiffs had agreed to arbitrate their claims. *See, e.g.*, *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 943 (2022) (noting that "[m]utual assent … is essential to the existence of a contract").   Before Plaintiffs' discovery responses, Defendants lacked such evidence; all they knew was that Plaintiffs allegedly purchased COMP tokens on Coinbase.  AC ¶¶ 15-17.   But Defendants did *not* know whether Plaintiffs had *agreed to the User Agreement*—much less *when* and *how* they had done so, or whether they had opted out of it.   Only through Plaintiffs' admissions to recent discovery requests did Defendants learn that Plaintiffs agreed to the User Agreement when they created their Coinbase accounts, agreed to the updated User Agreement, and did not opt out of the User Agreement. *See generally* ECF No. 169-4 (Houghton RFAs); ECF. No. 169-5 (Douglas RFAs); ECF No. 169-6 (Franklin RFAs); ECF No. 169-7 (RTIs).   That settled the previously unsettled question of contract formation.  ECF No. 169 at 8-9 (Mot.).

The recent decision in *Solana Labs* shows why Defendants needed Plaintiffs' discovery admissions before moving to compel.  There, a plaintiff attested that he purchased cryptocurrency (SOL tokens) using the third-party platform Exodus and brought securities claims related to those Exodus transactions even though the publicly available Exodus terms included an arbitration agreement. *Solana Labs*, 2024 WL 4023087, at *1-2.  Non-signatory defendants attempted to enforce that agreement at the outset of the litigation (alongside the filing of a motion to dismiss) based on the fact that plaintiff had purchased the SOL tokens on Exodus. *Id.* at *2-3.  Judge Lin denied the motion, finding that defendants did "not carr[y] their burden to show that [plaintiff] agreed to" the Exodus terms. *Id.* at *3.  Screenshots of Exodus's website did "not demonstrate whether [plaintiff] received reasonably conspicuous notice of the [t]erms of [s]ervice or that he manifested his assent to those terms" because there was no evidence of "when [plaintiff] downloaded the Exodus software" or how he accessed the platform. *Id.* at *4.[2]  Thus, under *Solana*

---

[2] Contrast *Solana Labs* with *Donovan v. Coinbase Global, Inc.*, 649 F. Supp. 3d 946 (N.D. Cal.

1   *Labs* (and the black-letter contract-formation law on which it relies), had Defendants moved to

2   compel arbitration before receiving Plaintiffs' discovery responses, Plaintiffs surely would have

3   disputed Defendants' showing of contract formation, just as plaintiffs successfully did there.[3]

4       There cannot be a known, existing right to arbitration where Defendants did not yet know

5   whether Plaintiffs agreed to arbitration at all.   Moving before receiving Plaintiffs' discovery

6   responses would have been "futile."   *See Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 695

7   (9th Cir. 1986) (finding no "known existing right to compel arbitration" if an arbitration agreement

8   is likely unenforceable under prevailing Supreme Court precedent); *see also Letizia v. Prudential*

9   *Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) ("no existing right to arbitration" where "a

10  motion to compel arbitration would have been futile").

11          **B.      Defendants' Subsequent Cooperation In Discovery Is Not Inconsistent
12                   With Their Right To Arbitrate**

13      To determine "whether a party has engaged in acts that are inconsistent with its right to

14  arbitrate," this Court must look to "the totality of the parties' actions."   *Newirth v. Aegis Senior*

15  *Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019).  A party "acts inconsistently with exercising the

16  right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and

17  (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage

18  of being in court."   *Id.*   Here, Defendants made an intentional decision *to* move to compel

19  arbitration immediately after they received Plaintiffs' discovery responses.  Defendants did not

20  spend a prolonged period of time litigating the merits after they learned of their right; instead, they

21

22  2023), where there was no issue of formation because those plaintiffs sued *both* Coinbase and a
    non-signatory defendant.  Coinbase itself moved to compel, attaching Coinbase records showing
23  that plaintiffs had assented to the User Agreement.  *See* Coinbase Motion to Compel Arbitration
    at 2-5, *Donovan v. Coinbase Global, Inc.*, 649 F. Supp. 3d 946 (N.D. Cal. 2023) (No. 22-cv-02826-
24  TLT), 2022 WL 18640019.  As a result, plaintiffs "d[id] not dispute that they agreed to the User
    Agreement."  *Donovan*, 649 F. Supp. 3d at 950.  Because Defendants here are unaware of the
25  contents of Coinbase's internal records, Defendants had to rely on discovery requests to settle the
    contract-formation issue.

26      [3] *Solana Labs* also demonstrates why Plaintiffs' other arguments miss the mark.  That some of
    Defendants' counsel have "invoked" or "discussed" Coinbase's arbitration agreement in other
27  cases, Resp. 8 & n.2, or that Leshner and Hayes themselves allegedly signed that agreement, *id.* at
    8-9, does not settle the question of whether *Plaintiffs agreed to* the User Agreement.  And
28  Defendants needed that question answered to know they had a right to arbitrate.

promptly filed their motion to compel just over a month after Plaintiffs' discovery responses.[4]

Since Defendants only knew of their right to arbitrate beginning in July 2024, Plaintiffs' argument about inconsistent acts over the "past twenty months" is misguided.  Resp. 11.  The relevant question is whether Defendants have attempted to litigate the merits over a prolonged period of time *after they knew of that right*, and they indisputably have not.  Virtually all of the actions that Plaintiffs point to precede that knowledge, *see id.*, and so cannot be inconsistent acts.

On this point, Plaintiffs' case law is entirely inapposite.  In every single case, the defendant was a signatory to the arbitration agreement, and thus many of the defendants conceded that they knew from the outset that the plaintiffs had agreed to an arbitration provision:

- *Alvarez v. Sheraton Operating Corp.*, 2023 WL 2491279, at *1 (9th Cir. Mar. 14, 2023):  Defendants "do not dispute that knowledge of the right to compel arbitration is properly imputed to them" under "well-established principles of agency."

- *Gile v. Dolgen Cal., LLC*, 2022 WL 17248087, at *1 (9th Cir. Nov. 28, 2022):  "Dollar General concedes that it had knowledge of its right to compel arbitration."

- *McBurnie v. Acceptance Now, LLC*, 643 F. Supp. 3d 1041, 1046 (N.D. Cal. 2022): Defendant knew "of the arbitration clauses in its own contracts with the named plaintiffs."

- *Sequoia Benefits & Ins. Servs., LLC v. Costantini*, 553 F. Supp. 3d 752, 758 (N.D. Cal. 2021):  Employer defendants "do not contest that they had knowledge of their existing right to compel arbitration" against former employee.

- *Newirth*, 931 F.3d at 940:  "Aegis does not dispute that it knew it had a right to compel arbitration with Newirth."

- *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016): "[T]he defendants concede that they had knowledge of the right to compel arbitration."

- *Kelly v. Pub. Util. Dist. No. 2*, 2012 WL 12886214, at *4 (E.D. Wash. July 30, 2012):  Defendants "executed" a lease agreement "containing the at-issue optional arbitration clause" and therefore had knowledge of the right to compel arbitration.

- *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 757 (9th Cir. 1988): Defendants admitted that they "signed [the] agreement."

---

[4] Indeed, the only reason this motion has not already been heard and decided is that Plaintiffs asked for an extension of time to oppose it, which Defendants agreed to out of professional courtesy.

In the circumstances those cases present, it makes sense to examine the entirety of a defendant's litigation conduct.  Where a defendant knew from the start that it had a right to arbitrate, all of its litigation activity necessarily occurred after awareness of plaintiffs' agreement to the arbitration provision and therefore was relevant to the "inconsistent acts" inquiry.  That is not the case here, where Defendants did not know of their right to arbitrate until recently.

Further, all that has happened since Defendants learned of that right is the continued progress of discovery, and courts have repeatedly found such progress does not waive the right to arbitrate.  *See, e.g.*, *Last v. M-I, LLC*, 2024 WL 551948, at *7-8 (E.D. Cal. Feb. 12, 2024) (discovery activity, including five depositions, not inconsistent acts); *Sywula v. Teleport Mobility, Inc.*, 2023 WL 4630620, at *10 (S.D. Cal. July 18, 2023) (plaintiff did not "cite any instance in which a court has determined discovery requests alone—however extensive—are so inconsistent with a right to arbitrate that they effect waiver"); *Palmer v. Omni Hotel Mgmt. Corp.*, 2016 WL 816017, at *3–4 (S.D. Cal. Mar. 1, 2016) (engaging in written discovery, noticing multiple depositions, and taking a deposition not inconsistent acts).  Indeed, the Court's recent order on Plaintiffs' discovery dispute with Coinbase underscores that discovery is to proceed while the motion to compel remains pending before this Court.  *See* ECF No. 179 at 1-2.

To be sure, Defendants did not immediately move to stay discovery when they filed their motion to compel arbitration—even though courts "routinely grant stays" in such circumstances. *Mahamedi IP Law, LLC v. Paradice & Li, LLP*, 2017 WL 2727874, at *1 (N.D. Cal. Feb. 14, 2017) (collecting cases); *see also Steiner v. Apple Comput., Inc.*, 2007 WL 4219388, at *1 (N.D. Cal. Nov. 29, 2007) (finding "short stay … pending the determination of the motion to compel arbitration" to be "prudent").  Under Plaintiffs' view, Defendants should abstain from discovery for months while Plaintiffs are allowed to proceed.  But it would be a strange world in which Defendants' continued cooperation in discovery is held against them for purposes of waiver.[5]

## II.  Plaintiffs Agreed To The Arbitration Agreement In The User Agreement

In their Opposition, Plaintiffs do not dispute that they "agreed to the applicable Coinbase

---

[5] The parties have also continued to meet and confer on Defendants' discovery requests in order to ripen discovery disputes for the Court's consideration if the motion to compel is denied.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

User Agreements."  Resp. 5.  So they do not contest formation of the relevant arbitration agreement.  Instead, Plaintiffs claim that they "have not entered any agreement at all with Defendants about arbitration."  *Id.* at 12.  That argument misses the point.  "Defendants are not claiming to be *parties* to the User Agreement."  Mot. 9.  Rather, "California law allows Defendants as *non-parties* to equitably estop Plaintiffs from avoiding *their* agreement to arbitrate claims relating to their purchases of COMP on Coinbase."  *Id.*  And the Ninth Circuit has repeatedly held that whether non-signatories can equitably estop signatories from avoiding their agreements is a question relating to scope, not formation.  *See id.* (collecting cases).

Defendants also explained that Plaintiffs' claims—arising out of and directly relating to their purchases and acquisitions of COMP tokens on the Coinbase platform—"clearly fall within the arbitration agreement's broad reach."  *Id.*  The User Agreement straightforwardly applies to "any … claim … arising out of or relating in any way to … any products sold or distributed through the Coinbase Site."  ECF No. 169-2 at 28.  Plaintiffs try to avoid that language, misleadingly claiming that they "agreed only to arbitration of claims between 'you and Coinbase.'"  Resp. 2. Not so.  Plaintiffs agreed to arbitrate "*any claim* … relating in *any way* … to *any product* sold or distributed" through Coinbase's site, ECF No. 169-2 at 28 (emphasis added), including COMP. That provision covers their claims in this lawsuit.

### III.  The User Agreement Clearly And Unmistakably Delegates Questions Of Arbitrability To The Arbitrator

When an agreement "delegates the arbitrability question to an arbitrator, a court may not override the contract" because the court "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).  Plaintiffs do not dispute that rule, but they argue that it is irrelevant that non-signatory enforcement is not a question of contract formation.  Resp. 14.  That argument is wrong under *Schein*.   While the court always decides "whether a valid arbitration agreement exists," *i.e.*, contract formation, *Henry Schein*, 586 U.S. at 69, whether it gets to decide the "scope" of the agreement depends on what (if anything) has been delegated to an arbitrator, *see Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) ("Delegation clauses further limit federal court review by assigning these gateway questions

to an arbitrator.").[6]  Here, the User Agreement clearly and unmistakably delegates all questions of arbitrability both through its broad express delegation provision and through its incorporation of the AAA Rules.  Mot. 10-13.  Either basis is sufficient for this Court to compel arbitration.

In arguing that the delegation provision cannot delegate whether Plaintiffs' claims against Defendants fall within the arbitration agreement, Plaintiffs offer little response to the User Agreement's incorporation of the AAA Rules.  Resp. 14.  But the AAA rules refer to the concept of "jurisdiction," and "whether a [non-signatory] can enforce the arbitration agreement against [a signatory plaintiff] under state contract law involves a 'question of arbitrability,'" so the "AAA Rules cover the question."  *Blanton*, 962 F.3d at 848.  That is why the courts of appeals have unanimously found incorporation of the AAA Rules to provide "clear and unmistakable" evidence of an agreement to arbitrate gateway questions of arbitrability.  *Id.* at 846 (collecting cases).  In fact, the AAA Rules are "about as 'clear and unmistakable' as language can get," *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009), and through their incorporation, Plaintiffs agreed to delegate questions of non-signatory enforcement to the arbitrator.

Rather than truly grapple with that delegation, Plaintiffs argue that non-signatory enforcement cannot have been delegated because the User Agreement says "you and Coinbase agree that any dispute … will be resolved by binding arbitration."  ECF No. 169-2 at 28.  But Plaintiffs' reliance on the "you and Coinbase" language is misguided because that language only identifies the parties to the arbitration agreement; it does not place any limitation on the broad delegation of questions of arbitrability or on who can invoke the arbitration agreement.

In arguing that the delegation provision is more limited than it appears, Plaintiffs rely primarily on *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013), and two district court cases interpreting that decision.  Resp. 11-13.  But Defendants already explained why *Kramer* is

---

[6] Other circuits have expressly held that "an arbitrator decides whether a non-signatory can enforce an arbitration agreement."  *Contra* Resp. 15.  In *Blanton v. Domino's Pizza Franchising LLC*, the Sixth Circuit held "that the arbitrator should decide for itself whether Domino's [a non-signatory] can enforce the arbitration agreement [between a former employee and its franchise]."  962 F.3d 842, 852 (6th Cir. 2020).  Plus, cases like *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136 (3d Cir. 2022) and *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205 (2d Cir. 2005), each involved non-signatories—and each concluded that an arbitrator should decide whether those non-signatories could enforce the arbitration agreement at issue.  *See* Mot. 9 n.4.

distinguishable.  *See* Mot. 11-12.  *Kramer* does not analyze whether the arbitration agreement incorporated AAA rules—which the Ninth Circuit found in a post-*Kramer* decision sufficient to provide clear and unmistakable evidence of intent to delegate.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  Moreover, what the plaintiffs agreed to in *Kramer* differs from what Plaintiffs agreed to in the User Agreement.  The signatories in *Kramer* expressly limited *who* could invoke the arbitration agreement, stating not just that "you and we agree" to the terms but that "*you or we may* choose" and that "either *you or we* [may] elect" arbitration. 705 F.3d at 1124 (emphasis added).  Plaintiffs here do not and cannot point to any similar limitation on *who* can "choose," "elect," or otherwise invoke the User Agreement's arbitration agreement.  In *Kramer*, what plaintiffs were signing up for was the possibility of arbitration with particular parties (because only the parties could choose arbitration); here, Plaintiffs pre-committed to arbitrating claims relating to their purchases on Coinbase.  Unlike *Kramer*, Plaintiffs did not agree to language limiting who could invoke the arbitration provision and its broad delegation of questions of arbitrability.[7]

To construe *Kramer* more broadly—for example, as categorically precluding the delegation of non-signatory enforcement to an arbitrator—would create a conflict with case law in other circuits.  Mot. 9 n.4 (collecting cases holding that a non-signatory's ability to enforce an arbitration agreement concerns a question of arbitrability); *see also Newman v. Plains All Am. Pipeline, L.P.*, 44 F.4th 251, 254-55 (5th Cir. 2022) (Jones, J., dissenting from denial of rehearing en banc) (describing these and other cases).

Indeed, construing *Kramer* that way would create a special category of nondelegable issues.  But the Supreme Court has consistently held that gateway questions of arbitrability *include* "whether the parties have agreed to arbitrate," *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010), and "whether the arbitration contract b[inds] parties who did not sign the agreement,"

---

[7] There are other differences too.  First, the delegation clause in *Kramer* did not delegate issues regarding the "enforceability" of the arbitration agreement.  *Compare Kramer*, 705 F.3d at 1124-25, *with* ECF No. 169-2 at 29.  "Enforceability" is most naturally read to include both *whether* the agreement is enforceable and *who* can enforce it—the latter of which is at issue here.  And second, the delegation clause in *Kramer* did not state that the arbitrator had "exclusive authority" to resolve disputes about arbitrability, which suggests that the court had a role to play in determining arbitrability.  *Compare Kramer*, 705 F.3d at 1124-25, *with* ECF No. 169-2 at 29.

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).  And "who is bound" by an arbitration agreement is a question "regarding the scope of agreements," which is governed by "background principles of state contract law," *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)—just like anything else.  Giving "most favored nation" status to issues of non-signatory enforcement, such that they can never be delegated, flouts these precedents.

Yet Plaintiffs appear to take just that categorical position, relying on a couple of district court decisions that seem to interpret *Kramer* that broadly.  *See* Resp. 12-13 (citing *Young v. ByteDance Inc.*, 700 F. Supp. 3d 808 (N.D. Cal. 2023) and *Donovan*).  Start with *ByteDance*, which found its conclusion "all but dictated" by *Kramer*.  700 F. Supp. 3d at 811.  There, the court concluded that "it's not clear how a nonparty to an arbitration agreement could *ever* invoke a delegation provision when seeking to compel arbitration based only on equitable estoppel."  *Id.* at 813 (emphasis added).  But it *is* clear:  by pointing to a broad delegation clause (like the one here) delegating questions of "enforceability" and "scope" whereby Plaintiffs agreed to delegate the issue of non-signatory enforcement to the arbitrator.  If even an *express* carve-out cannot undercut clear and unmistakable evidence of delegation, *see Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075-76 (9th Cir. 2013), then neither can Plaintiffs' desire to *imply* a carve-out for non-signatory enforcement.

Take *Donovan* next:  As noted in Defendants' Motion, the *Donovan* court considered the issue without the benefit of briefing.  *See* Mot. 13 n.5.  Indeed, the non-signatory's motion there did not mention *Kramer*, on which *Donovan* rested.  *See generally* Defendant GMO-Z.COM TRUST's Notice of Motion and Motion to Compel Arbitration and Stay Proceedings, *Donovan v. Coinbase Global, Inc.*, 649 F. Supp. 3d 946 (N.D. Cal. 2023) (No. 22-cv-02826-TLT), 2022 WL 18640018.  As a result, and contrary to Plaintiffs' opposition, *see* Resp. 12, Defendants are entirely correct to say that *Donovan* "had no opportunity to consider (and did not consider) the distinguishing factors here."  Mot. 13 n.5.  Plus, *Donovan* confused the issue of who decides arbitrability with whether the claims are arbitrable—it did not perform any analysis on the merits of equitable estoppel (the latter question).  *See* 649 F. Supp. 3d at 954-56.

This Court should compel arbitration because the User Agreement clearly and unmistakably delegates arbitrability questions to the arbitrator.

### IV.    Defendants Can Enforce The Arbitration Agreement Against Plaintiffs Under The Doctrine Of Equitable Estoppel

While this Court should not reach the issue of equitable estoppel in light of the clear and unmistakable evidence of delegation here, the Court should still compel arbitration if it decides to resolve gateway issues of enforceability and scope on its own because equitable estoppel applies.

#### A.    Plaintiffs' Claims Are Intertwined With The User Agreement And Allege Substantially Interdependent Conduct

The doctrine of equitable estoppel applies to prevent Plaintiffs from avoiding their previous agreement to arbitrate precisely the type of claims they have brought against Defendants.  Mot. 13-18.  California law allows non-signatory defendants to compel a signatory plaintiff to arbitrate where *either* (1) the claims are "intimately founded in and intertwined with the" agreement, *or* (2) the signatory "alleges substantially interdependent and concerted conduct by the nonsignatory and another signatory" that is "founded in or intimately connected with" the agreement.  *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 & n.5 (9th Cir. 2024).  Both scenarios apply here, though either alone would be sufficient.

Plaintiffs principally argue that both prongs allow estoppel only if Plaintiffs allege a *violation of the User Agreement*.  Resp. 17.  That argument is wrong.  Indeed, it would vitiate the equitable estoppel doctrine, which by definition is invoked by a person who has *not agreed to the contract and so therefore cannot have violated it*.  California law is not so limited; it allows a non-signatory to invoke arbitration when a signatory "attempts to avoid arbitration by suing nonsignatory defendants for claims that are 'based on the same facts and are inherently inseparable' from arbitrable claims" against signatories.  *Metalclad Corp. v. Ventana Env't Org. P'ship*, 109 Cal. App. 4th 1705, 1713 (2003) (citation omitted).  That is exactly what Plaintiffs are undisputedly doing here: suing Defendants for the very claims that, if brought against Coinbase,

would be arbitrable.[8]

Plaintiffs' claims are intertwined and intimately connected with the User Agreement. Yet in their Opposition, Plaintiffs tellingly ignore their allegations that Defendants worked with Coinbase to solicit Plaintiffs' purchases of COMP—the very same allegations Plaintiffs relied upon to oppose dismissal of their claims. *See* ECF 94 at 3-4, 6 & n.4. Plaintiffs also avoid discussing their claim for relief, which seeks rescission based on transactions governed by the User Agreement. *See* Mot. 15. The substance of Plaintiffs' claims is precisely what makes equitable estoppel appropriate. *See id.* 13-18. But Plaintiffs cannot have it both ways. They cannot rely on the allegations about concerted efforts between Defendants and Coinbase to pursue their Securities Act claim against Defendants, while also disclaiming those very allegations to avoid arbitration. If Plaintiffs disclaim the allegations that Defendants worked with Coinbase, then they no longer have a claim, as the only soliciting statement that they have identified relates to the Coinbase Earn videos. AC ¶ 70.[9] That is precisely the type of conduct that the doctrine of equitable estoppel is intended to prevent and why equitable estoppel is appropriate here. Mot. 13-18.

Plaintiffs also do not contest, *see* Resp. 16 n.7, that they allege "interdependent conduct" between Defendants and Coinbase, *see, e.g.*, *Austin v. Univ. of Or.*, 925 F.3d 1133, 1139 (9th Cir. 2019) (argument "waived" where party made "passing reference" in a footnote and lacked "meaningful briefing"). For good reason, as Plaintiffs allege that Defendants worked together with

---

[8] *ByteDance* reached the same conclusion under Nevada law because the plaintiff "could have also sued" the signatory "on essentially the same set of allegations." 700 F. Supp. 3d at 814. And "had she done so, the arbitration agreement would no doubt apply." *Id.* Similarly, "[e]quitable estoppel prevents [Plaintiffs] from sidestepping that agreement by bringing claims only against [Defendants] instead" of Coinbase. *Id.* By contrast, in *Solana Labs*, the district court appears to have accepted Plaintiffs' constrictive understanding of equitable estoppel on the first prong, reasoning that plaintiffs' claims "would be the same if he bought the SOL tokens on a different platform or if Exodus had a different TOS." 2024 WL 4023087, at *7. But that misses the point, as equitable estoppel necessarily looks at the "relationships of the persons, wrongs, and issues" that are actually alleged. *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021). So the relevant hypothetical is whether plaintiffs could have sued the signatory on their actual allegations—not whom they could have sued based on some imagined pleading. Plus, *Solana Labs* expressly noted that defendants there "d[id] not argue that" the second, "substantially interdependent and concerted misconduct" prong applied. 2024 WL 4023087, at *6 n.4.

[9] Indeed, in their discovery responses Plaintiffs have refused to identify any other alleged solicitations that they received before acquiring COMP.

Coinbase to list and advertise the COMP tokens that Plaintiffs then purchased through Coinbase—and as Plaintiffs now have admitted, subject to the User Agreement. *See* Mot. 16-18. Equitable estoppel is appropriate on this basis too.

> **B.    The Supreme Court's *Morgan* Decision Does Not Change The Analysis**

Notwithstanding the Ninth Circuit's statement of California's law of equitable estoppel in *Herrera*, Plaintiffs argue that "Defendants seek to apply the wrong test for equitable estoppel," relying on the Supreme Court's decision in *Morgan*. Resp. 19. But Plaintiffs are wrong about *Morgan* and wrong about the test for equitable estoppel under California law.

*Morgan*'s "sole holding" was that federal courts "may not make up a new procedural rule based on the FAA's 'policy favoring arbitration.'" 596 U.S. at 419. Equitable estoppel is not a made-up "procedural rule"; courts treat equitable estoppel as substantive for *Erie* purposes. *See, e.g.*, *Franklin*, 998 F.3d at 873-74; *In re Transact, Inc.*, 2014 WL 3888230, at *26 (C.D. Cal. Aug. 6, 2014). And the Supreme Court has held that the FAA does not "purport[] to alter background principles of state contract law," including "equitable estoppel." *Arthur Andersen*, 556 U.S. at 630-31; *see also GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438 (2020) ("[T]he FAA permits a nonsignatory to rely on state-law equitable estoppel doctrines to enforce an arbitration agreement"). *Morgan*'s holding simply does not reach longstanding substantive rules like equitable estoppel.

Moreover, the test under California law for whether a nonsignatory can prevent a contracting party from avoiding its contractual obligations *is* the one set forth in *Herrera*, *Franklin*, and elsewhere. It reflects general California contract-law principles that a contracting party can be estopped by a non-signatory from avoiding a contractual obligation where the non-signatory is "closely related to the contractual relationship" between the signatories, including where there is "a defined and intertwining business relationship with a contracting party." *Bugna v. Fike*, 80 Cal. App. 4th 229, 233 (2000) (citation and quotation marks omitted) (holding signatory to its forum-selection-clause agreement). Plaintiffs' *Honeywell* test, on the other hand, is inapposite because it is an evidentiary rule that applies generally without regard to whether a contracting party is seeking

to avoid contractual obligations. *See Honeywell v. Workers' Comp. Appeals Bd.*, 35 Cal. 4th 24, 37 (2005) (quoting Cal. Evid. Code § 623, located in a division titled "Burden of Proof; Burden of Producing Evidence; Presumptions and Inferences").

### CONCLUSION

For these reasons, Defendants respectfully request that the Court compel arbitration of Plaintiffs' claims against Defendants and stay these proceedings.

Dated:  October 11, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

*/s/ Susan E. Engel*
Susan E. Engel (Admitted *pro hac vice*)
susan.engel@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D. C. 20004
Tel: +1 (212) 637-2200

Douglas K. Yatter (SBN 236089)
douglas.yatter@lw.com
Benjamin Naftalis (Admitted *pro hac vice*)
benjamin.naftalis@lw. com
1271 Avenue of the Americas
New York, NY 10020
Tel: +1 (212) 906-1200

Morgan E. Whitworth (SBN 304907)
morgan.whitworth@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Matthew Rawlinson (SBN 231890)
matt.rawlinson@lw.com
140 Scott Drive
Menlo Park, CA 94025
Tel: +1 (650) 328-4600

*Attorneys for Defendant AH Capital Management, L.L.C.*

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Roger A. Cooper*
Jennifer Kennedy Park (SBN 344888)
jkpark@cgsh.com
1841 Page Mill Rd Suite 250

1    Palo Alto, CA 94304
     Tel: +1 (650) 815-4100
2

3    Roger A. Cooper (Admitted *pro hac vice*)
     racooper@cgsh.com
4    Jared Gerber (Admitted *pro hac vice*)
     jgerber@cgsh.com
5    Samuel Levander (Admitted *pro hac vice*)
     slevander@cgsh.com
6    One Liberty Plaza
     New York, NY 10006
7    Tel: +1 (212) 225-2000

8
     *Attorneys for Defendant*
9    *Polychain Alchemy, LLC*

10   SKADDEN, ARPS, SLATE, MEAGHER & FLOM
     LLP
11

12   */s/ Peter B. Morrison*
     Peter B. Morrison (SBN 230148)
13   peter.morrison@skadden.com
     Zachary M. Faigen (SBN 294716)
14   zack.faigen@skadden.com
     300 South Grand Avenue, Suite 3400
15   Los Angeles, CA 90071
     Tel: +1 (213) 687-5000
16

17   Alexander C. Drylewski (Admitted *pro hac vice*)
     One Manhattan West
18   New York, NY 10001
     Tel: +1 (212) 735-3000
19

20   *Attorneys for Defendant Paradigm Operations LP*

21   JENNER & BLOCK LLP

22   */s/ Kayvan B. Sadeghi*
     Kayvan B. Sadeghi (Admitted *pro hac vice*)
23   ksadeghi@jenner.com
     1155 Avenue of the Americas
24   New York, NY 10036
     Tel: +1 (212) 891 1600
25

26   H. An N. Tran (SBN 267685)
27   atran@jenner.com
     525 Market Street 29th Floor
28   San Francisco, CA 94105

Tel: +1 (628) 267-6800

*Attorneys for Defendant Bain Capital Ventures (GP), LLC*

MORRISON COHEN LLP

*/s/ Jason Gottlieb*
Jason Gottlieb (Admitted *pro hac vice*)
jgottlieb@morrisoncohen.com
Michael Mix (Admitted *pro hac vice*)
mmix@morrisoncohen.com
Vani Upadhyaya (Admitted *pro hac vice*)
vupadhyaya@morrisoncohen.com
909 Third Avenue
New York, NY 10022
Tel: +1 (212) 735-8600

LONDON & STOUT P.C.
Ellen London
elondon@londonstoutlaw.com
1999 Harrison St., Suite 655
Oakland, CA 94612
Tel: +1 (415) 862-8494

*Attorneys for Defendants Robert Leshner, Geoffrey Hayes, and Gauntlet Networks, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>ATTESTATION</u>**

In compliance with Civil Local Rule 5-1(i)(3), I attest that all other counsel on whose behalf this filing is jointly submitted have approved of and concurred in this filing.

> */s/ Susan E. Engel*
> Susan E. Engel

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY ISO MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS
Case No. 3:22-cv-07781-WHO