1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    AMANDA HOUGHTON, et al.,              Case No.  22-cv-07781-WHO

         Plaintiffs,
8
                                           ORDER DENYING MOTION TO
9            v.                            COMPEL AND GRANTING MOTION
                                           FOR ALTERNATIVE SERVICE
10   ROBERT LESHNER, et al.,
                                           Re: Dkt. Nos. 169, 181, 186
         Defendants.
11

12          This Order addresses two threshold motions in this cryptocurrency matter.  The first is a

13   motion to compel arbitration.  The plaintiffs are purchasers of COMP tokens, a cryptocurrency

14   created by Compound Labs, Inc.  First Amended Complaint ("FAC") ¶¶ 2, 15-17. They assert one

15   cause of action against a range of defendants for violation of sections 5 and 12(a) of the Securities

16   Act of 1933, based on allegations that defendants were "sellers" of unregistered securities. FAC ¶¶

17   206-216.  The "Partner Defendants,"[1] who are individuals and entities that own more than 50% of

18   COMP tokens and make governance decisions for Compound DAO,  FAC ¶¶ 2,7-14, move to

19   compel arbitration of each plaintiff's claim based on the arbitration agreement that each plaintiff

20   entered into with Coinbase, Inc., the platform through which each plaintiff purchased their COMP

21   tokens.  Dkt. No. 169; FAC ¶¶ 15-17.  The Partner Defendants waited too long to bring this

22   motion, and it is DENIED.  Nor would equitable estoppel apply to force plaintiffs into arbitration

23   if the Partner Defendants had filed this motion timely.

24          In the second motion, plaintiffs seek alternate service on Compound DAO (a

25   "Decentralized Anonymous Organization"), which they allege is a California general partnership

26

27   _____

     [1] The Partner Defendants, as used herein, are Bain Capital Ventures LLC, Polychain Academy
28   LLC, AH Capital Management, LLC, Paradigm Operations LP, Gauntlet Networks, Inc., and
     individual defendants Robert Leshner and Geoffrey Haynes.

*United States District Court*
*Northern District of California*

created by Compound Labs, Inc. to allow borrowing and lending of crypto assets through the "Compound Protocol." *Id*. ¶¶ 2, 7. Plaintiffs contend that service on one of the alleged Partner Defendants (Polychain) and publication of the suit on the Compound Community Forum should be determined to be reasonable service on Compound DAO. Dkt. No. 186. While the merits of plaintiffs' allegations will be determined much later in this litigation, in light of the secretive nature of this enterprise, the efforts plaintiffs have made to serve it have been sufficient to give notice of their claims, and the motion for alternative service is granted.

## I.    MOTION TO COMPEL ARBITRATION

The Partner Defendants move collectively to compel plaintiffs' claims to arbitration based on an arbitration agreement to which each plaintiff agreed with non-party Coinbase, LLC in order to purchase or receive cryptocurrency, including the Compound DAO tokens at issue here. Dkt. No. 169. The Coinbase User Agreements provide:

> **Dispute Resolution: PLEASE BE AWARE THAT SECTION 7 (CUSTOMER FEEDBACK, QUERIES, COMPLAINTS, and DISPUTE RESOLUTION) AND APPENDIX 5 OF THIS AGREEMENT, CONTAIN PROVISIONS GOVERNING HOW TO RESOLVE DISPUTES BETWEEN YOU AND COINBASE. AMONG OTHER THINGS, APPENDIX 5 INCLUDES AN AGREEMENT TO ARBITRATE WHICH REQURIES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY BINDING AND FINAL ARBITRATION**.

Declaration of Morgan E. Whitworth (Dkt. No. 169-1), Ex 1, Preamble.

The Arbitration Agreement itself, in Appendix 5 to the Coinbase User Agreement, provides:

> **APPENDIX 5: ARBITRATION AGREEMENT**
> **1.1 Applicability of Arbitration Agreement**. Subject to the terms of this Arbitration Agreement, you and Coinbase agree that any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services, or the User Agreement and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms (each, a "Dispute") will be resolved by binding arbitration.
> . . .
> **1.6. Authority of Arbitrator**. The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of

2

the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement, except for the following . . . (3) all Disputes about whether either party has satisfied any condition precedent to arbitration shall be decided only by a court of competent jurisdiction and not by an arbitrator.

*Id*.

The Partner Defendants argue that since plaintiffs admitted in recent discovery responses that they agreed to the Coinbase User Agreement, they are bound to arbitrate their claims against the Partner Defendants. The Partner Defendants assert that plaintiffs seek to "unwind" their purchase of COMP tokens and that the Arbitration Agreement applies broadly to "any dispute, claim, [or] disagreement arising out of or relating in any way to … any product sold or distributed through the Coinbase Site." § 1.1 Coinbase User Agreement. Although the Partner Defendants are not parties to the Coinbase User Agreement, they contend that California law equitably estops plaintiffs from avoiding their agreements to arbitrate all claims regarding purchases made through Coinbase's platform. *See* Mot. to Compel (Dkt. No. 169) at 13-18. They also assert that whether they can seek to enforce the Arbitration Agreement against plaintiffs and equitably estop plaintiffs from avoiding arbitration are questions that go to the scope and not the formation of an agreement to arbitrate. Under the Arbitration Agreement's broad delegation clause, they say that those questions must be resolved by the arbitrator. *See* Arbitration Agreement, § 1.6.

Plaintiffs respond that the Partner Defendants waived their right to compel arbitration by litigating this case in this forum for over 20 months. The Partner Defendants' admitted in their opening brief that Coinbase had an arbitration agreement in place for over a decade.[2] On the merits, plaintiffs argue that the Arbitration Agreement cannot be enforced by the Partner Defendants because it covers claims only "between" plaintiff and Coinbase and, relatedly, it is for me and not any arbitrator to determine whether the plaintiffs agreed to arbitrate their claims against the Partner Defendants and whether the Partner Defendants can argue estoppel.

### A.     Waiver

"A determination of whether the right to compel arbitration has been waived must be

---

[2] Mot. to Compel at 1.

United States District Court
Northern District of California

conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (internal quotation marks omitted). A party arguing waiver of the ability to arbitrate "bears a heavy burden of proof" and must demonstrate three factors: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* (citing *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)).

### 1.    Knowledge

Plaintiffs assert that the Partner Defendants had knowledge that each plaintiff used Coinbase to purchase COMP tokens since drafting the first complaint[3] and have admitted they have known that the Coinbase arbitration agreement has been in effect for at least a decade.[4] They also point out that defendants Leshner and Hayes are Coinbase users and therefore had knowledge of the Arbitration Agreement as part of the Coinbase User Agreement. Declaration of Nicholas N. Spear (Dkt. No. 181-2), Exs. 1, 2.[5]

The Partner Defendants contend that they did not have knowledge – despite these other admissions and sources – until July 2024 when plaintiffs admitted they agreed to the Coinbase User Agreements in their discovery responses. Declaration of Morgan E. Whitworth (Dkt. No. 169-1), Ex. 3, RFAs 7-9. But that more recent confirmation in discovery does not negate the Partner Defendants' prior knowledge that Coinbase required users to agree to arbitration through its User Agreement, as admitted in its motion and known at least to defendants Leshner and Hayes.

---

[3] *See* Complaint, Dkt. No. 1, ¶¶ 15-17.

[4] "Indeed, the User Agreement has contained an arbitration agreement for over a decade." Mot. to Compel at 1.

[5] Plaintiffs point out that counsel for many of the Partner Defendants represent other clients in different suits pending in the Northern District of California where motions to compel arbitration based on the Coinbase User Agreement were filed in 2021 and 2022, indicating many counsel also had knowledge prior to the filing of this case. *See Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946 (N.D. Cal. 2023); *BMA LLC v. HDR Glob. Trading Ltd.*, 2021 WL 949371 (N.D. Cal. 2021).

The admissions regarding the Coinbase User Agreement were only recently sought and provided.  But if the Partner Defendants really needed that confirmation, they could have secured limited discovery earlier in this case, for example, prior to general discovery opening or the meeting and conferring over a protective order and ESI protocols.  The Partner Defendants did not choose that path. Instead, they opposed motions to appoint lead counsel and filed motions to dismiss and motions for reconsideration.  *See Martin*, 829 F.3d at 1128  ("a party may not delay seeking arbitration [for seventeen months] until after the district court rules against it in whole or in part; nor may it belatedly change its mind after first electing to proceed in what it believed to be a more favorable forum.").[6]

### 2.   Acts  Inconsistent/Prejudice

As the *Martin* court explained, "a party's extended silence and delay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which would be inconsistent with a right to arbitrate."  *Martin*, 829 F.3d at 1125.  During the twenty months that the Partner Defendants waited to move to compel arbitration, they opposed the appointment of lead counsel, moved to dismiss, and then sought reconsideration on the order denying the motion to dismiss.  They answered the Complaint, filed conditional counterclaims, entered into a protective order and ESI order, and served and responded to discovery.  This litigation conduct required plaintiffs to engage in multiple meet and confers, court appearances, and responses in support of or in opposition to the defendants' filings.  It goes beyond the sort of "'self-inflicted' wounds" identified by the *Martin* court as not supporting prejudice and concern issues that plaintiffs "would be forced to relitigate an issue on the merits [in

---

[6] The Partner Defendants argue that confirmation through discovery was required before moving to compel, relying on a recent case from this District where the court found insufficient evidence that plaintiffs had agreed to an arbitration agreement.  *Young v. Solana Labs, Inc*., No. 22-CV-03912-RFL, 2024 WL 4023087, at *4 (N.D. Cal. Sept. 3, 2024).  *Young* is readily distinguishable.  The parties agreed there that whether users were bound to the arbitration agreement depended on whether users accessed the cryptocurrency exchange via a desktop or through a mobile app.  Because there was not "evidence as to whether Young accessed the Exodus platform through a mobile download, desktop download, or some other method," there was a genuine dispute over whether the plaintiffs had agreed to arbitration with the exchange.  No such factual issues – *e.g.*, the existence of different channels to access Coinbase's platform and related implications for coverage by the Arbitration Agreement in the Coinbase User Agreement – are raised or argued here.

United States District Court
Northern District of California

arbitration] on which they have already prevailed in court" and demonstrate "that the defendants have received an advantage from litigating in federal court that they would not have received in arbitration." *Martin*, 829 F.3d at 1126.  As one example, the discovery protective orders and ESI – which required meeting and conferring and by which defendants have secured discovery from plaintiffs –imposed costs beyond those plaintiffs might incur in arbitration and resulted in the Partner Defendants securing advantages they would not have secured in arbitration.  *Id*. at 1127; *see also Sequoia Benefits & Ins. Servs., LLC v. Costantini*, 553 F. Supp. 3d 752, 760 (N.D. Cal. 2021) ("these inconsistent actions include defendants' filing of a motion to dismiss that went to the merits, reversing the position they took before the Court on arbitration in the case management statement, and other indicia of inconsistency, such as defendants' filing of counterclaims with an accompanying request for a jury trial).[7]

In short, plaintiffs have demonstrated all three prongs.  The Partner Defendants have waived any right to seek to compel arbitration that they might have had.  And while this holding is fully sufficient to DENY the motion to compel arbitration, I will also briefly address the other arguments the parties raised in their motion or opposition.[8]

### B.    Delegation - Who Decides

Beyond the question of waiver, the Partner Defendants contend that because the Arbitration Agreement delegates disputes regarding the scope of the Agreement to an arbitrator, and the Agreement incorporates the American Arbitration Association ("AAA") arbitration rules that likewise delegate disputes over scope to an arbitrator, I am precluded from determining

---

[7] None of the Partner Defendants asserted a right to compel arbitration in their answers, and in support of their Counterclaims, each Partner Defendant either made an express demand for a jury trial on their Counterclaims or for "damages to be determined at trial."  *See* Dkt. Nos. 121, 122, 123, 124, 125, 126.

[8] At oral argument the Partner Defendants argued that if their motion to compel as a non-signatory based on estoppel was denied, they would appeal and be entitled to a stay of these proceedings under 9 U.S.C. § 16(a)(1)(B).  Plaintiffs responded that if I found waiver, as I have, then the Partner Defendants would not be entitled to a stay.  I will not resolve the issue without briefing.  If the Partner Defendants believe they are entitled to a stay on appeal under 9 U.S.C. § 16 despite my holding that their waiver is an adequate and independent ground sufficient to deny their motion to compel, they shall file a brief not to exceed two pages on or before December 9, 2024.  Plaintiffs shall file a response, not to exceed two pages, on or before December 23, 2024 and the matter will be under submission.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   whether defendants may move to compel arbitration based on an estopped theory under the

2   Coinbase Arbitration Agreement.  Mot. to Compel at 10-12; Arbitration Agreement § 1.6;

3   Whitworth Decl., Ex. 1 ("AAA Rules").  The Partner Defendants are wrong.

4           The Arbitration Agreement plaintiffs signed was with Coinbase, not the Partner

5   Defendants.  The Coinbase User Agreement explains that the Arbitration Agreement covers

6   "DISPUTES BETWEEN YOU AND COINBASE" or "YOU AND US."  *See* Coinbase User

7   Agreement Preamble, *supra*; *see also Kramer v. Toyota Motor Corp*., 705 F.3d 1122, 1127 (9th

8   Cir. 2013) ("Given the absence of clear and unmistakable evidence that Plaintiffs agreed to

9   arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the

10  instant dispute is arbitrable.")[9]; *Young v. ByteDance Inc*., 700 F. Supp. 3d 808, 810 (N.D. Cal.

11  2023) ("It's difficult to understand how any nonparty seeking to compel arbitration on equitable

12  estoppel grounds could ever invoke a delegation provision. But even if that were possible in some

13  circumstance, it's not possible here, because it's clear that the delegation provision in the

14  arbitration agreement does not apply to disputes between Velez and nonparties like TikTok.).  As

15  the Hon. Rita Lin recently explained in a case addressing an Arbitration Agreement with very

16  similar language, because "the Exodus TOS does not clearly and unmistakably require arbitration

17  of arbitrability with nonsignatories, the question of whether Defendants have formed an agreement

18  to arbitrate with Young is for the Court rather than the arbitrator to determine."  *Young v. Solana*

19  *Labs, Inc*., No. 22-CV-03912-RFL, 2024 WL 4023087, at *6 (N.D. Cal. Sept. 3, 2024).

20          The Hon. Trina Thompson reached the same conclusion with respect to the Coinbase

21  agreements at issue here.  In *Donovan v. Coinbase Glob., Inc*., 649 F. Supp. 3d 946, 955 (N.D.

22  Cal. 2023), Judge Thompson followed the Ninth Circuit's decision in *Kramer*, *supra*,

23  and concluded that the Coinbase "User Agreement contains clear-cut language showing an intent

24  to arbitrate disputes between the signatories only" and even if the Coinbase Agreement was

25  somehow ambiguous, because "*Kramer* requires that there be clear and unmistakable evidence

26

27  _____

28  [9] The *Kramer* court found that agreement, providing "[e]ither you or we may choose to have any
    dispute between us and us decided by arbitration," "evidences Plaintiffs' intent to arbitrate
    arbitrability with the Dealerships and no one else."  *Kramer*, 705 F.3d at 112.

7

1    that a signatory agreed to arbitrate arbitrability with a nonsignatory," the motion to compel was

2    denied as to the nonsignatory.  *Id.* at 955.

3        In sum, the question of arbitrability with nonsignatories rests with me, not an arbitrator.

4    **C.    Equitable Estoppel**

5        The next question is whether equitable estoppel applies.  The parties dispute whether the

6    "bespoke, arbitration specific test" adopted by some courts or the generally applicable test for

7    equitable estopped should apply.  *Compare* Motion to Compel at 13-15 *with* Oppo. to Compel at

8    19-22.  Even under the test the Partner Defendants espouse, I find that equitable estoppel does not

9    apply.  The nonsignatory Partner Defendants cannot force plaintiffs into arbitration based on the

10   Coinbase User Agreement.

11       The *Kramer* court explained the test:

12           Where a nonsignatory seeks to enforce an arbitration clause, the
             doctrine of equitable estoppel applies in two circumstances: (1) when
13           a signatory must rely on the terms of the written agreement in
             asserting its claims against the nonsignatory or the claims are
14           "intimately founded in and intertwined with" the underlying contract,
             *Goldman v. KPMG LLP*, 173 Cal.App.4th 209, 221, 92 Cal.Rptr.3d
15           534 (2009) (quoting *Metalclad Corp. v. Ventana Envtl. Org. P'ship*,
             109 Cal.App.4th 1705, 1713, 1 Cal.Rptr.3d 328 (2003)), and (2) when
16           the signatory alleges substantially interdependent and concerted
             misconduct by the nonsignatory and another signatory and "the
17           allegations of interdependent misconduct [are] founded in or
             intimately connected with the obligations of the underlying
18           agreement." *Goldman*, 173 Cal.App.4th at 219, 92 Cal.Rptr.3d 534.

19   *Kramer*, 705 F.3d at 1128–29.

20       The Partner Defendants' motion fails on the first prong.  While Coinbase's actions are

21   discussed in the FAC, they concern Coinbase's agreement to list COMP tokens, including alleged

22   efforts that Coinbase took to help get the COMP token listed on its platform and offering

23   incentives for customers to purchase COMP tokens.  *See* FAC ¶¶ 62-72.  The claims alleged

24   against Compound DAO and the Partner Defendants, however, do not implicate Coinbase; the

25   only claim is for "Unregistered Offer and Sale of Securities in Violation of Sections 5 and 12(a)(1)

26   of the Securities Act of 1933."  *Id.* ¶¶ 206-216.  There is no liability asserted against Coinbase, the

27   trading platform.  Coinbase's actions are relevant (under the broad definition of relevance under

28   Federal Rule of Civil Procedure 26) to resolve this claim, but I will not need to address (much less

United States District Court
Northern District of California

8

rely on) the Coinbase User Agreement. The Securities Act claim is not intimately founded in or intertwined with that contract. *See Young v. Solana Labs, Inc*., 2024 WL 4023087 at *7 (declining to apply estoppel based on crypto exchange agreement where the claims asserted against "[d]efendants do not depend on the Exodus TOS and are not inextricably bound up with its terms. Exodus and its TOS are not mentioned in the operative complaint, and Young does not rely on any of the terms of the Exodus TOS as the basis for his claims that Defendants promoted sales of unregistered securities.").

On the second prong, the only claim is for sale of the unregistered securities. The conduct of Coinbase – being the first exchange to list COMP tokens and then listing them – is not "interdependent and concerted misconduct" that is "founded in or intimately connected with the obligations of the underlying agreement." *See Young v. Solano Labs*, 2024 WL 4023087, at *7 ("Young's claims that the SOL tokens he bought were unregistered securities would be the same if he bought the SOL tokens on a different platform or if Exodus had a different TOS.").

The allegations and actionable conduct alleged in case distinguishes it from the cases relied on by the Partner Defendants. For example, in *Young v. ByteDance*, 700 F. Supp. 3d 808, the non-signatory defendant TikTok was *the entity* where the plaintiff performed content-moderation work that formed the basis for her claims, although she was hired and paid by the non-defendant but signatory staffing company. Plaintiff sued non-signatory TikTok, but not the signatory staffing agency, alleging emotional distress from performing that content moderation. In her complaint, plaintiff alleged that the staffing agency which employed her "helped implement TikTok's allegedly unsafe accuracy policies, quotas, and training materials by reprimanding underperforming employees or docking their pay—disciplinary measures taken in Telus's role as an employer." *Id* at 814. The conditions of the work she performed for TikTok – based on TikTok's policies and practices – caused plaintiff the harms alleged, although they were implemented most directly by the signatory employer. In this posture, plaintiff's claimed harm was caused through the interdependence and concerted conduct of TikTok and the staffing agency and intimately connected with the employment agreement plaintiff had signed.

Here, as in *Solano Labs*, plaintiffs could have purchased COMP on any exchange and

United States District Court
Northern District of California

alleged the exact same claim against the Partner Defendants. The harm they complain of does not stem from purchasing COMP through Coinbase – *e.g.*, they do not allege that Coinbase illegally profited from their purchase or otherwise directly harmed them under the Securities Act – it stems from the purchase of an unregulated security allegedly offered by defendants.[10] While the relief plaintiffs seek is "recission," that could be accomplished through Coinbase or any other exchange and that remedy does not implicate a "transaction" that relies on Coinbase's User Agreement.

As I stated earlier, the Motion to Compel Arbitration is DENIED based solely on waiver. But even if waiver did not apply, the motion would still be denied because the Partner Defendants cannot assert equitable estoppel from the Coinbase User Agreement to force plaintiffs into arbitration.

## II.   MOTION FOR ALTERNATE SERVICE

The Clerk's office has twice declined to enter default against "Compound DAO." Dkt. Nos. 39, 83. The issue was raised in the parties' Case Management Conference Statement in October 2023. Dkt. No. 119, 136. At that juncture, I indicated that whether alternative service on DAO was appropriate might be better determined after discovery, including discovery regarding whether Compound DAO is a general partnership under California and regarding the roles (if any) of the Partner Defendants in the DAO. Dkt. No. 136.

---

[10] The Partner Defendants' other cases are similarly inapposite. In *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 704 (9th Cir. 2024), the plaintiffs alleged that Cathay Pacific "breached their contract by not issuing a refund following flight cancellations for tickets that the Herreras purchased through a third-party vendor" that imposed an arbitration agreement. *Id.* at 704. Looking to "the relationship between the parties and their connection to the alleged violations," the court concluded that because Cathay Pacific placed the vendor's "conduct at issue by asserting that ASAP violated its own Terms & Conditions by creating refund restrictions— restrictions that form a basis for the Herreras' claim" it easily concluded the plaintiffs' claim was "intimately founded in and intertwined with" ASAP's alleged conduct under the Terms & Conditions." *Id.* at 708. There is no allegation that Coinbase took any action that could have violated its User Agreement. *See also Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 875 (9th Cir. 2021) (equitable estoppel applied where nurse's claims against a hospital turned on the staffing agency's performance under its contract with the hospital, meaning "the substance of her claims is rooted in her employment relationship with [the staffing agency], which is governed by the Arbitration Agreement."). In *MouseBelt Labs Pte. Ltd. v. Armstrong*, 674 F. Supp. 3d 728, 741 (N.D. Cal. 2023), the plaintiff's claims were "predicated on allegations that Defendants induced" the CEO of the signatory third-party "to shirk and to eventually abdicate" the signatory-third party's "contractual obligations to MouseBelt. Those obligations existed only by virtue of the Agreements, and the harm allegedly suffered by MouseBelt cannot be divorced from those obligations.").

United States District Court
Northern District of California

Plaintiffs have now raised the issue squarely by filing a motion seeking leave for alternative service under Cal. Code of Civ. Proc. ("C.C.P.") § 413.30. They explain that their attempts at service included: (1) attempting to serve the DAO by serving one of the Partner Defendants plaintiffs believe is a General Partner, defendant Polychain Alchemy LLC; and (2) submitting a "post" regarding this lawsuit to the Compound Community Forum, which according to plaintiffs has a team of moderators who have "special authority" and are "responsible for [the] forum." *See* Declaration of Nicholas Spear, Dkt. No. 186-2, ¶ 3, Ex. 1 (communications with counsel for Polychain), Ex. 3 (FAQ Compound Community Forum); Declaration of Jason Harrow (Dkt. No. 186-1) ¶¶ 4-10. Polychain "rejected service" because it was "not authorized" to accept service. Spear Decl., Ex. 1. The post to the Compound Community Forum (Dkt. No. 39-1) was only ever "pending" and for reasons "unknown by plaintiff" was "never posted" to the Forum. Harrow Decl. ¶¶ 9-10.

Plaintiffs argue that these attempts at service should be deemed effective under C.C.P. § 413.30 and point to two recent cases approving alternative service on DAO entities. In *Commodity Futures Trading Comm'n v. Ooki DAO*, No. 3:22-CV-05416-WHO, 2022 WL 17822445 (N.D. Cal. Dec. 20, 2022), I approved alternative service on a DAO. *See id*. at * 8 (concluding that while the DAO "has the capacity to be sued" that "does not necessarily establish that the DAO is an association that can be held liable under the CEA" which was a merits issue). I determined that service under Cal. C.C.P. § 416.40 (b)-(c) was inapplicable because "none of the designated agents or individuals exist" and found that Cal. Corporations Code § 18220, "cannot govern service in this case because it only applies when an unincorporated association has an address." *Id*. But I concluded that C.C.P. § 413.30, the "alternative service provision," applied to allow that "the court in which the action is pending may direct that summons be served in a manner which is reasonably calculated to give actual notice to the party to be served." Notice was reasonably calculated to give actual notice where notice of the case and the Complaint was posted "on the Chat Box and online Discussion Forum" and were sufficient to "reasonably calculated to apprise Ooki DAO of this litigation." *Id*. at *11.

More recently, in *Samuels v. Lido DAO*, No. 23-CV-06492-VC, 2024 WL 4231598 (N.D.

Cal. June 27, 2024), the Hon. Vince Chhabria addressed a similar issue and relied on *Ooki Dao*:

> Samuels's Motion for Alternative Service is granted, and his Motion for Entry of Default is denied. Although Samuels contends that service on AH Capital Management was proper for effectuating service against Lido DAO based on Samuels's allegations that AH Capital Management is a general partner of Lido DAO, the issue of whether Lido DAO is a general partnership and whether AH Capital Management is a general partner are merits questions that have yet to be adjudicated. But Samuels also attempted to serve Lido DAO in three alternative ways: (1) he mailed a copy of the complaint and summons to the address associated with the entity that runs Lido DAO's user interface, (2) he sent the complaint and summons to the DAO's general counsel via email and social media, and (3) he posted the complaint and summons on Lido DAO's Governance Forum. As another court in this district has already held, service on a DAO by posting to the Governance Forum is reasonably likely to put the DAO on notice of ongoing litigation. *See Commodity Futures Trading Commission v. Ooki DAO*, No. 22-cv-05416, 2022 WL 17822445, at *13 (N.D. Cal. Dec. 20, 2022). And these three methods of service combined are reasonably calculated to give actual notice of the lawsuit to Lido DAO. Therefore, service is deemed sufficient as of the date of the filing of this order.

*Id.* at *1.

The Partner Defendants argue that any determination on service is premature until plaintiffs define and defend their theory of which persons or entities holding COMP tokens make up the asserted "General Partnership" of Compound DAO, and which persons or entities are not part of that asserted General Partnership. *Id.* 4-6. Discovery should reveal who is and who is not part of the alleged general partnership, or whether Compound Dao is another form of legal entity. While California law may provide different routes for the service of members in a general partnership (*see* Oppo. to Service at 10-11), service based on C.C.P. §413.30 is appropriate under the circumstances here in light of the intentionally opaque nature of the DAO's organization.

Defendants argue that the efforts plaintiffs have already undertaken at service are not sufficient and not as likely to provide reasonable notice as the efforts undertaken in *Ooki DAO* (where alternative service was allowed through the DAO's website's "Help Chat Box" and "online discussion forum" and finding that "posting on the defendant's website's online discussion forum, which was dedicated to conversation about the defendant's business, was reasonably likely to

apprise the defendant of the ongoing litigation"[11]) and *Lido DAO* (where "1) [plaintiff] mailed a copy of the complaint and summons to the address associated with the entity that runs Lido DAO's user interface, (2) he sent the complaint and summons to the DAO's general counsel via email and social media, and (3) he posted the complaint and summons on Lido DAO's Governance Forum."[12]).  Defendants contend that the post plaintiffs attempted on the Community Forum did not expressly discuss this case and simply linked to a news article about it.  Oppo. to Serv. at 6. They also argue that attempted service on Polychain was ineffective as Polychain has not been shown to be a general partner and "Polychain Alchemy held only *de minimis* amounts of COMP tokens, and did not vote these tokens or delegate any voting rights." Oppo. to Serv. at 2, 9.

Plaintiffs dispute whether Polychain and entities it controls or persons who control Polychain and the related entities have *de minimis* control over Compound DAO.[13]  Discovery will shed light on this.  For now, it seems highly likely that whatever sort of entity the Compound DAO is, it has notice of this litigation.  It would be inequitable and inefficient to allow it at the end of discovery to raise defenses based on its inability to defend itself (or that a statute of limitation had run) because it had not been served.  Consistent with the analysis in *Ooki DAO* and *Lido DAO*, I find that posting notice of this litigation and notice of service through the Community Forum is sufficient.  Plaintiffs' motion for alternative service under C.C.P. § 413.30 is GRANTED.

Within ten (10) days of the date of this Order, plaintiffs shall attempt to post a "notice of pendency of litigation and alternative service" again on the Community Forum.  To the extent possible, a copy of the operative complaint, a summons, and a copy of this Order shall be attached to or incorporated into that post.  Service will be complete upon posting to the Community Forum. If the attempted post remains "pending" or has not been posted to the Community Forum in a way that users of the Forum can fully access it, counsel shall meet and confer and within twenty (20)

---

[11] *Commodity Futures Trading Comm'n v. Ooki DAO*, 2022 WL 17822445 at *11.

[12] *Samuels v. Lido DAO*, 2024 WL 4231598 at *1.

[13] Reply to  Serv. (Dkt. No. 197) at 5-6.

United States District Court
Northern District of California

1  days of the date of this Order, defendant Leshner and defendant Haynes[14] are each ORDERED to

2  post the "notice of pendency of litigation and alternative service" and if feasible a copy of the

3  operative complaint, a summons, and a copy of this Order drafted on the Community Forum.

4       **IT IS SO ORDERED.**

5  Dated: November 25, 2024



William H. Orrick
United States District Judge

---

[14] Plaintiffs assert and defendants do not dispute that defendants Leshner and Haynes both "maintain accounts on the Compound Community Forum."  Mot. for Alt. Service at 8.