**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 21 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AMANDA HOUGHTON; et al., | No.   24-7243 |
| Plaintiffs-ctr-defendants-Appellees, | D.C. No. 5:22-cv-07781-WHO Northern District of California, San Francisco |
| v. | |
| POLYCHAIN ALCHEMY, LLC; et al., | MEMORANDUM* |
| Defendants-Appellants, | |
| and | |
| COMPOUND DAO, | |
| Defendant, | |
| AH CAPITAL MANAGEMENT, LLC; et al., | |
| Defendant-ctr-claimants-Appellants. | |

Appeal from the United States District Court
for the Northern District of California
William H. Orrick, District Judge, Presiding

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted October 8, 2025
San Francisco, California

Before:  S.R. THOMAS, NGUYEN, and BRESS Circuit Judges.

AH Capital Management, LLC ("AH Capital")  appeals the district court's denial of its motion to compel arbitration.  We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(B) and 28 U.S.C. § 1291.  "We review denial of a motion to compel arbitration *de novo*, and review findings of fact underlying the district court's decision for clear error."  *Lim v. TForce Logistics LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (internal citations omitted).  Because the parties are familiar with the history of this case, we need not recount it here.

I

The district court correctly concluded that AH Capital waived its right to compel arbitration by litigating this case for twenty months.

"[T]he test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right."  *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023).  "[T]he party opposing arbitration [] bears the burden of showing waiver."  *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023).

2

Knowledge does not require "a present ability to move to enforce an arbitration agreement." *Hill*, 59 F.4th at 469. Instead, it requires that a party has "knowledge of and knew how to assert its right to compel arbitration," which can be established through prior court filings. *Id*. at 470-71. This is a holistic inquiry that depends on the facts and circumstances. *Id.* at 469-71 & n.16.

In *Hill*, we held that defendant had knowledge of the right to compel because it "repeatedly asserted its right to individual arbitration." *Id.* at 470. We rejected defendant's argument that because the district court could not compel nonparties to the case to arbitrate until after class certification that the defendant did not have knowledge of its right. *Id*. at 469. Like in *Hill*, AH Capital lacked the ability to compel arbitration without confirmation that Houghton had accepted Coinbase's User Agreement ("User Agreement"). That confirmation was provided just prior to defendant's filing the motion to compel.

However, as in *Hill*, AH Capital had sufficient information despite not having a "present ability to move" for arbitration. *Id*. The first complaint admitted to the purchase of COMP tokens on Coinbase. AH Capital confirmed its knowledge of Houghton's use of Coinbase to purchase COMP tokens in its motion to dismiss, which was filed fifteen months prior to the motion to compel. The User Agreement has contained an arbitration agreement for over a decade. The basis for

3

AH Capital's motion to compel arbitration is that Houghton purchased COMP tokens on Coinbase and the User Agreement contained an arbitration agreement. As the district court properly found, Houghton's use of Coinbase was known at the beginning of litigation, and the User Agreement was available throughout litigation.

As in *Hill*, where the lack of class certification did not negate knowledge of the right to compel, 59 F.4th at 469, here, the lack of certainty regarding whether Houghton accepted the User Agreement does not negate knowledge of circumstances that would have allowed AH Capital to raise the prospect of arbitration much earlier, even if it lacked a present ability to move to compel arbitration until it definitively knew whether Houghton had signed the Coinbase agreement containing an arbitration clause. In fact, under the Federal Arbitration Act ("FAA"), courts may engage in limited discovery on the issue of contract formation, and parties can file a simultaneous motion for limited discovery and to compel arbitration. *See Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 833 (9th Cir. 2022) (remanding for limited discovery on the motion to compel). Therefore, the district court was correct in concluding that AH Capital knew of their right to compel arbitration.

The district court properly concluded that AH Capital took actions that were inconsistent with the right to arbitrate. For this element, "there is no 'concrete test,' for assessing whether [a party] took acts inconsistent with its right to arbitration, 'we consider the totality of the parties' actions.'" *Armstrong*, 59 F.4th at 1015 (quoting *Hill*, 59 F.4th at 471). "[A] party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Id.* (internal citation and quotation omitted).

Here, AH Capital filed a motion to dismiss and a motion for reconsideration of the order denying the motion to dismiss. AH Capital also filed an opposition to the motion to appoint lead counsel and answered the amended complaint and filed counterclaims against Houghton and other plaintiffs. The case proceeded through the judicial system with two case management conferences and AH Capital serving and responding to discovery requests. The parties engaged in multiple meet and confers. AH Capital ultimately filed its motion to compel twenty months into this litigation. Taken together, these actions are inconsistent with exercising a right to arbitrate. *See, e.g., Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (holding that a party engaged in inconsistent actions where it

5

litigated for two years, moved to dismiss, and engaged in a pre-trial conference);

*Martin v. Yasuda*, 829 F.3d 1118, 1125-26 (9th Cir. 2016) (holding that the

defendants engaged in inconsistent acts where they litigated for seventeen months,

which included a motion to dismiss on a key merits issue, answering discovery,

and conducting depositions); *Hill*, 59 F.4th at 471-72 (holding express denials are

not required to show inconsistent acts but instead reliance on the judicial process).

In conclusion, the district court was correct in finding that Houghton had

shown that AH Capital waived its right to compel arbitration.

## II

Even if AH Capital did not waive its right to compel arbitration, the district

court also properly held that AH Capital did not have a right to arbitrate. The User

Agreement does not delegate to the arbitrator the question of arbitrability with a

non-signatory, and AH Capital cannot invoke the arbitration agreement through

equitable estoppel.

## A

The district court correctly concluded that the User Agreement does not

delegate to the arbitrator the question of arbitrability with non-signatories. "The

FAA limits federal court review of arbitration agreements to two gateway

arbitrability issues: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.' Delegation provisions further limit federal court review by assigning these gateway questions to an arbitrator." *Bielski v. Coinbase, Inc.* 87 F.4th 1003, 1009 (9th Cir. 2023) (internal citation omitted). Enforcement of an arbitration agreement through equitable estoppel, which AH Capital raises here, is a gateway issue. *See Mundi v. Union Sec. Life Ins. Co.* 555 F.3d 1042, 1045 (9th Cir. 2009).

A "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). A federal court only has jurisdiction to review delegation of arbitrability to an arbitrator where a party "challenges specifically the validity of the agreement to arbitrate." *Id.* at 70. Houghton specifically challenged the validity of the delegation clause to non-signatories in the response to the motion to compel. Therefore, the district court could determine whether the User Agreement delegated arbitrability with non-signatories, *Id.* at 70, and we can appropriately review that determination. 9 U.S.C. § 16(a)(1)(B).

For a delegation clause to apply, the Supreme Court has held that the parties must "clearly agree to submit the question of arbitrability to arbitration," otherwise arbitrability is "subject to independent review by the courts." *First Options of*

*Chi., Inc. v. Kaplan*, 514 U.S. 938, 947 (1995). Recently, the Supreme Court

reaffirmed those principles stating that arbitration "is a matter of contract and

consent," so "'courts should not assume that the parties agreed to arbitrate

arbitrability unless there is "clear and unmistakable" evidence that they did so.'"

*Coinbase, Inc. v. Suski*, 602 U.S. 143, 145, 149 (2024) (brackets omitted). In this

case, neither the explicit terms of the Arbitration Agreement nor the incorporation

of AAA rules "clearly and unmistakably" delegate arbitrability as it relates to non-

signatories. *See Kramer v. Toyota Motor Corp*. 705 F.3d 1122, 1127 (9th Cir.

2013); *Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th Cir. 2015).

      In *Kramer*, plaintiffs purchased Toyota vehicles from dealerships and their

purchase agreement contained an arbitration provision. 705 F. 3d at 1124. The

plaintiffs then sought to sue the vehicle manufacturer, Toyota, for alleged defects.

*Id*. Toyota moved to compel arbitration and argued arbitrability was delegated

because a delegation clause provided that the arbitration agreement "includes all

claims and disputes arising out of, or relating to: the vehicle" and "applies to any

claim or dispute about the interpretation and scope of this Arbitration Clause." *Id*.

at 1124-25. We affirmed the district court's denial of the motion to compel

arbitration finding that the delegation provision was "expressly limited to Plaintiffs

and the Dealerships" based on the inclusion of "you" and "we" throughout the

contract despite its statement that it applied to disputes about the "interpretation and scope" of the agreement.  *Id*. at 1125, 1127.

Similar to *Kramer*, Section 1.1 of the Arbitration Agreement, specifically states that "you and Coinbase agree that any dispute . . . will be resolved by binding arbitration . . .."  The Arbitration Agreement is then limited to "you and Coinbase" at least five times.  And the first sentence of the User Agreement provides: "User Agreement between you (also referred to herein as 'User,' or 'customer') and Coinbase, Inc. ('Coinbase,' 'we,' 'us,' 'our')."

AH Capital seeks to distinguish *Kramer* by characterizing the delegation clause in *Kramer* as an election condition not satisfied and by pointing to the User Agreement's inclusion of both the term "enforceability" and the AAA Rules.  This reading of *Kramer* is inaccurate, and the distinctions are not sufficient enough to overcome the fact that the critical inquiry, under *Kramer*, is whether the parties to the litigation also agreed to delegate arbitrability.  *See Kramer*, 705 F.3d at 1128 ("The parties to this litigation did not agree to arbitrate arbitrability.")

In *Kramer*, we recounted the arbitration clause as stating "[e]ither you or we may choose to have any dispute between you and us decided by arbitration," including the "choose" language.  *Id*. at 1127.  Despite this, we determined that this

clause "evidences Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else" rather than as an election clause. *Id*.

Further, neither the incorporation of the AAA rules nor the term of "enforceability" is sufficient to find "clear and unmistakable" evidence of delegation. *See id.* While in *Brennan v. Opus Bank*, we did hold that "the incorporation of the AAA rules constitutes clear and unmistakable evidence" of delegation, that holding was in the context of "contracting parties agree[ing] to arbitrate arbitrability." 796 F.3d at 1130. We have not subsequently extended the holding where the party seeking enforcement is not a signatory to the arbitration agreement.

And here, the portion of the Arbitration Agreement that incorporates the AAA rules refers to "you and Coinbase" four times. Ultimately, *Kramer* requires us to consider who is bound by the arbitration agreement and whether the parties so bound are also the parties to litigation. *See Kramer*, 705 F.3d at 1128. Coinbase is not a party to this litigation. And despite "the law's permissive policies in respect to arbitration, . . . a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration," and courts should "hesitate to interpret silence or ambiguity on the [delegation question] as giving the arbitrators that power." *First Options of Chi., Inc.*, 514 U.S. at 945 (internal

citations omitted).  Neither the inclusion of the AAA rules nor the term

"enforceability" can unambiguously resolve delegation in AH Capital's favor in

this case.  And this case does not involve whether an arbitration agreement extends

to assignees or successors-in-interest to signatories.  Therefore, the Arbitration

Agreement in the User Agreement does not "clearly and unmistakably" delegate

arbitrability for non-signatories.  *See, e.g., Kramer*, 705 F.3d at 1127; *First Options*

*of Chi., Inc.*, 514 U.S. at 945-46.

## B

Having determined that the User Agreement does not delegate arbitrability

as it relates to non-signatories, we now turn to whether AH Capital can invoke the

User Agreement to require Houghton to arbitrate claims.  The district court

correctly concluded that equitable estoppel does not apply in this case.

Litigants who are "not a party to an arbitration agreement may invoke

arbitration under the FAA if the relevant state contract law allows the litigant to

enforce the agreement."  *Kramer*, 705 F.3d at 1128.  Under California law,

equitable estoppel applies in two circumstances: "(1) when a signatory must rely

on the terms of the written agreement in asserting its claims against the

nonsignatory or the claims are 'intimately founded in and intertwined with' the

underlying contract, and (2) when the signatory alleges substantially

interdependent and concerted misconduct by the nonsignatory and another signatory and 'allegations of the interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'"  *Id.* at 1128-29 (internal citations omitted).  AH Capital alleges both circumstances are present, but we agree with the district court's conclusion that neither are.

The California Supreme Court held equitable estoppel did not apply where the cause of action did not "depend on or invoke" the terms of the contract that contains an arbitration agreement.  *Ford Motor Warranty Cases*, 17 Cal.5th 1122, 1133 (2025).  We have previously found that invocation must be beyond a "mere reference" to the agreement such as reference to the price term included in the contract.  *Kramer*, 705 F.3d at 1132.  The Amended Complaint in this case does not reference either Coinbase or its User Agreement when pleading securities violations under Sections 5 and 12(a)(1) of the Securities Act.

A statutory claim does not "depend on or invoke" the contract where the statute independently entitles the plaintiff to relief.  *See Ford Motor Warranty Cases*, 17 Cal.5th at 1133 ("Plaintiffs' warranty claims 'arise from a statutory scheme separate and apart from the contracts.'"); *see also Stafford v. Rite Aid Corp.*, 998 F.3d 862, 866 (9th Cir. 2021) (holding defendant was not entitled to equitable estoppel where plaintiffs complaint alleged violations of California

statutes regarding cost of prescription drugs).  Liability under Section 12(a)(1) of

the Securities Act is independent from the User Agreement because the relevant

statute entitles plaintiffs to relief if they establish their claim, so the cause of action

does not "depend on or invoke" the contract.  *See Ford Motor Warranty Cases*, 17

Cal.5th at 1133.

    Houghton's claim is also not "'intimately founded in and intertwined with'

the underlying contract." *Kramer*, 705 F.3d at 1128.  AH Capital's comparison to

*Herrera v. Cathay Pac. Airways Ltd.* is unpersuasive.  104 F.4th 702 (9th Cir.

2024).  In *Herrera*, the plaintiffs sued an airline for breach of contract for failing to

issue a refund.  *Id.* at 704.  The flight was booked through a travel agent, and the

court permitted the airline to invoke the travel agent's terms, which contained an

arbitration clause, through equitable estoppel.  *Id.* at 708.  The court reasoned that

whether the plaintiffs could maintain their claim against the airline depended upon

whether the travel agent breached its own terms.  *Id.*  In contrast to *Herrera*, there

is no allegation of wrongdoing on the part of Coinbase breaching its User

Agreement in this case.

    Moreover, under the Securities Act, relief is from the seller of an

unregistered security not the trading platform.  15 U.S.C. § 77l.  Therefore,

Coinbase's role in this suit does not create a sufficiently "intertwined" relationship

to invoke equitable estoppel. *See Kramer*, 705 F.3d at 1134 (holding defendants could not invoke equitable estoppel because the contract containing an arbitration clause's relevance was limited to showing that plaintiffs purchased the Toyota at issue).

And finally, Houghton has not sufficiently alleged collusion that is intertwined with the User Agreement to permit invocation of the Arbitration Agreement under the second prong of *Kramer*. 705 F.3d at 1128-29. For collusion, "allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough: the allegations of interdependent misconduct must be founded in or intimately connected with the obligations of the underlying agreement." *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 219 (2009). To the extent there is any allegation of collusion between Coinbase and AH Capital, it is disconnected from any obligation within the User Agreement, which does not provide for claims under the Securities Act. Thus, AH Capital cannot invoke equitable estoppel under the concerted misconduct theory. *See id*. at 232-33.

Because AH Capital cannot invoke equitable estoppel under any theory, it cannot invoke the arbitration clause and compel arbitration, which independently supports affirming the district court below.

14

III

In conclusion, AH Capital does not have a right to compel arbitration, but even if it did, it waived such right by failing to raise arbitration earlier in litigation.

**AFFIRMED.**