CLEARY GOTTLIEB STEEN & HAMILTON LLP
Jennifer Kennedy Park (CA Bar # 344888)
jkpark@cgsh.com
1841 Page Mill Road
Palo Alto, CA 94304
Telephone: 650-815-4100
Facsimile: 650-815-4199

Roger A. Cooper (admitted *pro hac vice*)
racooper@cgsh.com
Samuel Levander (admitted *pro hac vice*)
slevander@cgsh.com
Victoriya Levina (admitted *pro hac vice*)
vlevina@cgsh.com
Andrew G. Khanarian (admitted *pro hac vice*)
akhanarian@cgsh.com
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel for Defendants Polychain Ventures LP; Polychain Master Fund I LP; Polychain Parallel Fund I LP; Dfinity Ecosystem Fund LP; and Polychain Alchemy, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

Amanda Houghton; Charles Douglas; and Susan Franklin,

Plaintiffs,

v.

Robert Leshner; Geoffrey Hayes; Compound DAO; AH Capital Management, LLC; Polychain Ventures LP; Polychain Master Fund I LP; Polychain Parallel Fund I LP; Dfinity Ecosystem Fund LP; Polychain Alchemy, LLC; Bain Capital Ventures (GP), LLC; Gauntlet Networks, Inc.; Paradigm Operations LP,

Defendants.

Case No. 3:22-cv-07781-WHO

**NOTICE OF POLYCHAIN VENTURES LP; POLYCHAIN MASTER FUND I LP; POLYCHAIN PARALLEL FUND I LP; DFINITY ECOSYSTEM FUND LP; AND POLYCHAIN ALCHEMY, LLC'S MOTION TO DISMISS AND MOTION TO DISMISS**

Date: March 25, 2026
Time: 2:00 p.m.
Courtroom: Videoconference
Judge: Hon. William H. Orrick

Trial Date: December 6, 2027
Date Action Filed: December 8, 2022

PLEASE TAKE NOTICE that, upon the accompanying Memorandum of Law in Support of Defendants Polychain Ventures LP, Polychain Master Fund I LP, Polychain Parallel Fund I LP, Dfinity Ecosystem Fund LP, and Polychain Alchemy, LLC's (the "Moving Defendants") Motion to Dismiss the Second Amended Class Action Complaint, the Declaration of Samuel Levander, dated January 30, 2026, and its exhibit, the Notice of Motion, and such other and further papers and proceedings as may be filed or had, the Moving Defendants, by their counsel, will move this Court before the Honorable William H. Orrick, United States District Judge, Phillip Burton Federal Building 450 Golden Gate Avenue, San Francisco, CA 94102, at a time and date to be determined by this Court, for an Order dismissing Lead Plaintiffs Amanda Houghton, Charles Douglas, and Susan Franklin's Second Amended Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order signed and dated on January 15, 2026 (ECF No. 261), opposition papers, if any, are to be filed by February 20, 2026, and reply papers, if any, are to be filed by March 6, 2026.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ... 1

BACKGROUND ... 2

A. Plaintiffs brought this lawsuit over a June 2020 offering of COMP tokens. ... 2

B. Nearly four years after the purported public offering, Plaintiffs first sought to add the Proposed Defendants. ... 3

ARGUMENT ... 4

A. The Securities Act's three-year statute of repose prohibits Plaintiffs from adding new parties over five years after the token sale. ... 5

B. Plaintiffs' alter ego allegations against Polychain Alchemy and the Proposed Defendants fail as a matter of law. ... 8

CONCLUSION ... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019) .......... 6-7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Bennett v. United States*,
44 F.4th 929 (9th Cir. 2022) .......... 7

*Boeing Co. v. KB Yuzhnoye*,
2014 WL 12601330 (C.D. Cal. Feb. 20, 2014) .......... 8

*Caldwell v. Berlind*,
543 F. Appx 37 (2d Cir. 2013) .......... 6

*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
582 U.S. 497 (2017) .......... 5, 8

*De Vito v. Liquid Holdings Grp., Inc.*,
2018 WL 6891832 (D.N.J. Dec. 31, 2018) .......... 7

*Dorfmeister v. Zurich Am. Ins. Co.*,
No. 20-16776, 2021 WL 5447024 (9th Cir. Nov. 22, 2021) .......... 5

*E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*,
335 F. Supp. 3d 657 (D. Del. 2018) .......... 10

*Fed. Deposit Ins. Corp. for Colonial Bank v. First Horizon Asset Sec. Inc.*,
291 F. Supp. 3d 364 (S.D.N.Y. 2018) .......... 7

*Hockey v. Medhekar*,
30 F. Supp. 2d 1209 (N.D. Cal. 1998) .......... 10

*In re IndyMac Mortg.-Backed Sec. Litig.*,
793 F. Supp. 2d 637 (S.D.N.Y. 2011) .......... 6

*In re Lehman Bros. Sec. & Erisa Litig.*,
800 F. Supp. 2d 477 (S.D.N.Y. 2011) .......... 7

*In re Nucorp Energy Sec. Litig.*,
772 F.2d 1486 (9th Cir. 1985)........................................................................................ 8

*In re Petrobras Sec. Litig.*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015)................................................................................ 7

*In re Stillwater Asset Backed Offshore Fund Ltd.*,
2018 WL 1610416 (S.D.N.Y. Mar. 30, 2018) ................................................................... 8

*Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co.*,
32 F.3d 697 (2d Cir. 1994)................................................................................................ 8

*Kumaran v. Northland Energy Trading, LLC*,
762 F. Supp. 3d 322 (S.D.N.Y. 2025)................................................................................ 7

*MacRae v. HCR Manor Care Servs., LLC*,
2017 WL 11480091 (C.D. Cal. Sep. 14, 2017)................................................................. 9

*McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*,
339 F.3d 1087 (9th Cir. 2003)......................................................................................9-10

*Miguel v. Country Funding Corp.*,
309 F.3d 1161 (9th Cir. 2002)........................................................................................... 7

*Motorola Credit Corp. v. Uzan*,
388 F.3d 39 (2d Cir. 2004)............................................................................................... 11

*Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*,
833 F.3d 1125 (9th Cir. 2016)........................................................................................... 6

*P. Stolz Fam. P'ship L.P. v. Daum*,
355 F.3d 92 (2d Cir. 2004)................................................................................................ 6

*Pizana v. SanMedica Int'l LLC*,
345 F.R.D. 469 (E.D. Cal. 2022) .................................................................................... 10

*Silvercreek Management, Inc. v. Citigroup, Inc.*,
248 F.Supp.3d 428 (S.D.N.Y. 2017)................................................................................. 7

*Sostack v. Ripple Labs, Inc.*,
Nos. 24-7599 & 25-483, 2026 WL 206301 (9th Cir. Jan. 27, 2026)................................ 6

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)............................................................................................. 5

*Stang v. Teal Drones, Inc.*,
2023 WL 11956419 (N.D. Cal. Aug. 14, 2023) .......... 11

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*,
931 F.3d 966 (9th Cir. 2019) .......... 5

*Valenti v. Dfinity USA Rsch. LLC*,
2025 WL 902031 (N.D. Cal. Mar. 25, 2025) .......... 5-6

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) .......... 4

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) .......... 9

*York Cnty. v. HP Inc.*,
738 F. Supp. 3d 1182 (N.D. Cal. 2024) .......... 6

**State Cases**

*Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*,
910 A.2d 1020 (Del. Ch. 2006) .......... 10

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
2023 WL 5688392 (Del. Ch. Sep. 5, 2023) .......... 9, 11

*Crosse v. BCBSD, Inc.*,
836 A.2d 492 (Del. 2003) .......... 9-10

*EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*,
2008 WL 4057745 (Del. Ch. Sep. 2, 2008) .......... 10

*Skouras v. Admiralty Enters., Inc.*,
386 A.2d 674 (Del. Ch. 1978) .......... 10

*Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*,
2022 WL 611274 (Del. Ch. Mar. 2, 2022) .......... 9

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
752 A.2d 1175 (Del. Ch. 1999) .......... 9

**INTRODUCTION**

More than three years after filing this lawsuit and five years after the alleged securities offering, Plaintiffs have amended their complaint for the second time to (1) name four new defendants—Polychain Ventures LP, Polychain Master Fund I LP, Polychain Parallel Fund I LP, and Dfinity Ecosystem Fund LP (the "Proposed Defendants")—and (2) assert new alter ego allegations against the Proposed Defendants and Polychain Alchemy. *See* Second Amended Complaint ("SAC"), Dkt. No. 263. Plaintiffs' claim against the Proposed Defendants fails because it comes too late: the Securities Act has a strict statute of repose that acts as an absolute bar on claims raised more than three years after the securities offering on which they are based. Plaintiffs' SAC makes clear that the COMP tokens alleged to be securities were issued in 2020, and the cutoff period for any new claims therefore ended in 2023.[1] Binding precedent from the Supreme Court and Ninth Circuit holds that this statute of repose functions to cut off liability and is not subject to relation back, tolling, or a discovery rule. And even though failure to discover a claim or defendant cannot toll the statute of repose, here the identity of the Proposed Defendants and their relation to other Polychain entities was disclosed in public SEC filings before Plaintiffs filed their initial complaint. This motion to dismiss should be granted as to all Proposed Defendants on the basis of the statute of repose.

The motion should also be granted as to both the Proposed Defendants and Polychain Alchemy because Plaintiffs fail to adequately plead alter ego liability against them given that Plaintiffs cannot and do not purport to meet the high bar for piercing the corporate veil under Delaware law.

[1] Defendants moved to compel arbitration of Plaintiffs' claims on August 12, 2024, Dkt. No 169, and this action was stayed while the appeal was pending in the Ninth Circuit between November 26, 2024 and October 22, 2025. However, the statute of repose cutoff date had passed prior to the start of the stay and prior to when Plaintiffs first sought to add the Proposed Defendants to this action on November 4, 2024. *See* Dkt. No. 202. No argument is premised on the additional passage of time as a result of the stay pending appeal.

## BACKGROUND

### A. Plaintiffs brought this lawsuit over a June 2020 offering of COMP tokens.

Plaintiffs' lawsuit arises from an alleged public sale of COMP tokens on June 16, 2020. SAC ¶ 52. Plaintiffs allege that COMP tokens are unregistered securities, *id*. ¶ 98, and that Defendants violated Sections 5 and 12(a)(1) of the Securities Act by selling these tokens without registering them as securities, *id*. ¶¶ 218–28.

Plaintiffs are three purchasers of COMP tokens who purportedly acquired their tokens in secondary market transactions that took place between February 2021 and November 2022. *Id*. ¶ 18 (alleging Charles Douglas "purchased approximately $75 of COMP . . . in January 2022"); *id.* ¶ 19 (alleging Amanda Houghton "purchased approximately $3 worth of COMP in November 2022" and "was compensated with approximately $9 of COMP . . . in February 2021"); *id.* ¶ 20 (alleging Susan Franklin "purchased approximately $2 worth of COMP . . . on December 26, 2021" and "was compensated with approximately $9 of COMP . . . in July 2021"). Plaintiffs collectively acquired less than $100 worth of COMP tokens—all from sellers other than Defendants. Order, Dkt. No. 94 at 4 ("Plaintiffs admit that they did not buy COMP directly from any of the Partner Defendants and instead purchased COMP on Coinbase's secondary market.").

Plaintiffs brought this lawsuit on December 8, 2022, against two individuals and five entities that Plaintiffs allege are "partners" in an unorganized partnership that "illegally [sold] unregistered securities." SAC ¶ 98. Plaintiffs amended their complaint on March 31, 2023, to add additional allegations about the location of alleged transactions, their supposed solicitation by Defendants, and COMP tokens' alleged status as a security. *See generally* First Am. Compl. ("AC"), Dkt. No. 76. Defendants then moved to dismiss the Amended Complaint for failure to state a claim, which this Court denied on September 20, 2023. Dkt. No. 94. Polychain Alchemy answered the Amended Complaint on October 25, 2023, denying its alleged role in the purported securities offering. *See* Polychain Alchemy's Answer to Plaintiffs' Am. Class Action Compl. Dkt. No. 124 ¶¶ 11, 34, 37, 80, 100, 107, 109, 110, 115.

**B. Nearly four years after the purported public offering, Plaintiffs first sought to add the Proposed Defendants.**

Nearly two years after bringing this suit and four years after the alleged public offering, Plaintiffs sought to add the four Proposed Defendants in their Second Amended Complaint. *See* Dkt. No. 202. Non-party Polychain Capital LP makes regular public SEC filings that detail the relationships among Polychain Alchemy and the Proposed Defendants. The most recent Form ADV dating from before Plaintiffs filed their initial complaint provided that:

- Polychain Capital LP is a Delaware limited partnership that commenced its operations as an investment manager in August 2016. Request for Judicial Notice, Ex. A at 4, Item 4 of Form ADV: Brochure of Polychain Capital LP & Polychain VC LP, Mar. 31, 2022. Polychain VC LP, a Delaware limited partnership, commenced operations as an investment manager in January 2018, and is a relying adviser of Polychain Capital LP. *Id*.
- The general partner of Polychain Capital LP and Polychain VC LP is Polychain Meta LLC. *Id*.
- Polychain Capital LP and Polychain VC LP are investment management firms that provide advisory services on a discretionary basis to privately offered pooled investment vehicles (or "Funds"), including all four of the Proposed Defendants. *Id*.
- Polychain Capital LP's clients include Proposed Defendants Polychain Master Fund I LP, a Cayman Islands limited partnership, and Polychain Parallel Fund I LP, a Delaware limited partnership. *Id.*
- Polychain VC LP's clients include Proposed Defendants Polychain Ventures LP, a Delaware limited partnership, and Dfinity Ecosystem Fund LP, also a Delaware limited partnership. *Id.*
- Polychain Alchemy is not a Fund to which Polychain Capital LP or Polychain VC LP provide advisory services. *Id.* at 4–5. Rather, Polychain Alchemy managed certain proprietary accounts. *Id.* at 42–43.

Plaintiffs have not indicated why they initially identified Polychain Alchemy and named it as a Defendant. Indeed, none of the documents referenced in the Complaint include any mention of

Polychain Alchemy, nor have Plaintiffs pointed to any documents that describe Polychain Alchemy as a seed investor or otherwise involved in the alleged securities offering.[2]

Defendants moved to compel arbitration of Plaintiffs' claims on August 12, 2024, nearly three months before Plaintiffs filed their Motion to Amend on November 4, 2024. *See* Dkt. No. 169. Per stipulations of the Parties, the Court ordered that Defendants' responses to Plaintiffs' Motion to Amend were due 30 days after the Court issued an order deciding the motion to compel, Dkt. No. 212, extended that deadline to January 22, 2025, Dkt. No. 216, and further extended that deadline until after the Court ruled on a stay of this action pending appeal of the denial of the motion to compel, Dkt. No. 241. This action was then stayed while the appeal was pending in the Ninth Circuit between November 26, 2024 and October 22, 2025. After the stay was lifted, the parties stipulated to the filing of the Second Amended Complaint, while expressly preserving the right of the Defendants and Proposed Defendants to move to dismiss the Second Amended Complaint. *See* Dkt. No. 261.

**ARGUMENT**

Plaintiffs have the burden to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). To do so, a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "only a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (citing *Iqbal*, 556 U.S. at 679–80).

While the Court must credit a plaintiff's well-pleaded allegations on a motion to dismiss, it need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court "can consider an affirmative defense on a motion to dismiss when there is 'some obvious

---

[2] Discovery in this case has revealed that Polychain Alchemy held only *de minimis* COMP tokens, did not invest in Compound Labs, and did not vote on or sponsor any Compound DAO proposals.

bar to securing relief on the face of the complaint.'" *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) (quoting *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014)). Accordingly, a court may dismiss a time-barred claim based on the pleadings. *See, e.g., Dorfmeister v. Zurich Am. Ins. Co.*, No. 20-16776, 2021 WL 5447024, at *1 (9th Cir. Nov. 22, 2021) (affirming dismissal of claim based on statute of limitations); *Valenti v. Dfinity USA Rsch. LLC*, 2025 WL 902031, at *1 (N.D. Cal. Mar. 25, 2025) (holding Section 12 claims time-barred under Securities Act's statute of repose at the pleadings stage).

The motion to dismiss should be granted on two independent grounds. *First*, the Securities Act's statute of repose bars Plaintiffs from adding new parties now. *Second*, Plaintiffs fail to adequately plead their new alter ego theory.

**A. The Securities Act's three-year statute of repose prohibits Plaintiffs from adding new parties over five years after the token sale.**

Plaintiffs' attempt to add new parties to this action over five years after the token issuance that Plaintiffs allege to be the securities offering is barred by the Securities Act's strict three-year statute of repose. 15 U.S.C. § 77m. Section 13 of the Securities Act subjects all of Plaintiffs' claims here to a strict three-year statute of repose. *See* 15 U.S.C. § 77m ("In no event shall any such action be brought to enforce a liability created under section [11] or [12(a)(1)] of this title more than three years after the security was bona fide offered to the public, or under section [12(a)(2)] of this title more than three years after the sale."). The Supreme Court has held that Section 13's statute of repose "effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time [of three years]." *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 505 (2017). Courts therefore must strictly apply the Securities Act's three-year repose period as an "equivalent to a cutoff, in essence an absolute bar on a defendant's temporal liability." *Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, 833 F.3d 1125, 1129 (9th Cir. 2016) (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014)). Applying these principles, courts do not permit plaintiffs to add new defendants in a pending action after the repose period has lapsed because to do so would "undermine Section 13's purpose and

abridge Defendants' right to be free from liability after the expiration of three years." *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 264 (S.D.N.Y. 2019); *see York Cnty. v. HP Inc.*, 738 F. Supp. 3d 1182, 1204 (N.D. Cal. 2024) (In applying the Securities Exchange Act's five-year statute of repose, "[t]he critical date for the claims against [the newly added defendants] is . . . five years before [they] were brought into the action as defendants.").

The Ninth Circuit has held that Section 13's statute of repose commences when the alleged securities are first offered to the public. *Sostack v. Ripple Labs, Inc.*, 2026 WL 206301, at *2 (9th Cir. Jan. 27, 2026) ("the three-year statute of repose began to run when XRP was first offered to the public in 2013" via a digital asset exchange); *see also P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 100 (2d Cir. 2004) (noting the "*vast* majority" of lower courts have applied the "first offered rule" to Section 13's statute of repose and adopting the same). Here, the Second Amended Complaint asserts that the alleged securities were first offered to the public on June 16, 2020. SAC ¶ 52 (alleging "COMP would become available to the public on [June 16, 2020]"). This assertion is consistent with Plaintiffs' allegations that COMP tokens were available on trading platforms in June 2020. *Compare* SAC ¶ 90 (alleging COMP tokens were available on trading platforms in June 2020), *with Ripple Labs*, 2026 WL 206301, at *2 (finding *bona fide* securities offering occurred in 2013 when token was first offered to the public on a trading platform); *see also Valenti*, 2025 WL 902031, at *1 (finding *bona fide* offering occurred upon seed funding round, over three years before initial coin offering). The statute of repose therefore barred Plaintiffs from bringing additional claims or adding new defendants after June 16, 2023. *See Caldwell v. Berlind*, 543 F. App'x 37, 39 (2d Cir. 2013) (finding new claims "barred by Section 13's statute of repose because the allegations were not brought within three years of the [securities] offerings"); *In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 649 (S.D.N.Y. 2011) (denying leave to amend to add new defendants because "the offerings as to which [the plaintiff] seeks to add claims against [proposed defendants] . . . occurred more than three years before [the plaintiff] moved for leave to amend"), *aff'd in part sub nom. Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013); *see also Barilli*, 389 F. Supp. 3d at 264 (rejecting argument that the

Securities Act's "statute of repose does not apply to amendments because it bars only new 'actions'").

Because the Securities Act's three-year statute of repose is a strict time limit on bringing new claims and adding new parties, it is not subject to relation back. *See Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002) (rejecting application of the relation-back provision in Fed. R. Civ. P. 15(c) to Truth in Lending Act's statute of repose because "Rule 15(c) may not be used to extend federal jurisdiction"), *abrogated on other grounds by Hoang v. Bank of Am.*, N.A., 910 F.3d 1096 (9th Cir. 2018); *see also Silvercreek Management, Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 450–52 (S.D.N.Y. 2017) (holding Securities Act's statute of repose prohibits adding new claims upon expiration of statute of repose and is not subject to relation back); *Fed. Deposit Ins. Corp. for Colonial Bank v. First Horizon Asset Sec. Inc.*, 291 F. Supp. 3d 364, 372 (S.D.N.Y. 2018) (same); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 385 (S.D.N.Y. 2015) (same); *In re Lehman Bros. Sec. & Erisa Litig.*, 800 F. Supp. 2d 477, 483 (S.D.N.Y. 2011) (same); *Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322, 335 (S.D.N.Y. 2025) (same); *De Vito v. Liquid Holdings Grp., Inc.*, Civ. No. 15-6969 (KM) (JBC), 2018 WL 6891832, at *24 (D.N.J. Dec. 31, 2018) (same).

Indeed, the Rules Enabling Act, pursuant to which Rule 15(c) was enacted, prohibits the application of relation back here. As the Rules Enabling Act provides, rules enacted pursuant to it may "not abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b), and "statutes of repose are substantive limitations on liability" conferring a substantive right on defendants, *Bennett v. United States*, 44 F.4th 929, 936 (9th Cir. 2022) (quoting *Anderson v. United States*, 669 F.3d 161 (4th Cir. 2011)). Rule 15 therefore cannot override the statute of repose. *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002); *see also De Vito v. Liquid Holdings Grp., Inc.*, Civ. No. 15-6969 (KM) (JBC), 2018 WL 6891832, at *24 (D.N.J. Dec. 31, 2018) (rejecting application of Rule 15 to Section 13 because "Rule 15(c) relation-back . . . would abridge one party's substantive right to repose, and augment the other party's substantive right of recovery under the securities laws.").

Nor can Plaintiffs argue that their ignorance of potential claims before the three-year repose period ran extends that repose period: The statute of repose does not turn on new information learned through discovery. *See California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 505–06 (2017) (Section 13 does not run "from the accrual of the claim (the plaintiff's discovery of the defect in the registration statement)."); *see also Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 704 (2d Cir. 1994) ("The three-year period is an absolute limitation which applies whether or not the investor could have discovered the violation.").

**B. Plaintiffs' alter ego allegations against Polychain Alchemy and the Proposed Defendants fail as a matter of law.**

Apart from threadbare legal conclusions, Plaintiffs' alter ego allegations are limited to (1) Polychain Alchemy and the Proposed Defendants sharing an office location; (2) Polychain Alchemy and the Proposed Defendants sharing email addresses; and (3) a conclusory allegation that some undefined group of "Polychain entities" take direction from the same individual. *See* SAC ¶¶ 12–14. Plaintiffs also suggest that a third-party purportedly "viewed" Dfinity Ecosystem Fund LP and Polychain Ventures L.P. as alter egos based solely on that third-party "ask[ing] Olaf Carlson-Wee for Form W-9s for both DFINITY Ecosystem Fund LP and Polychain Ventures L.P." SAC ¶ 14.

These allegations come nowhere close to pleading the necessary elements for alter ego under Delaware law.[3] "Persuading a Delaware court to disregard the corporate entity is a difficult

---

[3] Federal choice of law rules govern federal securities law claims, *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1489 (9th Cir. 1985), and those rules look to the place of incorporation to determine the requirements for alter ego liability, *Boeing Co. v. KB Yuzhnoye*, 2014 WL 12601330, at *1 (C.D. Cal. Feb. 20, 2014) ("Federal common law follows the approach of the Restatement (Second) of Conflict of Laws under which the general rule is that a plaintiff's alter ego theory is governed by the law of the state in which the business at issue is organized.") (cleaned up). In any event, California choice of law rules also look to the place of incorporation for alter ego law. *Boeing*, 2014 WL 12601330, at *1 n.1 (C.D. Cal. Feb. 20, 2014) (citing *Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1128–29 (N.D. Cal. 2011)) ("[I]n California, the law of the state in which an LLC is organized governs that LLC's alter ego liability."). Plaintiffs' alter ego claims against the Proposed Defendants are therefore governed by their places of organization. Polychain Alchemy and each Proposed Defendant except Polychain Master Fund I LP are organized in Delaware; Polychain Master Fund I LP is organized under Cayman law. Plaintiffs' alter ego allegations would fare no better under Cayman law. *See In re Stillwater Asset Backed Offshore Fund Ltd.*, 2018 WL 1610416, at *9 (S.D.N.Y. Mar. 30, 2018) (holding allegations of shared investment manager and lack of corporate formalities between two funds insufficient to

task." *MacRae v. HCR Manor Care Servs., LLC*, Case No. SA CV 14-0715-DOC (RNB), 2017 WL 11480091, at *5 (C.D. Cal. Sep. 14, 2017) (quoting *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183–84 (Del. Ch. 1999)); *see also McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1095 (9th Cir. 2003) (noting there are "very limited circumstances in which Delaware law countenances veil piercing"). An alter ego under Delaware law must (1) be under the "exclusive domination and control" of another entity, and (2) exist to "cause fraud or similar injustice." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999); *see also McKesson HBOC, Inc.*, 339 F.3d at 1095 ("Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."); *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) ("To state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors."). Moreover, the "fraud or injustice must come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim." *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 3184–VCP, 2023 WL 5688392, at *6 (Del. Ch. Sep. 5, 2023) (citing *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *12 (Del. Ch. Sep. 2, 2008). Plaintiffs cannot plead either element.

*First*, Plaintiffs cannot plead exclusive domination and control. Delaware courts consider the following factors to evaluate the domination and control prong: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder." *Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, C.A. No. 2022-0378-LWW, 2022 WL 611274, at *2 (Del. Ch. Mar. 2, 2022). As an initial matter, Plaintiffs' bare allegation that "Polychain's entities share such a unity of interest, ownership, and management that they are alter egos of one another" SAC ¶ 12, is insufficient as a matter of law. *See Williams v.*

---

disregard corporate separateness under Cayman law), *aff'd sub nom. Stillwater Liquidating LLC v. Net Five at Palm Pointe, LLC*, 777 F. App'x 16 (2d Cir. 2019).

*Yamaha Motor Co.*, 851 F.3d 1015, 1022 (9th Cir. 2017) (holding plaintiffs failed to plead alter ego relationship where "complaint makes almost no factual allegations regarding the nature of the . . . relationship" between the two alleged alter egos); *Hockey v. Medhekar*, 30 F. Supp. 2d 1209, 1212 n.1 (N.D. Cal. 1998) (holding bare "allegation that the companies were alter egos . . . is not sufficient to state any grounds for their liability"); *Pizana v. SanMedica Int'l LLC*, 345 F.R.D. 469, 488 (E.D. Cal. 2022) (rejecting "attempt to round up fifteen proposed defendants in a conclusory, one-size-fits-all fashion by alleging that all of the proposed defendants were alter egos of each other at all relevant times" under Delaware law); *E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 675 (D. Del. 2018) (rejecting veil-piercing claim where party "failed to provide facts relevant to the [veil-piercing] factors" under Delaware law).

Nor do Plaintiffs' bare factual allegations concerning shared office locations, email accounts, and common corporate control suffice. Plaintiffs' allegations concerning office locations and email accounts are irrelevant to Delaware's factors. *See EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, No. CIV.A. 3184-VCP, 2008 WL 4057745, at *13 (Del. Ch. Sep. 2, 2008) ("[S]hare[d] offices, officers, and letterhead" between subsidiary and parent "do not warrant disregarding the corporate form."). And allegations of common corporate control, even if true, do not change this conclusion. *See Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1044 (Del. Ch. 2006) ("[C]orporations have, as a presumptive matter, a separate legal existence irrespective of their common control."); *Skouras v. Admiralty Enters., Inc.*, 386 A.2d 674, 681 (Del. Ch. 1978) ("Absent a showing of a fraud or that a subsidiary is in fact the mere alter ego of the parent, a common central management alone is not a proper basis for disregarding separate corporate existence . . . " (citing *Pauley Petroleum, Inc. v. Con'l Oil Co.*, 231 A.2d 450 (Del. Ch. 1967), *aff'd*, 239 A.2d 629 (Del. 1968)).

*Second*, even if Plaintiffs could plausibly allege domination and control (they do not), they come nowhere close to pleading that Polychain Alchemy and the Proposed Defendants were sham entities designed to defraud investors, as they must to satisfy the second element of alter ego liability under Delaware law. *See, e.g.*, *McKesson HBOC, Inc.*, 339 F.3d at 1095; *Crosse v. BCBSD, Inc.*, 836 A.2d at 497. Indeed, Plaintiffs' only claims are for registration violations of the Securities

Act, not fraud or any scienter-based conduct. *See, e.g.*, Pls. Opp. to Mot. to Dismiss, Dkt. No. 82 at 20 ("To state a claim under Section 12(a)(1) of the Securities Act, a plaintiff need not plead scienter, reliance, or fraud."). Plaintiffs do not allege that Polychain Alchemy or any Proposed Defendant was engaged in *any* kind of fraud, let alone "fraud or injustice . . . from an inequitable use of the corporate form itself as a sham." *Cleveland-Cliffs Burns Harbor LLC*, 2023 WL 5688392, at *6.

*Finally*, Plaintiffs cannot simply plead that all "Polychain's entities . . . are all alter egos of one another." SAC ¶ 12. The Proposed Defendants are funds that are clients of common investment managers, Polychain Capital LP and Polychain VC LP. *See* Polychain Capital LP, Form ADV (Mar. 31, 2022). Alter ego liability here would require Plaintiffs to pierce the corporate veil from each Proposed Defendant up to the investment manager, and then back down again to each other Proposed Defendant. Delaware law does not permit that. *See, e.g.*, *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *7 (Del. Ch. Sep. 5, 2023) (holding that Delaware law does not accept the theories of "horizontal veil piercing" or "enterprise liability"); *cf. Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 62 (2d Cir. 2004) (reversing decision that found alter ego liability based on evidence of "a single group operation" and holding that the court would instead need to rely on specific evidence to pierce the corporate veil of each of 130 separate entities). Plaintiffs do not purport to make a specific showing as to why piercing is appropriate for each of the Proposed Defendants, as they must to state a claim. *See Stang v. Teal Drones, Inc.*, No. 22-cv-01586-RFL, 2023 WL 11956419, at *3 (N.D. Cal. Aug. 14, 2023) (holding "Plaintiff's allegations that Matus is the alter ego of Teal Drones [because] he is the founder, President, Chief Executive Officer, majority owner, registered agent, and a director of Teal Drones, and he 'controls' Teal Drones, without more, are insufficient to plausibly allege that" Matus and Teal Drones are alter egos under Delaware law) (citing *Wallace*, 752 A.2d at 1184).

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss should be granted.

Dated: January 30, 2026

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Samuel Levander*
Samuel Levander

Jennifer Kennedy Park (CA Bar # 344888)
jkpark@cgsh.com
1841 Page Mill Road
Palo Alto, CA 94304
Telephone: 650-815-4100
Facsimile: 650-815-4199

Roger A. Cooper (admitted *pro hac vice*)
racooper@cgsh.com
Samuel Levander (admitted *pro hac vice*)
slevander@cgsh.com
Victoriya Levina (admitted *pro hac vice*)
vlevina@cgsh.com
Andrew G. Khanarian (admitted *pro hac vice*)
akhanarian@cgsh.com
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

Attorneys for Defendants Polychain Ventures LP; Polychain Master Fund I LP; Polychain Parallel Fund I LP; Dfinity Ecosystem Fund LP; and Polychain Alchemy, LLC