Jason Gottlieb (NY Bar. No. 4056008)
*Admitted pro hac vice*
jgottlieb@morrisoncohen.com
Michael Mix (NY Bar. No. 5020201)
*Admitted pro hac vice*
mmix@morrisoncohen.com
Vani Upadhyaya (NY Bar. No. 5754569)
*Admitted pro hac vice*
vupadhyaya@morrisoncohen.com
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022-4784
Telephone:  (212) 735-8600
Facsimile:   (212) 735-8708

Ellen London (SBN 325580)
elondon@londonnaor.com
LONDON & NAOR P.C.
1999 Harrison St., Suite 2010
Oakland, CA 94612
Telephone:  (415) 862-8494

*Attorneys for Defendant
Gauntlet Networks, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA HOUGHTON, CHARLES DOUGLAS, AND SUSAN FRANKLIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT LESHNER; GEOFFREY HAYES; COMPOUND DAO; AH CAPITAL MANAGEMENT, LLC; POLYCHAIN VENTURES LP; POLYCHAIN MASTER FUND I LP; POLYCHAIN PARALLEL FUND LLP; DFINITY ECOSYSTEM FUND LP; POLYCHAIN ALCHEMY, LLC; BAIN CAPITAL VENTURES (GP), LLC; GAUNTLET NETWORKS, INC.; PARADIGM OPERATIONS LP,<br><br>Defendants. | Case No. 3:22-cv-7781-WHO<br><br>**DEFENDANT GAUNTLET NETWORKS, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date: May 13, 2026<br>Time: 2:00 pm |

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT.................................................................................1

ARGUMENT ..........................................................................................................2

      I.     Gauntlet Is Permitted to Bring the Motion................................................2

           a.     The Law-of-the-Case Doctrine Does Not Preclude
the Motion .................................................................................2

           b.     FRCP 12(g)(2) Does Not Preclude the Motion..............................5

           c.     The Motion Is Not Inconsistent with the PSLRA ..........................8

           d.     The Motion Does Not Launder Summary Judgment
Arguments .................................................................................9

      II.    Plaintiffs Effectively Concede That Gauntlet Itself Is Not A
Statutory Seller.................................................................................10

      III.   The SAC Fails to Adequately Allege that Gauntlet Can Be
Held Liable as a Statutory Seller as a Partner in a Putative
General Partnership...............................................................................10

CONCLUSION ..................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accellion, Inc. Data Breach Litig.*,
   2024 WL 4592367 (N.D. Cal. Oct. 28, 2024)........................................................................ 3, 4

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
   2011 WL 2690437 (N.D. Cal. July 8, 2011)................................................................................ 7

*In re Apple iPhone Antitrust Litig.*,
   846 F.3d 313 (9th Cir. 2017)........................................................................................................ 6

*Askins v. U.S. Dep't of Homeland Sec.*,
   899 F.3d 1035 (9th Cir. 2018)............................................................................................ 2, 3, 4

*Burton v. Ghosh*,
   961 F.3d 960 (7th Cir. 2020)........................................................................................................ 7

*In re CFS-Related Sec. Fraud Litig.*,
   179 F. Supp. 2d 1260 (N.D. Okla. 2001) .................................................................................... 9

*Chalice Vineyards, L.L.C. v. U.S.*,
   2025 WL 3190591 (D. Or. Nov. 14, 2025).................................................................................. 4

*Chao v. Aurora Loan Servs., LLC*,
   2013 WL 5487420 (N.D. Cal. Sept. 30, 2013) ........................................................................... 5

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2001)........................................................................................................ 3

*Cover v. Windsor Surry Co.*,
   2016 WL 520991 (N.D. Cal. Feb. 10, 2016)............................................................................... 7

*EduMoz, LLC v. Republic of Mozambique*,
   2015 WL 13697385 (C.D. Cal. Apr. 20, 2015) ..................................................................... 12, 13

*Ferdik v. Bonzelet*,
   963 F.2d 1258 (9th Cir. 1992)...................................................................................................... 6

*Garcia v. City of Los Angeles*,
   2020 WL 6586300 (C.D. Cal. June 2, 2020) ............................................................................... 7

*Gardner v. Starkist Co.*,
   2020 WL 1531346 (N.D. Cal. Mar. 31, 2020).............................................................................. 7

*Gonzalez v. Arizona*,
  677 F.3d 383 (9th Cir. 2012)........................................................................................ 4

*Interior Elec. Inc. Nevada v. T.W.C. Constr., Inc.*,
  2020 WL 5983882, at *3 (D. Nev. Oct. 8, 2020)........................................................ 8

*In re Keegan Mgmt. Co. Sec. Litig.*,
  1991 WL 253003, at *11 (N.D. Cal. Sept. 10, 1991).................................................. 13

*Lacey v. Maricopa Cnty.*,
  693 F.3d 896 (9th Cir. 2012)........................................................................................ 5

*Lle One, LLC v. Facebook Inc.*,
  2019 WL 13201973 (N.D. Cal. Apr. 25, 2019) ........................................................... 7

*Maeda v. Kennedy Endeavors, Inc.*,
  407 F. Supp. 3d 953 (D. Haw. 2019) ........................................................................... 4

*McGuire v. Dendreon Corp.*,
  2009 WL 666863 (W.D. Wash. Mar. 11, 2009) .......................................................... 8

*Mobley v. Workday, Inc.*,
  2026 WL 636719 (N.D. Cal. Mar. 6, 2026)............................................................ 6, 7

*Netskope, Inc. v. Fortinet, Inc.*,
  2026 WL 629800 (N.D. Cal. Mar. 6, 2026)................................................................. 7

*In re Packaged Seafood Prods. Antitrust Litig.*,
  277 F. Supp. 3d 1167 (S.D. Cal. 2017)........................................................................ 7

*Petrie v. Elec. Game Card, Inc.*,
  761 F.3d 959 (9th Cir. 2014)........................................................................................ 8

*In re PFA Ins. Mktg. Litig.*,
  696 F. Supp. 3d 822 (N.D. Cal. 2022) ......................................................................... 12

*Pinter v. Dahl*,
  486 U.S. 622 (1988)...................................................................................................... 13

*Rivlin v. Levine*,
  195 Cal. App. 2d 13 (1961).................................................................................... 10, 11

*Rowley v. McMillan*,
  502 F.2d 1326 (4th Cir. 1974) (Consol. Opp. )............................................................ 7

*Samuels v. Lido DAO*,
  757 F. Supp. 3d 951 (N.D. Cal. 2024) ................................................................ 10, 11, 13

DEFENDANT GAUNTLET NETWORKS, INC.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NO. 3:22-CV-07781-WHO

iii

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
  360 F. Supp. 3d 1039 (S.D. Cal. 2019) .............................................................................. 3, 4, 10

*Schneider v. Traweek*,
  1990 WL 169856 (C.D. Cal. Sept. 5, 1990) ............................................................................. 13

*In re Silver Wheaton Corp. Sec. Litig.*,
  2019 WL 1512269 (C.D. Cal. Mar. 25, 2019) ............................................................................ 9

*SVB Fin. Tr. v. Fed. Deposit Ins. Corp.*,
  2025 WL 661599 (N.D. Cal. Feb. 27, 2025) .............................................................................. 5

*U.S. v. Somnia, Inc.*,
  339 F. Supp. 3d 947 (E.D. Cal. 2018) ........................................................................................ 5

*Zwerling v. Ford Motor Co.*,
  2023 WL 2899524 (N.D. Cal. Apr. 10, 2023) .......................................................................... 10

**Statutes**

15 U.S.C. § 78u-4(b)(3) ....................................................................................................................... 8

Cal. Corp. Code § 16202 ............................................................................................................. 11, 12

Cal. Corp. Code § 16401(i) ............................................................................................................... 10

PSLRA ........................................................................................................................................... 8, 9

Securities Act Section 12 ......................................................................................................... 1, 2, 13

FRCP Rule 12 ......................................................................................................................... 1, 5, 6, 7

Defendant Gauntlet Networks, Inc. ("Gauntlet") respectfully submits this reply in further support of its motion, dated January 30, 2026, to dismiss (Dkt. No. 275, the "Motion" or the "Mot") Plaintiffs' Second Amended Complaint (Dkt. No. 267, the "SAC").[1]

**PRELIMINARY STATEMENT**

Plaintiffs' Consolidated Opposition to Motions to Dismiss (Dkt. No. 289, the "Consolidated Opposition" or the "Consol. Opp.") grasps at straws to articulate a legal theory that would support liability against Gauntlet.

First, in an attempt to prevent the Court from even considering the Motion, Plaintiffs incorrectly argue that the law-of-the-case doctrine and FRCP Rule 12(g)(2) preclude Gauntlet from making the Motion due to the Court's previous denial of Defendants' joint motion to dismiss an earlier complaint, on the grounds that there were sufficient allegations of solicitations by the so-called "Partner Defendants." But the "law-of-the-case" doctrine is inapplicable; the Ninth Circuit has held that a district court is not bound by its prior decisions after the filing of an amended complaint. And courts in this circuit have found that Rule 12(g)(2) does not bar a court from considering a defendant's second motion to dismiss – even on grounds the defendant raised or could have raised in the first motion – if considering such motion to dismiss promotes judicial economy.

Plaintiffs effectively concede that they do not seek to hold Gauntlet directly responsible under Section 12. Instead, Plaintiffs argue that Gauntlet (and the other so-called "Partner Defendants") are general partners in the so-called "Compound DAO," and the Compound DAO allegedly solicited Plaintiffs' purchase of COMP tokens. Neither the SAC nor the Consolidated Opposition coherently or consistently alleges the partnership's composition. The Consolidated Opposition argues that the partnership consists of those who "meaningfully participated" in DAO governance – a theory not pleaded in the SAC, and which does not comport with well-established California law. Even if this Court were to consider that theory, Plaintiffs' scant allegations

---

[1]    Defined terms have the same meaning as ascribed to them in the Motion, unless stated otherwise.

specifically concerning Gauntlet continue to describe Gauntlet as a third-party service provider, not as a partner, and fail to demonstrate that Gauntlet "meaningfully participated" in governance or otherwise meets the criteria for partnership under California law.

In sum, the Consolidated Opposition illustrates that Plaintiffs have no claim against Gauntlet, and the SAC thus should be dismissed as against Gauntlet.

**ARGUMENT**

### I.   <u>Gauntlet Is Permitted to Bring the Motion</u>

Contrary to Plaintiffs' argument (Consol. Opp. at 8-9), Gauntlet's Motion is procedurally proper and firmly permitted by Ninth Circuit law.  Plaintiffs assert that their SAC contains only "minor amendments" to their previous Complaints, and that moving Defendants, including Gauntlet, are attempting to relitigate previously rejected and waived arguments to unnecessarily delay proceedings.  Consol. Opp. at 7.  However, Defendants previously made one joint MTD, arguing that the FAC did not state a claim because Defendants collectively were not statutory sellers under Section 12 of the Securities Act.  Gauntlet's present Motion, by contrast, is narrowly targeted at the lack of specific allegations in the SAC against it <u>specifically</u> – including that the SAC contains insufficient allegations that Gauntlet is a general partner – that the Court has yet to evaluate, particularly in light of the new allegations in the SAC that were not in the previous Complaints.  In the interest of judicial economy, Gauntlet is not raising arguments made in the original joint MTD.

### a.   <u>The Law-of-the-Case Doctrine Does Not Preclude the Motion</u>

Plaintiffs contend that the MTD Order denying Defendants' joint motion to dismiss the FAC now constitutes the "law of the case" which "bars the relitigation of issues the Court already considered and rejected."  Consol. Opp. at 8.  Plaintiffs are wrong; the "law-of-the-case" doctrine is entirely irrelevant and does not prevent Gauntlet from making the Motion.

The Ninth Circuit held in *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035 (9th Cir. 2018) that it was "error" for the district court to decline to consider an amended complaint under the law-of-the-case doctrine, because "[o]nce the plaintiff elects to file an amended complaint, the

new complaint is the only operative complaint before the district court." *Id.* at 1043. The "amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits; we do not ask whether the plaintiff is 'precluded' or 'barred' by the prior ruling." *Id.* In considering a second motion to dismiss an amended pleading, the Ninth Circuit explained:

> If the district court determines the amended complaint is substantially the same as the initial complaint, the district court is free to follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies. The district court is not, however, bound by any law of the case. The district court may decide the second motion to dismiss in the same way it decided the first, but permitting the filing of an amended complaint requires a new determination. That leaves the district court free to correct any errors or misunderstandings without having to find that its prior decision was "clearly erroneous."

*Id.* (emphasis added).

The Ninth Circuit further explained that the "doctrine applies most clearly where an issue has been decided by a higher court" or "where the issue has been previously decided and is binding on the parties—for example, where the district court has previously entered a final decree or judgment." *Id.* at 1042. But because an amended complaint supersedes the prior pleading, the "law of the case doctrine does not … bar a court from reconsidering its own orders before judgment is entered or the court is otherwise divested of jurisdiction over the order." *Id.*; *see also City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) ("the law of the case doctrine is wholly inapposite [and] simply does not impinge upon a district court's power to reconsider its own interlocutory order…"); *In re Accellion, Inc. Data Breach Litig.*, 2024 WL 4592367, at *2 (N.D. Cal. Oct. 28, 2024) (rejecting argument that law of the case precludes a motion to dismiss and explaining that "[m]otion practice regarding an amended complaint does not ask the court to reconsider its analysis of the initial complaint because an amended complaint is a new complaint. This means that the parties are entitled to judgment on the new complaint's own merits rather than on the initial complaint's merits") (internal citations omitted); *San Diego Cnty. Credit*

*Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1046 (S.D. Cal. 2019) ("when a plaintiff has filed an amended complaint, the law of the case doctrine does not apply …").

Even though *Askins* concerned a <u>defendant</u> attempting to invoke the law-of-the-case doctrine to "preclude" the district court from considering an amended complaint filed by the plaintiff after the original complaint was dismissed, courts have applied *Askins* and denied attempts by <u>plaintiffs</u> to invoke the law-of-the-case doctrine to prevent a defendant from making a motion to dismiss an amended complaint after a motion to dismiss an original pleading was denied. *See, e.g.*, *Accellion*, 2024 WL 4592367, at *2 (rejecting plaintiff's argument that the law-of-the-case doctrine precluded defendant from re-litigating claims in previous motions to dismiss an earlier complaint); *San Diego Cnty. Credit Union*, 360 F. Supp. 3d at 1046 (same); *Chalice Vineyards, L.L.C. v. U.S.*, 2025 WL 3190591, at *2 & n.1 (D. Or. Nov. 14, 2025) (rejecting argument that the law-of-the-case doctrine bars the court from determining a motion to dismiss an amended pleading because "[a]lthough it is Plaintiffs, here, who rely on the law-of-the-case doctrine, the reasoning in *Askins* applies with equal weight because 'the new complaint is the only operative complaint before the district court.'"); *Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp. 3d 953, 964 (D. Haw. 2019) (rejecting plaintiff's argument that the court could not revisit and reverse its prior holding because "[w]here, as here, a plaintiff files an amended complaint, the law of the case doctrine is inapplicable…").

Plaintiffs cite a single case in support of their law-of-the-case argument, *Gonzalez v. Arizona*, 677 F.3d 383, n.3 (9th Cir. 2012), for the general proposition that "[u]nder the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." Consol. Opp. at 8. But *Gonzalez* is inapposite because it did not concern an amended pleading, but rather, a discussion of an appeal of a district court's ruling on the merits.

b.       FRCP 12(g)(2) Does Not Preclude the Motion

Plaintiffs fare no better in their attempt to invoke FRCP 12(g)(2) to argue that the Motion is procedurally improper. Consol. Opp. at 9-13.

FRCP 12(g)(2) states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." As an initial matter, FRCP 12(g)(2) does not apply because, as Plaintiffs concede, the SAC makes "new supporting allegations about the Compound DAO general partnership from documents produced in discovery." Consol. Opp. at 2 (emphasis added). *See also* Mot. at 7-8. As explained below and in the Motion, the SAC's new allegations (not available to Gauntlet earlier in the case) illustrate that Gauntlet was acting as a service provider rather than a general partner. *See* Mot. at 7-8.

Regardless, courts in this circuit have held that FRCP 12(g)(2) does not prevent a court from considering a motion to dismiss an amended complaint, including "new arguments that could have been advanced in their prior motions to dismiss, or … repeated arguments already rejected by the court …" *U.S. v. Somnia, Inc.*, 339 F. Supp. 3d 947, 952 (E.D. Cal. 2018); *see also Chao v. Aurora Loan Servs., LLC*, 2013 WL 5487420, at *4 (N.D. Cal. Sept. 30, 2013) ( "permit[ing] defendants to bring motions to dismiss in response to an amended pleading based on arguments previously made in a prior motion to dismiss and to raise new arguments that were not previously made."); Mot. at 6-7 (collecting additional cases).

Here, as in past cases, there is "nothing to suggest that defendants' arguments have been raised in an attempt to delay or impede" proceedings. *Somnia*, 339 F. Supp. 3d at 953; *see also SVB Fin. Tr. v. Fed. Deposit Ins. Corp.*, 2025 WL 661599, at *8 (N.D. Cal. Feb. 27, 2025) (considering a newly raised argument on the merits because "the Court has no reason to believe that [defendant] seeks to delay the litigation by raising the argument for the first time in its second motion to dismiss."). Plaintiffs here voluntarily elected to amend their complaint for the second time, rendering the FAC moot and necessitating a response. *See Lacey v. Maricopa Cnty.*, 693 F.3d

896, 926 (9th Cir. 2012) ("an amended complaint supersedes the original, the latter being treated thereafter as nonexistent."); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) ("after amendment the original pleading no longer performs any function and is treated thereafter as non-existent") (internal citations omitted).  Acting in good faith, Gauntlet has narrowly tailored its arguments in the Motion to the lack of allegations against it specifically, rather than repeating arguments previously made by the Partner Defendants in their joint motion to dismiss.

Indeed, the Ninth Circuit considered the proper interpretation and application of Rule 12(g)(2) in *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017), cited in the Consolidated Opposition.  Consol. Opp. at 9.  In *Apple*, the Ninth Circuit found that the Third and Tenth Circuits "have been very forgiving of a district court's failure to follow Rule 12(g)(2)," and "agree[d] with the approach of the Third and Tenth Circuits." *Id.* at 318.  The Ninth Circuit read Rule 12(g)(2) "in light of the general policy of the Federal Rules of Civil Procedure, expressed in Rule 1" that directed the Federal Rules "be constructed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *Id.*  The Court analyzed a number of district court cases that only applied Rule 12(g) to situations where a party filed successive 12(b) motions for the sole purpose of delay, and cases where the district court exercised its discretion to consider new 12(b) arguments in the interest of judicial economy, and concluded that "[r]ecognizing the practical wisdom of these district courts, and of the Third and Tenth Circuits, we conclude that, as a reviewing court, we should generally be forgiving of a district court's ruling on the merits of a late-filed Rule 12(b)(6) motion." *Id.* at 319.

Accordingly, the Ninth Circuit confirmed that a district court has the discretion to consider arguments that Rule 12(g)(2) would otherwise bar if such consideration would further "the just, speedy, and inexpensive determination" of an action. *Id.*; *see also Mobley v. Workday, Inc.*, 2026 WL 636719, at *1 n.2 (N.D. Cal. Mar. 6, 2026) (citing *Apple* and concluding that "the Court has discretion to consider [defendant's] argument" that had not been raised in prior motions to dismiss

"and does so in the interest of juridical efficiency"); *Netskope, Inc. v. Fortinet, Inc.*, 2026 WL 629800, at \*2 (N.D. Cal. Mar. 6, 2026) ("courts have discretion to decide a successive motion to dismiss if doing so would lead to a speedier resolution of the case"); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2011 WL 2690437, at \*2 (N.D. Cal. July 8, 2011) ("courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy"); *Cover v. Windsor Surry Co.*, 2016 WL 520991, at \*4 (N.D. Cal. Feb. 10, 2016) ("judicial economy favors proceeding with the motion on its merits"). Many of the cases that Plaintiffs rely on in the Consolidated Opposition expressly acknowledge the court's discretion. *See* Consol. Opp. at 9-12; *Gardner v. Starkist Co.*, 2020 WL 1531346, at \*2-3 (N.D. Cal. Mar. 31, 2020); *Lle One, LLC v. Facebook Inc.*, 2019 WL 13201973, at \*2 (N.D. Cal. Apr. 25, 2019); *In re Packaged Seafood Prods. Antitrust Litig.*, 277 F. Supp. 3d 1167, 1174 (S.D. Cal. 2017); *Garcia v. City of Los Angeles*, 2020 WL 6586300, at \*6 (C.D. Cal. June 2, 2020).[2] Further, some of the cases that Plaintiffs rely on in their Consolidated Opposition where the Court declined to consider a motion to dismiss an amended pleading did not expressly consider the Ninth Circuit's holding that an amended complaint supersedes the original. Consol. Opp. at 11-12.

Here, this Court should exercise its discretion to consider Gauntlet's narrowly tailored arguments properly brought in response to the SAC in the interests of judicial economy. The Court's consideration of whether Gauntlet should be dismissed now would prevent it from proceeding needlessly through the duration of the case, despite the lack of substantive allegations against it in the SAC. *See Mobley*, 2026 WL 636719 at \*1 n.2 ("declining to reach the argument at this stage would simply delay resolution of the issue 'for no apparent purpose.'") (quoting *Apple*). This is not a case where Gauntlet has expressly waived defenses against certain claims by not including them in a prior motion to dismiss, like many that Plaintiffs cite. *See Rowley v. McMillan*,

---

[2]    *Burton v. Ghosh*, 961 F.3d 960 (7th Cir. 2020), Consol. Opp. at 10, is inapplicable. *Burton* considered whether district courts can consider new affirmative defenses when a plaintiff files an amended complaint in the context of Seventh Circuit precedent, and not Rule 12(g)(2).

502 F.2d 1326 (4th Cir. 1974) (regarding a failure to assert lack of jurisdiction) (Consol. Opp. at 10); *Interior Elec. Inc. Nevada v. T.W.C. Constr., Inc.*, 2020 WL 5983882, at *3 (D. Nev. Oct. 8, 2020) (finding that prior motions to dismiss did not seek to dismiss aiding-and-abetting, quantum meruit, promissory estoppel, unjust enrichment, or civil conspiracy claims and those objections were thus barred) (Consol. Opp. at 11, n.5). This is also not a case of "dilatory motion practice" or "strategically abusive purpose" as Plaintiffs suggest. *Id.* at 9, 11. Rather, this is a legitimate response to Plaintiffs' decision to file the SAC, which has superseded their previous two pleadings.

c.    The Motion Is Not Inconsistent with the PSLRA

Plaintiffs next argue that the Court should refrain from considering the Motion because it conflicts with the PSLRA's intent to stay discovery until the court has sustained the legal sufficiency of the complaint. Consol. Opp. at 12-13. Plaintiffs contend that because some discovery has already occurred, the SAC cannot be dismissed "because of new, corroborating details gathered through discovery." *Id.* at 13.

However, nothing in the PSLRA states that courts are not permitted to dismiss an amended complaint even if the original complaint was sustained. To the extent that Plaintiffs argue that the PSLRA-mandated discovery stay would be "abusive," Consol. Opp. at 13 & n.7, Plaintiffs' interpretation is belied by the clear language of the statue stating that "all discovery and other proceedings shall be stayed during the pendency of <u>any</u> motion to dismiss." 15 U.S.C. § 78u-4(b)(3) (emphasis added). Indeed, the Ninth Circuit has clarified in the context of the PSLRA discovery stay that "[w]hen an amended complaint is filed after an earlier complaint has been upheld (at least in part), the bulk of district courts have ruled that filing a motion to dismiss the amended complaint also triggers a stay of any discovery." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 968 (9th Cir. 2014); *see also McGuire v. Dendreon Corp.*, 2009 WL 666863, at *1 (W.D. Wash. Mar. 11, 2009) ("The PSLRA clearly requires that discovery shall be stayed when *any* motion to dismiss is pending.") (emphasis in original). The PSLRA stay was designed precisely to address the concerns that the "cost of discovery often forces innocent parties to settle frivolous

securities class actions," and "discovery in securities class actions often resembles a fishing expedition." *See* H.R. Conf. Rep. No. 104-369, at 37.

Plaintiffs also have not demonstrated that a discovery stay would prejudice them in any way. *See In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001) ("Prejudice caused by the delay inherent in the PSLRA's discovery stay cannot be "undue" prejudice because it is prejudice which is neither improper nor unfair. Rather, it is prejudice which has been mandated by Congress after a balancing of the various policy interests at stake in securities litigation, including a plaintiff's need to collect and preserve evidence."). It was <u>Plaintiffs</u> who decided to amend their complaint for a second time, which led to this Motion (and the other motions to dismiss by the other Defendants) and the automatic PSLRA stay. Moreover, the SAC added four new Defendants, who all filed motions to dismiss; those new Defendants' motions would have fully stayed discovery regardless of whether or not Gauntlet made its Motion.

Plaintiffs also fail to cite any persuasive case law in support of their PSLRA stay argument, beyond general case law on the purpose of the PSLRA stay. *In re Silver Wheaton Corp. Sec. Litig.*, 2019 WL 1512269 (C.D. Cal. Mar. 25, 2019) cited by Plaintiffs, Consol. Opp. at 13, did not contest the validity of a PSLRA stay, and merely decided a second motion to dismiss on the merits.

        d.      <u>The Motion Does Not Launder Summary Judgment Arguments</u>

Contrary to Plaintiffs' argument, the Motion does not "launder summary judgment arguments." Consol. Opp. at 13. Instead, the Motion focuses on the SAC's lack of specific allegations against Gauntlet in particular. Despite Plaintiffs' claims of discovering "significant additional evidence" regarding partnership and solicitation conduct (Consol. Opp. at 14), such "evidence" is still insufficiently alleged as to Gauntlet specifically, and the new allegations in the SAC based on documents elicited in discovery do not include any communications urging the public to purchase COMP by Gauntlet that could possibly be construed as solicitations. *See* Mot. at 7.

## II.   Plaintiffs Effectively Concede That Gauntlet Itself Is Not A Statutory Seller

The Motion argued that Gauntlet is not a "statutory seller" under Supreme Court precedent because the SAC does not allege that Gauntlet passed title of any COMP tokens to Plaintiffs or successfully solicited Plaintiffs' purchase of COMP.  Mot. at 8-11.  Plaintiffs do not even attempt to refute this argument and are deemed to have conceded that Gauntlet <u>itself</u> is not a statutory seller.  *See Zwerling v. Ford Motor Co.*, 2023 WL 2899524, at *4 (N.D. Cal. Apr. 10, 2023) (holding that "litigants waive arguments by failing to raise them in an opposition to a motion to dismiss") (citation omitted).

## III.   The SAC Fails to Adequately Allege that Gauntlet Can Be Held Liable as a Statutory Seller as a Partner in a Putative General Partnership

Because Plaintiffs do not argue that Gauntlet can be directly liable as a statutory seller, their entire claim against Gauntlet rests on the erroneous notion that Compound DAO is a general partnership and Gauntlet (and the other so-called "Partner Defendants") are general partners and are jointly and severally liable for Compound DAO's alleged solicitations.  Mot. at 11-13.

Plaintiffs apparently base their partnership theory on a statement from Judge Chhabria's decision in *Samuels v. Lido DAO*, 757 F. Supp. 3d 951 (N.D. Cal. 2024), that partners in the so-called "Lido DAO" are those who "have the ability to meaningfully participate in DAO governance."  Consol. Opp. at 19.  But *Samuels* does not form the basis to determine that Gauntlet is a general partner here.

<u>First</u>, the "meaningful participation in governance" standard articulated in *Samuels* does not comport with California general partnership law, which requires the putative partners to "carry on as co-owners of a business for profit" and frequently looks to indicia of profit splitting or "ultimate control."  Mot. at 12-13.  California law also provides that a person may only become a partner "with the consent of all partners."  Mot. at 13-14; Cal. Corp. Code § 16401(i); *Rivlin v. Levine*, 195

DEFENDANT GAUNTLET NETWORKS, INC.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
CASE NO. 3:22-CV-07781-WHO

Cal. App. 2d 13 (1961). "Meaningful participation in governance" is a different standard that would read California partnership law out of existence.

As explained in the Motion, under the California general partnership standard, there are no allegations about when or how Gauntlet joined the purported partnership, what agreements it entered into in furtherance of the partnership, or any arrangements to split profits or losses. *Id.*

Second, *Samuels* did not purport to define a general partnership for all DAOs. Plaintiffs have not articulated what "meaningful participation" means with respect to the Compound DAO; the "meaningful participation" theory is not alleged in the SAC. To the contrary, the SAC enumerates several different theories for the composition of the general partnership, including at times all COMP holders, at times only those who own a certain undefined percentage of COMP tokens, at times those who vote a certain undefined amount, at times those who invested in Compound Labs, and/or at times those who actively and publicly participated in governance. *See* Mot. at 11-12. By contrast, in *Samuels*, the court interpreted "meaningful participation in governance" to mean that "Lido DAO is jointly operated by large holders of LDO voting those tokens to cause the DAO to make business decisions." *Samuels*, 757 F. Supp. 3d at 962.

Third, even under a "meaningful participation in governance" standard, there are insufficient allegations that Gauntlet is a partner. In the Consolidated Opposition, Plaintiffs argue that Gauntlet took business-management actions using its vote, regularly proposed adjustments to collateral factors and borrowing caps essential to the protocol, worked for three years to maximize the Compound protocol's capital efficiency, and led the response to a software bug issue. Consol. Opp. at 18-19. Plaintiffs also assert that Gauntlet "unquestionably participated in DAO governance," was paid to do so, and was the "partner that others turned to for expertise and guidance related to Compound DAO decisionmaking." *Id.* at 19.

But these alleged actions – as alleged in the SAC – effectively concede that Gauntlet was engaged as an independent service provider to execute certain tasks. Pursuant to Cal. Corp. Code § 16202, payment for services as an independent contractor indicates that such contractor is not

presumed to be a partner. *See* Cal. Corp. Code § 16202(c)(3)(B) (sharing of profits not presumed to be partnership if received "[i]n payment for services as an independent contractor"); *see also In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d 822, 857 (N.D. Cal. 2022) ("the commissions that PFA may have received as part of the parties' agreement pursuant to which PFA sells LSW policies as LSW's independent contractor do not, as a matter of law, give rise to a presumption that a partnership exists."); *EduMoz, LLC v. Republic of Mozambique*, 2015 WL 13697385, at *18 (C.D. Cal. Apr. 20, 2015) (finding that an agreement to pay a commission was not an agreement to share the profits sufficient to plead the existence of a partnership, joint venture, or fiduciary relationship).

The SAC alleges that the Partner Defendants hired Gauntlet to "suggest proposals and write code for the Compound protocol," and further alleges that "a16z ultimately decided to pay Gauntlet an ongoing stipend for its assistance with governing the Compound DAO." SAC ¶¶ 79-80. The SAC claims that "Gauntlet, Polychain, Andreesen Horowtiz [sic], and Bain have all voted to pay Gauntlet for providing this service for Compound." *Id.* ¶ 106. This decision was based on Gauntlet's expertise, as evidenced by a Paradigm employee's support for compensating Gauntlet for its coding contributions. *Id.* ¶ 79. Plaintiffs dwell on a comment from Gauntlet's founder Tarun Chitra describing the professional arrangement as a "cabal that needs a neutral third party to do the work," *id.*, but Chitra's jocular comment underscores that Gauntlet was contracted to perform a job for the protocol. *See also id.* ¶ 82 ("Chitra described the situation in plain terms when workshopping Gauntlet's public-facing forum post: '[T]his is the best way to not look like 'controlled by VCs' but 'trying to do this scientifically.'").

Plaintiffs describe Gauntlet's role as utilizing "proprietary technology and data modeling [to] regularly propose[] adjustments to collateral factors and borrowing caps for different assets," which are "essential to keeping the Compound protocol functioning properly." *Id.* ¶ 109. Plaintiffs allege that Gauntlet itself characterizes its work as "continuous market risk management to maximize capital efficiency while minimizing the risk of insolvency and liquidations to create long-

term sustainable growth." *Id.* These allegations demonstrate that Gauntlet was a hired service provider, distinct from the other alleged Partner Defendants.

The Opposition also mischaracterizes Gauntlet's argument about not receiving "token purchase rights." Consol. Opp. at 18. The SAC itself connects "token purchase rights" granted by Compound Labs with "exercise[ing] effective control indefinitely," SAC ¶ 50, but does not allege that Gauntlet received such "token purchase rights."

The defendants in Samuels whose motions to dismiss were denied were allegedly large holders of LDO tokens and who touted their ability to participate in governance. *Samuels*, 757 F. Supp. 3d at 965. As Plaintiffs acknowledge, *Samuels* dismissed a fourth defendant and found that the allegations that it held a large amount of LDO tokens were insufficient to state a claim. *See* Consol. Opp. at 14; Mot. at 13. Plaintiffs also acknowledge that allegedly holding a large amount of tokens is not enough to constitute "meaningful participation." *See* Consol. Opp. at 14; *see Samuels*, 757 F. Supp. 3d at n.2 ("[Plaintiff] does not contend that the partnership comprises every single person who holds even a single LDO token, or … every single person who has the capacity to use their LDO to vote or who has actually voted.").

Fourth, Plaintiffs' theory that Gauntlet (or any other Defendant) can be held liable for solicitation of securities based on the purported collective actions of all Defendants and the "Compound DAO" is not permitted by the Securities Act. Under Section 12, "liability extends only to the person who successfully solicits the purchase." *Pinter v. Dahl*, 486 U.S. 622, 647 (1988) (emphasis added); *see also In re Keegan Mgmt. Co. Sec. Litig.*, 1991 WL 253003, at *11 (N.D. Cal. Sept. 10, 1991) (rejecting aiding and abetting liability for Section 12 claim "[b]ecause the language of Section 12 suggests that Congress intended to limit liability to one who offers or sells the security"); *Schneider v. Traweek*, 1990 WL 169856, at *17 (C.D. Cal. Sept. 5, 1990) ("Applying the standard set forth in *Pinter*, it is evident that Defendant Fainsbert's alleged status as the 'Secondary General Partner' does not make him, '[b]y definition a seller of Traweek 85–25

securities.'"). Gauntlet thus cannot be held individually liable for the alleged solicitations of the "Compound DAO" as a whole.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Motion, the Court should dismiss the SAC in its entirety as against Gauntlet.

Dated: April 17, 2026

MORRISON COHEN LLP
*/s/ Jason Gottlieb*
Jason Gottlieb (Admitted pro hac vice)
jgottlieb@morrisoncohen.com
Michael Mix (Admitted pro hac vice)
mmix@morrisoncohen.com
Vani Upadhyaya (Admitted pro hac vice)
vupadhyaya@morrisoncohen.com
909 Third Avenue
New York, NY 10022
Tel: +1 (212) 735-8600

LONDON & NAOR P.C.
Ellen London (SBN 325580)
elondon@londonnaor.com
1999 Harrison St., Suite 2010
Oakland, CA 94612
Tel:  +1 (415) 862-8494

*Attorneys for Defendant Gauntlet Networks, Inc.*